UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOYA R. HASIA-WELCH, an individual,<br><br>Plaintiff,<br><br>v.<br><br>DISABILITY RIGHTS CALIFORNIA; DOES 1–10, inclusive,<br><br>Defendants. | Case No.: 24-cv-00810-AJB-BLM<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>**(Doc. No. 8)** |

    Presently pending before the Court is Defendant Disability Rights California's ("DRC") Motion to Dismiss Plaintiff Toya Hasia-Welch's First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6), or alternatively, for the Court to require Plaintiff to provide a more definite statement pursuant to Rule 12(e). (Doc. No. 8.) Plaintiff filed an opposition to the motion to dismiss (Doc. No. 11), to which Defendant replied (Doc. No. 12). Pursuant to Civil Local Rule 7.1.d.1, the Court finds the instant matter suitable for determination on the papers and without oral argument. For the reasons stated herein, the Court **GRANTS** the Motion to Dismiss Plaintiff's FAC and **DENIES AS MOOT** DRC's request for a more definite statement pursuant to Rule 12(e).

///

## I. BACKGROUND

Plaintiff brings this action against DRC, alleging (1) failure to accommodate religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); (2) retaliation based on religion in violation of Title VII; (3) discrimination and retaliation based on religious creed in violation of the California Fair Employment and Housing Act, Cal. Gov't Code § 12900 *et seq.* ("FEHA"); (4) failure to provide religious accommodation in violation of FEHA; and (5) wrongful termination under California's common law tort. (*See* FAC, Doc. No. 4.)

### A. The Policy

DRC has a Transgender, Non-Binary Inclusion Policy (the "Policy"), which states: "All employees have the right to be addressed by their chosen name and pronoun. The intentional or persistent refusal to respect an employee's gender identity, name, or pronoun is harassment." (*Id.* ¶ 8.) Under the section titled Gender Affirmation, DRC's Policy states, "Employees who transition are entitled to the support of DRC management, Human Resources, and their colleagues." (*Id.* ¶ 9.) The DRC Inclusive Pronoun Protocol for Written Material section of the Policy states, "the use of binary pronouns is not inclusive of all [transgender, non-binary, gender-non-conforming, and intersex] TNGI people. Currently, gender-inclusive language can be achieved by simply reusing a noun in-lieu of a pronoun or by using 'they/them/their' as a singular, inclusive pronoun." (*Id.* ¶ 10.) Under the same section, the following language can be found:

> **Use Inclusive, Singular Pronouns "They/Them/Their"**
> "They" is recognized as a singular, gender-inclusive pronoun. When the use of pronouns is necessary to refer to an individual, use "they."

(*Id.*)

### B. Plaintiff's Allegations

Plaintiff alleges she worked as an investigator in training at DRC's San Diego, California location from March 16, 2022, to July 1, 2022. (FAC at Introduction, ¶ 7.) She asserts she is a follower of the Christian faith and believes that God assigned each person

a gender at birth as male or female. (*Id.* ¶¶ 11–12.) Due to her sincerely held beliefs, Plaintiff states "she cannot live a lie by supporting a position that runs opposite of the teachings of the Bible." (*Id.* ¶ 12.)

On April 29, 2022, Plaintiff requested a religious accommodation to the Policy provisions requiring her to support a transgender employee's transition and use of an employee's chosen pronouns.[1] (*Id.* ¶ 13.) Plaintiff submitted her request to DRC's Human Resources Director, Chris White. (*Id.*) Specifically, Plaintiff's accommodation request referenced the statement in the Policy that employees who transition are entitled to "support" of management, Human Resources, and their colleagues. (*Id.* ¶ 14.) Plaintiff informed Ms. White that this statement violates "my faith by forcing me to support someone's personal life decisions, which are none of my business, that I do not and will never support." (*Id.*) Plaintiff explained she was willing to use transgender individuals' names or gender-neutral pronouns, "they/them/their," as found in the Policy, but that she would not offer "support" to what she believes to be a sin. (*Id.*)

On May 3, 2022, Ms. White responded to Plaintiff's email, stating:

> Encouraging the use of pronouns does not mean it is required. There are other options as the policy states. What is not compliant with our policy is repeatedly using a pronoun that another employee has asked you not to use. Support means treating co-workers and clients with respect and kindness.
> Do you feel you need an accommodation based on your religion?

(*Id.* ¶ 15.)[2] On the same day, Plaintiff responded to Ms. White's email, reiterating her request for a religious accommodation to DRC's Policy. (*Id.* ¶ 16.) Plaintiff also raised

---

[1] The terms "chosen" and "preferred" are consistent with the parties' briefing and the record in this case. The Court does not intend to imply that any transgender individual's pronouns are merely suggested, optional, or anything less than inherent to one's identity.

[2] In Plaintiff's Opposition to DRC's Motion to Dismiss, she asserts the statements in Ms. White's email created a further conflict for Plaintiff because "if an employee asks her to use a preferred pronoun other than 'they/them/their[,]'" she would not be in compliance with the Policy. (Doc. No. 11 at 8, 15.) However, Plaintiff does not allege this in her FAC, and thus the Court does not consider it. *See Apple Inc. v. Allan & Assoc. Ltd.*, 445 F. Supp. 3d 42, 59 (N.D. Cal. 2020) ("[I]t is 'axiomatic that the complaint may not be

concerns about a hostile work environment due to her religious beliefs and that she wanted an accommodation in her file for her protection. (*Id.*) Plaintiff states she was especially concerned since the Policy stated that the refusal to respect an employee's gender identity, name, or pronoun constituted harassment. (*Id.*)

On May 4, 2022, Ms. White emailed Plaintiff stating she was not sure what job requirement Plaintiff was requesting an accommodation for, and there was no need for an accommodation if Plaintiff was willing to use the pronouns her co-workers and clients requested. (*Id.* ¶ 17.) Ms. White again asked Plaintiff to explain what job requirement conflicted with her religious beliefs. (*Id.*) In her responding email, Plaintiff clarified that she was "willing and able to refer to gender dysphoric and trans-gender staff and our clients by gender neutral pronouns such as 'they' and 'them', or by their name. [She was] willing and able to show kindness, love and basic human respect to any member of the LGBTQIA+ community just as [she] would for any other human being." (*Id.* ¶ 18.)

By the end of May 2022, DRC still had not informed Plaintiff if her religious accommodation request was approved or denied, or met with Plaintiff to discuss available accommodations to the Policy. (*Id.* ¶ 19.) On June 30, 2022, Plaintiff submitted a subsequent religious accommodation request to Ms. White. (*Id.* ¶ 20.) In her request, Plaintiff asked if her initial request for a religious accommodation had been denied, and reiterated her willingness to show kindness and respect to any member of the LGBTQIA+ community and to use a transgender employee's name or gender-neutral pronouns. (*Id.*) Plaintiff again reiterated the conflict between her religious beliefs and the Policy requiring her to "support" a transgender employee's transition and use an employee's requested pronouns. (*Id.*)

---

amended by the briefs in opposition to a motion to dismiss.'") (quoting *Frenzel v. AliphCom*, 76 F. Supp.3d 999, 1009 (N.D. Cal. 2014)).

On July 1, 2022, Plaintiff was terminated effective July 7, 2022. (*Id.* ¶ 21.) Plaintiff states DRC cited the Bible and Plaintiff's religious beliefs as reasons for the termination of her employment. (*Id.*)

Plaintiff timely filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue from the EEOC on February 29, 2024. (*Id.* ¶ 25.) Plaintiff also received her Notice of Right to Sue from the Civil Rights Department on May 9, 2024. (*Id.*)

## II.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be granted. *See Conservation Force v. Salazar*, 646 F.3d 1240, 1241 (9th Cir. 2011) (citing *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading that states a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The function of this pleading requirement is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Accordingly, dismissal for failure to state a claim is proper where the claim "lacks

a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008); *see Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017).

In reviewing a Rule 12(b)(6) motion to dismiss, a district court must "'accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff.'" *Los Angeles Lakers*, 869 F.3d at 800 (quoting *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012)). But a court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. "Further, it is improper for a court to assume the claimant "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). In addition, a court may consider documents incorporated into the complaint by reference and items that are proper subjects of judicial notice. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). If the court dismisses a complaint for failure to state a claim, it must then determine whether to grant leave to amend. *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995). "A district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.*

## III. DISCUSSION

### A. Failure to Accommodate

DRC first moves to dismiss Plaintiff's first and fourth causes of action, in which Plaintiff asserts DRC failed to accommodate her religious beliefs in violation of Title VII and FEHA, respectively. (Doc. No. 8-1 at 10.) These claims are based on Plaintiff's allegation of her "religious objection to supporting a transgender co-worker's transition or using an employee's preferred pronoun" that DRC refused to accommodate. (FAC ¶ 30; *see id.* ¶¶ 31–32, 70–71.)

Both Title VII and FEHA "require employers to accommodate [an employee's] religious beliefs unless doing so would impose an undue hardship." *Bolden-Hardge v. Off. of Calif. State Controller*, 63 F.4th 1215, 1222 (9th Cir. 2023). These claims are analyzed

under a two-step, burden-shifting framework:[3] first, the employee must plead a prima facie case of failure to accommodate religion; second, if the employee succeeds, the burden shifts to the employer to "show either that it initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 830 (9th Cir. 1999) (internal citation omitted).

To establish a prima facie case of failure to accommodate, a plaintiff must show that "(1) [s]he had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) [s]he informed [her] employer of the belief and conflict; and (3) the employer threatened [her] with or subjected [her] to discriminatory treatment, including discharge, because of [her] inability to fulfill the job requirements." *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993).

Under the first element, DRC does not challenge whether Plaintiff had a bona fide religious belief, but asserts that practice did not conflict with an employment duty. (Doc. No. 8-1 at 10–11.) Specifically, DRC asserts Plaintiff's factual allegations establish she was willing to use gender neutral pronouns and treat transgender employees with respect in compliance with the Policy, and thus has not alleged a conflict between her religion and the Policy. (*Id.* at 11.) Therefore, by extension, DRC asserts it is not plausible that it failed to accommodate Plaintiff's religious beliefs. (*Id.*) Moreover, DRC does not argue that it initiated good faith efforts to accommodate Plaintiff or was otherwise unable to because of undue hardship. (*See generally id.*)

As an initial matter, Plaintiff argues the prima facie case is an evidentiary standard and not a pleading requirement. (Doc. No. 11 at 11.) In support, Plaintiff invokes *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), a pre-*Twombly* and *Iqbal* case in which

---

[3] The Ninth Circuit has noted that "FEHA is interpreted consistently with Title VII" so the federal and state law claims are analyzed uniformly. *See Ambat v. City & Cnty. of S.F.*, 757 F.3d 1017, 1023 n.2 (9th Cir. 2014).

the Supreme Court held that "an employment discrimination plaintiff need not plead a prima facie case of discrimination." 534 U.S. at 508; *cf. Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "A complaint must, however, advance specific averments to show that the plaintiff is plausibly entitled to relief." *Weiss v. Permanente Med. Grp., Inc.*, ---F. Supp. 3d----, No. 23-cv-03490-RS, 2024 WL 3090496, at *2 (N.D. Cal. June 21, 2024). "[Plaintiff] need not prove her case at this juncture, but she must plead enough facts to satisfy the underlying elements of a failure-to-accommodate claim." *Id.* (citing Fed. R. Civ. P. 8(a)).

As noted, the bulk of DRC's motion rests on the argument that Plaintiff failed to adequately inform DRC as to how Plaintiff's religious beliefs conflicted with her employment duties. An employee seeking an accommodation need only provide "enough information . . . to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements." *Heller*, 8 F.3d at 1439; *see also Redmond v. GAF Corp.*, 574 F.2d 897, 902 (7th Cir. 1978) ("The employee has the duty to inform [her] employer of [her] religious needs so that the employer has notice of the conflict."). "Any greater notice requirement would permit an employer to delve into the religious practices of an employee in order to determine whether religion mandates the employee's adherence," and if a court may not do so, neither may the employer. *Heller*, 8 F.3d at 1439 (invoking *Fowler v. Rhode Island*, 345 U.S. 67, 70 (1953), which held that, in a First Amendment context, a court may not determine whether a particular religious practice is required by the religion). "The employee must, however, relay sufficient information about the conflict between the religious belief and the employer's practice or policy, not simply the employee's desired accommodation, in order for an employer to ensure it has met its obligations under both FEHA and Title VII." *Weiss*, 2024 WL 3090496, at *3.

First, Plaintiff asserts a conflict exists between her religious beliefs and the Policy's provision which states that not using an employee's preferred pronoun constitutes harassment. (Doc. No. 11 at 12 (citing FAC ¶ 8).) As alleged in the FAC, the Policy states

"[t]he intentional or persistent refusal to respect an employee's gender identity, *name*, or *pronoun* is harassment." (FAC ¶ 8 (emphasis added).) Moreover, the Policy states that "gender-inclusive language can be achieved by simply using a noun in-lieu of a pronoun or by using 'they/them/their' as a singular, inclusive pronoun." (*Id.* ¶ 10.) In Plaintiff's response to Ms. White's email, she clarified that she was "willing and able to refer to gender dysphoric and trans-gender staff and our clients *by gender neutral pronouns* such as 'they' and 'them', *or by their name*." (*Id.* ¶ 18 (emphasis added).) Thus, Plaintiff acknowledged that, as required by the Policy, she would either use gender neutral pronouns *or* the employee's name. Thus, no conflict exists here.

Further, Plaintiff argues "that the requirement for her to offer **support** to what she believes to be a sin created a conflict between her religious beliefs and the Policy[.]" (Doc. No. 11 at 7; *see id.* at 9.) Here, the Policy states, "Employees who transition are entitled to the *support* of DRC management, Human Resources, and their colleagues." (FAC ¶ 9 (emphasis added).) Ms. White's May 3, 2022 email clarified that "[s]upport means treating co-workers and clients with respect and kindness." (*Id.* ¶ 15.) Plaintiff responded to Ms. White's email, stating "[she was] willing and able to show *kindness*, love and basic human *respect* to any member of the LGBTGIA+ community just as [she] would for any other human being." (*Id.* ¶ 18 (emphasis added).) Accordingly, Plaintiff fails to allege a conflict.

Moreover, Plaintiff asserts DRC refused to engage in any meaningful discussion regarding Plaintiff's accommodation request. (Doc. No. 11 at 14.) However, on May 4, 2022, Ms. White's email to Plaintiff stated "she was not sure what job requirement PLAINTIFF was requesting an accommodation for, and there was no need for an accommodation if PLAINTIFF was willing to use the pronouns her co-workers and clients requested. Ms. White again asked PLAINTIFF to explain what job requirement conflicted with her religious belief." (FAC ¶ 17.) Thus, DRC provided Plaintiff with another opportunity to provide clarity regarding the purported conflict. In response, Plaintiff stated she was "willing and able to refer to gender dysphoric and trans-gender staff and our clients by gender neutral pronouns . . . or by their name. [She was] willing and able to show

9

kindness, love and basic human respect[.]" (*Id.* ¶ 18.) While Plaintiff states DRC still had not informed Plaintiff whether her religious accommodation request was approved or denied by the end of May 2022, it appears Plaintiff failed to provide clarity to DRC about the conflict between her beliefs and the Policy. *See Weiss*, 2024 WL 3090496, at *4–5 (granting motion for judgment on the pleadings on the plaintiff's failure to accommodate religious beliefs claims because the plaintiff "failed to aver plausibly that she adequately informed [the defendant] of the conflict between her religious beliefs and the Policy" after the defendant sought clarity of the plaintiff's request).

Indeed, this case is distinguishable from *Haskins v. Bio Blood Components*, No. 1:22-cv-586, 2023 WL 2071483 (W.D. Mich. Feb. 17, 2023), an out-of-circuit case relied upon by Plaintiff that is not binding on this Court. (*See* Doc. No. 11 at 12–13.) In *Haskins*, the court found the plaintiff had sufficiently established a prima facie case where she alleged that she had a religious belief that conflicted with her employer's requirement that she use her co-worker's preferred pronouns. 2023 WL 2071483, at *2. Specifically, the plaintiff alleged "that she asked for a 'religious accommodation,' but [her supervisor] denied that request 'without any consideration' and asked Plaintiff to write a letter of resignation." *Id.* at *1. Here, however, Plaintiff's request was not denied "without any consideration" and, in fact, Ms. White requested clarification from Plaintiff on two separate occasions but, by the end of May 2022, it appears Plaintiff failed to provide such clarity.

Based on the foregoing, Plaintiff has failed to plausibly allege she had a bona fide religious belief which conflicted with DRC's Policy. Accordingly, the Court **GRANTS** DRC's motion to dismiss Plaintiff's first and fourth causes of action **WITH LEAVE TO AMEND**.

Plaintiff's third claim asserts both discrimination and retaliation in violation of FEHA, and her fifth claim asserts wrongful termination under California's common law tort. (FAC ¶¶ 52–64, 78–92.) DRC moves to dismiss Plaintiff's third claim for discrimination and fifth claim for wrongful termination. (Doc. No. 8-1 at 11–13; 15–16.) Plaintiff states her discrimination claim "is predicated upon Defendant's failure to

accommodate her request for a religious accommodation. Therefore, the theory of disparate treatment does not apply." (Doc. No. 11 at 14.) She further states her wrongful termination claim "is predicated upon her failure to accommodate and retaliation claims[.]" (*Id.* at 22.) Because the motion to dismiss is granted as to Plaintiff's first and fourth claims, the motion is also **GRANTED** as to Plaintiff's third claim for discrimination and her fifth claim to the extent they are predicated upon Plaintiff's failure to accommodate claims.

### B. Retaliation

In Plaintiff's second and third causes of action raising retaliation claims under Title VII and FEHA, respectively, she avers the submission of religious accommodation requests and her religious beliefs were motivating factors in the termination of her employment. (FAC ¶¶ 47, 58.)

Retaliation claims under Title VII and FEHA require three elements. "[A] plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brooks v. City of San Mateo*, 229 F.3d 917, 923, 928 (9th Cir. 2000) (examining both Title VII and FEHA claims); *Bergene v. Salt River Project Agr. Imp. & Power Dist.*, 272 F.3d 1136, 1141 (9th Cir. 2001) (Title VII).

Plaintiff claims retaliation in violation of Title VII and FEHA, alleging her "submission of a religious accommodation request and religious beliefs were motivating factors in the termination of her employment." (FAC ¶ 47.) DRC argues that, as discussed above, Plaintiff was willing to use appropriate pronouns and treat transgender employees with respect and, therefore, Plaintiff failed to request any accommodation for her religious beliefs. (Doc. No. 8-1 at 14.) Thus, asserts DRC, she never engaged in a protected activity. (*Id.*) Moreover, DRC argues that even if Plaintiff made a cognizable request for religious accommodation, such a request does not amount to participation in a Title VII proceeding and is not considered protected opposition activity. (*Id.*)

The Ninth Circuit has not clarified whether requesting a religious accommodation constitutes a "protected activity" for Title VII retaliation claim purposes. *See Enriquez v. Gemini Motor Transp. LP*, No. CV-19-04759-PHX-GMS, 2021 WL 5908208, at *7 (D.

Ariz. Dec. 14, 2021) ("Although the Ninth Circuit has not decided whether requesting a religious accommodation constitutes 'oppos[ing] . . . an unlawful employment practice,' the Eighth Circuit has determined that it does not.") (citing *EEOC v. N. Mem'l Health Care*, 908 F.3d 1098 (8th Cir. 2018)). "An employee engages in protected activity when she opposes an employment practice that either violates Title VII or that the employee reasonably believes violates that law." *Westendorf v. W. Coast Contractors of Nev., Inc.*, 712 F.3d 417, 422 (9th Cir. 2013); *see also* 42 U.S.C. § 2000e-3(a). Plaintiff has not cited to, and the Court is not aware of, any authority suggesting that simply applying for an exemption to an employer requirement based on a protected status constitutes a protected activity. *See. N. Mem'l Health Care*, 908 F.3d at 1102 (the plaintiff "failed to establish a prima facie case of opposition-clause unlawful retaliation because merely requesting a religious accommodation is not the same as opposing the allegedly unlawful denial of a religious accommodation") (citation and internal quotations omitted); *Trueblood v. Valley Cities Counseling & Consultation*, ---F. Supp. 3d----, NO. C23-0269JLR, 2024 WL 3965926, at *18 (W.D. Wash. Aug. 28, 2024) (declining to find that requesting a religious accommodation is a protected activity); *Small v. Oregon Health & Sci. Univ.*, No. 3:23-cv-01290-JR, 2024 WL 4137484, at *6 (D. Oreg. Aug. 5, 2024) (same); *Brown v. Alaska Airlines, Inc.*, NO. 2:22-cv-668, 2024 WL 2325058, at *19 (W.D. Wash. May 22, 2024). While there is some authority reflecting that requests for a religious accommodation are a protected activity, this issue was not raised in those cases. *See, e.g.*, *Weiss v. Permanente Med. Grp.*, No. 23-cv-03490-RS, 2023 WL 8430974, at *4 (N.D. Cal. Dec. 4, 2023) ("Title VII and FEHA prohibit an employer from retaliating against an employee who engages in a protected activity, which here is Weiss's exemption request from the Policy on the basis of her religious beliefs."); *Medrano v. Kaiser Permanente*, No. 8:23-cv-02501-DOC-ADSx, 2024 WL 3383704, at *6 (C.D. Cal. July 10, 2024) (evaluating the plaintiff's retaliation case under FEHA and noting the protected activity was the plaintiff's request for a religious exemption).

///

Thus, based on the foregoing, the Court finds Plaintiff did not "oppose" allegedly unlawful activity by initiating the accommodations process, and thus was not engaged in a protected activity. *Westendorf*, 712 F.3d at 422.

Moreover, as noted by DRC, Plaintiff's allegations under her third cause of action do not pertain to a retaliation claim, though noted in the heading. (*See, e.g.*, FAC ¶ 58 ("Defendant intentionally discriminated against Ms. Hasia-Welch"); *id.* ¶ 60 ("Defendant terminated Plaintiff's employment because of her religious creed, and discriminated against Plaintiff[.]"); *id.* ¶ 61 ("Plaintiff suffered damages because of Defendant's unlawful discriminatory actions[.]").)

Accordingly, the Court **GRANTS** DRC's motion to dismiss Plaintiff's second and third claims **WITH LEAVE TO AMEND**.

## IV. CONCLUSION

Based on the foregoing, the Court **DISMISSES WITH LEAVE TO AMEND** Plaintiff's FAC and **DENIES AS MOOT** DRC's request for Plaintiff provide a more definite statement under Rule 12(e). Should Plaintiff choose to do so, she may file a Second Amended Complaint curing the deficiencies noted herein by **December 27, 2024**. Defendant must file a responsive pleading no later than **January 10, 2024**.

**IT IS SO ORDERED.**

Dated: December 13, 2024

Hon. Anthony J. Battaglia
United States District Judge