Michael Peffer (SBN: 192265)
Nilab Sharif (SBN: 231296)
**PACIFIC JUSTICE INSTITUTE**
2200 North Grand Ave.
Santa Ana, CA 92704
Tel: (714) 796-7150
Email: michaelpeffer@pji.org


Attorneys for Plaintiff, TOYA R. HASIA-WELCH

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TOYA R. HASIA-WELCH, an individual,<br><br>       Plaintiff,<br><br>vs.<br><br>DISABILITY RIGHTS CALIFORNIA; DOES 1-10, INCLUSIVE,<br><br>       Defendants. | **Case No.: 3:24-cv-00810-AJB-BLM**<br><br>**SECOND AMENDED COMPLAINT FOR VIOLATION OF RIGHTS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 [42 U.S.C. 2000e et seq.] (DEMAND FOR JURY TRIAL)** |

## INTRODUCTION

The Plaintiff, Toya R. Hasia-Welch, brings this action against Disability Rights California ("DRC" or "Defendant"), a non-profit organization. This action is based on violations of Title VII of the Civil Rights Act of 1964 (42 U.S.C.

§ 2000e et seq.) the California Fair Employment and Housing Act, Cal. Govt. Code §12900 et seq., and the common law tort of Wrongful Termination in Violation of Public Policy.

Plaintiff worked for Defendant as an investigator. Defendant required its employees to comply with its Transgender, Non-Binary Inclusion Policy (the Policy). Because of the Plaintiff's faith, she sought an accommodation based on her sincerely held religious beliefs to be exempt from specific provisions of the Policy. Rather than engage in meaningful discussions with Plaintiff, Defendant chose to delay the accommodation process by providing Plaintiff contradictory information about its Policy and repeatedly requesting clarification of a conflict with her religious beliefs. Following submission of her religious accommodation request, Defendant engaged in retaliatory behavior in an attempt to force Plaintiff to resign from her job. When Plaintiff did not resign and continued to seek a religious accommodation from Defendant's Policy provisions, Defendant decided to terminate Plaintiff's employment.

Notwithstanding having legitimately sought an accommodation for sincerely held religious beliefs, Plaintiff was discriminated and retaliated against by Defendant on account of her religious beliefs and suffered injuries and damages as a result of such discrimination. Defendant knew or should have reasonably known that Plaintiff held religious beliefs because she asserted them. The unlawful employment discrimination and retaliation were based on the exercise of Plaintiff's religion. The employer did not provide any opportunity to reasonably accommodate Plaintiff's religious beliefs when doing so would not have imposed an undue hardship. The gravamen of this complaint is that Defendant refused to accommodate, otherwise discriminated and retaliated against, and subsequently terminated Plaintiff for seeking an accommodation due to her religious beliefs.

///

HASIA-WELCH SECOND AMENDED COMPLAINT FOR VIOLATION OF TITLE VII;
DEMAND FOR JURY TRIAL

## JURISDICTION AND VENUE

1.      This Court has authority over this action pursuant to 28 U.S.C. §1331, in federal questions raised under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. This Court has supplemental authority over Plaintiff's related claims arising under corollary state anti-discrimination law pursuant to 28 U.S.C. § 1367(a), and the common law tort of Wrongful Termination in Violation of Public Policy.

Venue is proper in the Southern District of California under 42 U.S.C. §2000e-5(f)(3), in that Defendant maintains significant operations within the Southern District of California, and the location of Defendant where the alleged unlawful employment practices took place is within the Southern District of California.

## PARTIES
## PLAINTIFF

2.      At all times relevant herein, Ms. Hasia-Welch was an employee of the Disability Rights California as an investigator at Defendant's San Diego location. Ms. Hasia-Welch resided in the county of San Diego at the time of the events that gave rise to this Complaint.

## DEFENDANT

3.      At all times relevant herein, Disability Rights California (DRC) was a non-profit organization that advocates for the rights of Californians with disabilities. DRC has multiple offices throughout the State of California, including in the city of San Diego, California, where PLAINTIFF was employed.

4.      The true names and capacities, whether individual, corporate, associate, or otherwise, of DOES 1-100, inclusive are unknown to PLAINTIFF at this time, who therefore sues said DEFENDANTS by such fictitious names. PLAINTIFF is informed and believes and thereon alleges that each of the fictitiously named

HASIA-WELCH SECOND AMENDED COMPLAINT FOR VIOLATION OF TITLE VII;
DEMAND FOR JURY TRIAL

DEFENDANTS is in some way responsible for, or participated in, or contributed to, the matters and things complained of herein, and is legally responsible in some manner. PLAINTIFF will seek leave to amend this Complaint when the true names, capacities, and responsibilities have been ascertained.

## STATEMENT OF FACTS

5.      At all times relevant hereto, the PLAINTIFF was an employee of DEFENDANT who worked as an investigator from March 16, 2022 to July 1, 2022.

6.      Specifically, PLAINTIFF was an investigator in training whose job assignment was to investigate claims of abuse against the elderly and individuals with disabilities, and conduct COVID-19 data gathering, for which PLAINTIFF received feedback as part of the training process.

7.      PLAINTIFF is a follower of the Christian faith.

8.      PLAINTIFF believes that God assigned each person a gender at birth as male or female. Due to her sincerely held beliefs, she cannot speak or live by lies which support a position that runs opposite of the teachings of the Bible.

9.      Due to her sincerely held religious beliefs, PLAINTIFF objects to the use of pronouns other than one's biological gender at birth or gender neutral pronouns they/them/their.

10.     At time of the alleged events, DEFENDANT had a Transgender, Non-Binary Inclusion Policy (the Policy) which states "All employees have the right to be addressed by their chosen name and pronoun. The intentional or persistent refusal to respect an employee's gender identity, name, or pronoun is harassment."

11.     However, under the section titled DRC Inclusive Pronoun Protocol for Written Material, DEFENDANT's Policy states: "the use of binary pronouns is not inclusive of all TNGI people. Currently, gender-inclusive language can be

- 4 -

achieved by simply reusing a noun in-lieu of a pronoun or by using "they/them/their'" as a singular, inclusive pronoun."

The following instruction can be found under the same section of the Policy:

> **Use Inclusive, Singular Pronouns "They/Them/Their"**
> "They" is recognized as a singular, gender-inclusive pronoun. When the use of pronouns is necessary to refer to an individual, use "they."

12.    Furthermore, under the section titled Gender Affirmation, DEFENDANT's Policy states, "Employees who transition are entitled to the support of DRC management, Human Resources, and their colleagues."

13.    The statement in DEFENDANT's Policy-"employees have the right to be addressed by their chosen name and pronoun"-conflicted with her sincerely held religious beliefs.

14.    DEFENDANT's requirement that employees must "support" employees who transition created a further conflict with PLAINTIFF's sincerely held religious beliefs.

15.    During her employment with DEFENDANT, PLAINTIFF attended regular informal staff meetings, "meet and greet" sessions, during which employees were asked to share information about themselves. During these sessions, PLAINTIFF shared that she is of the Christian faith.

16.    When PLAINTIFF began her employment with DEFENDANT, her assigned immediate supervisor identified as a transgender person.

17.    On or about April 8 of 2022, PLAINTIFF sought clarification regarding DEFENDANT's Policy requiring employees to use an employee's chosen pronoun from her assigned immediate supervisor. Specifically, PLAINTIFF inquired if Christians were permitted to use gender neutral pronouns they/them/their instead of an employee's chosen pronoun. PLAINTIFF's immediate supervisor stated it would be inappropriate to use "they/them" in place

of a requested pronoun, and then proceeded to scream at PLAINTIFF that trans men are men and trans women are women.

18.    It is PLAINTIFF's belief and understanding that her assigned immediate supervisor later requested to no longer manage PLAINTIFF due to PLAINTIFF's religious beliefs.

19.    Due to the conflict that existed between PLAINTIFF's sincerely held religious beliefs and DEFENDANT's Policy provisions, as outlined above, on or about April 29, 2022, PLAINTIFF submitted to DEFENDANT's Human Resources employee, Chris White, her religious accommodation request seeking an accommodation from DEFENDANT's Policy provisions requiring her to: (1) support a transgender employee's transition, and (2) to use an employee's chosen pronoun.

20.    In her accommodation request, PLAINTIFF explained that she required an accommodation to the Policy's provision requiring her to address employees by their chosen name and pronoun because the requirement "forces me to violate my faith by forcing me to support someone's personal life decisions."

As to DEFENDANT's requirement that she support employees who transition, PLAINTIFF stated: I cannot and will not offer support to what I believe to be sin…. I respectfully request a religious accommodation to this policy."

21.    On or about May 3, 2022, DEFENDANT's Human Resources Director, Chris White responded to PLAINTIFF's accommodation request as follows:

> Encouraging the use of pronouns does not mean it is required. There are other options as the policy states. What is not compliant with our policy is repeatedly using a pronoun that another employee has asked you not to use.

Support means treating co-workers and clients with respect and kindness.
Do you feel you need an accommodation based on your religion?

22.    Chris White's statement that the repeated use of a nonpreferred pronoun is not compliant with its policy confirmed to PLAINTIFF that she still required an accommodation because she could be in violation of DEFENDANT's Policy if she repeatedly used they/them/their or an employee's name, instead of an employee's chosen pronoun. Furthermore, she believed she could also be accused of harassment for repeatedly failing to use an employee's chosen pronoun.

23.    Since Chris White's email did not resolve the conflict between the Policy and PLAINTIFF's religious beliefs, on or about May 3, 2022, PLAINTIFF responded  to Chris White's email stating she had no objection to treating co-workers and clients with respect and kindness, but that she needed a religious accommodation. In her email, PLAINTIFF further explained that to her knowledge, DEFENDANT planned on "using the language 'support' and 'entitled to' to reference how transgender and non-binary people should be treated…," and since such language was open to interpretation, she would still like a religious accommodation.

24.    In her May 3, 2022 communication to Chris White, PLAINTIFF also raised concerns about a hostile work environment due to her religious beliefs, and explained that this was yet another reason for wanting an accommodation in her employee file.

Additionally, PLAINTIFF believed a religious accommodation in her employee file would protect her from harassment claims stemming from her failure to use an employee's chosen pronoun.

On or about May 4, 2022, Chris White responded to PLAINTIFF's

HASIA-WELCH SECOND AMENDED COMPLAINT FOR VIOLATION OF TITLE VII; DEMAND FOR JURY TRIAL

communication. Despite PLAINTIFF having twice explained her need for a religious accommodation from DEFENDANT's policy, Chris White's response again ignored PLAINTIFF's explanation of a religious conflict. Her response avoided the obvious need for an accommodation with statements such as: "I am not sure from what job requirement you are requesting an accommodation,; and **I don't see a need for an accommodation**" so long as PLAINTIFF was "willing to comply with requirements that you use the **pronouns requested by your coworkers** and clients (or names and nouns as expressed in the policy)...." (emphasis added).

In yet another effort to delay the accommodation process, Chris White again asked PLAINTIFF to explain if she needed an accommodation even though PLAINTIFF had repeatedly explained such a need due to the existing religious conflict with DEFENDANT's Policy provisions.

25.    Chris White's statements in her May 4, 2022 communication contradicted her previous email to PLAINTIFF which stated that "repeatedly using a pronoun that another employee has asked you not to use **would not be compliant** with DEFENDANT's policy. The May 4, 2022 email only resulted in further confusion for PLAINTIFF regarding the use of gender neutral pronouns vs. chosen pronouns.

26.  On or about May 6, 2022, PLAINTIFF responded to Chris White's email and again explained the conflict between her beliefs and DEFENDANT's Policy as follows:

> I am requesting a religious accommodation from having to "support" my transgender co-workers as stated in the updated DRC Inclusion policy. It is my interpretation that "support" means to show agreement with.
>
> DRC distinctly used the word "support" and "entitled to" to reference how transgender and non-binary people should be treated but does not use this same language for historically marginalized groups like African Americans,

Latin-X, Muslims, Christians, Jewish people, or women. There are other words that DRC could have used in place of support like "respect" or "tolerance", but it chose "entitled" and "support". Because language is open to interpretation, this policy sews the seeds for a hostile work environment should an LGBTQIA, or LGBTQIA-allied co-worker have the same interpretation that I do and demand such support from me. Support that I am forbidden from giving.

For these reasons, I request a religious accommodation to refrain from having to show support for transgender co-workers beyond basic respect, kindness, and human decency. If H.R. would like for me to provide supporting documentation from my religious text (Holy Bible), or from an ordained clergy member to back up this request, please let
me know.

27.    PLAINTIFF did not receive a reply to her May 6, 2022 email from DEFENDANT.

28.    During May and June 2022, while PLAINTIFF was awaiting DEFENDANT's decision on her accommodation request, PLAINTIFF experienced retaliation by DEFENDANT's employees for asserting her religious beliefs, which included but was not limited to the following:

    a.    On or about May 5, 2022, PLAINTIFF's supervisor, Liz Logsdon, sent PLAINTIFF an email falsely accusing her of use of her personal laptop to access DRC records.  PLAINTIFF's manager, Jung Pham, had been copied on the email. PLAINTIFF responded to her supervisor's email explaining that she would be happy to "hand my personal computer over to IT for inspection."

    b.    On or about May 6, 2022, PLAINTIFF was asked to complete a six-month goal sheet which was sent to Human Resources. It is PLAINTIFF's belief and understanding that her colleague, who had started working as an investigator around the exact same time as PLAINTIFF, was not asked to complete such a goal sheet.

HASIA-WELCH SECOND AMENDED COMPLAINT FOR VIOLATION OF TITLE VII; DEMAND FOR JURY TRIAL

c. On more than one occasion, Liz Logsdon asked PLAINTIFF if she would like help finding alternate employment.

d. Jung Pham repeatedly told PLAINTIFF to openly discuss her religious opinions and faith at work, which PLAINTIFF consistently declined to do. PLAINTIFF felt hounded by these persistent requests, even though she made certain to explain to DEFENDANT that she did not wish to proselytize anyone nor be proselytized by fellow co-workers. PLAINTIFF believes DEFENDANT wanted her to openly discuss her faith so that employees could then initiate hostile work environment and harassment claims against her.

e. PLAINTIFF was intentionally given false direction and guidance by DEFENDANT, which if PLAINTIFF had followed would have amounted to violating the law:

   i. Liz Logsdon coached PLAINTIFF to falsify her meal reimbursement sheets.

   ii. Liz Logsdon instructed PLAINTIFF that if she were to encounter DRC clients engaging in criminal acts, such as pedophilia, that she was not permitted to notify the authorities.

29.    It is PLAINTIFF's belief and understanding that DEFENDANT's delay in the accommodation process and the retaliatory actions by DEFENDANT's employees were deliberate attempts to cause PLAINTIFF to resign from her job.

30.    Due to DEFENDANT's retaliatory actions, PLAINTIFF filed a hostile work environment claim with Human Resources.  In an effort to resolve her claim in an amicable fashion and live by the teachings of scripture, PLAINTIFF later withdrew her claim after DEFENDANT's employees apologized to her and

- 10 -

explained that they would leave PLAINTIFF alone and wished to have a fresh start in their professional relationship. Unfortunately, that did not turn out to be the case for PLAINTIFF who continued to experience discrimination.

31. On or about June 30, 2022, DEFENDANT's employee, Chris White, finally responded in a memorandum to PLAINTIFF's May 6, 2022 religious accommodation request email as follows:

> With respect to your religious accommodation request, I am unclear what you want us to do. As we have discussed, you must work cooperatively and respectfully with all employees and clients at DRC. I understand you have an issue with the word "support" in our Transgender and Non-Binary Inclusion policy, but we are not changing that policy at this time.

32. DEFENDANT's June 30, 2022 memorandum, which came months after PLAINTIFF's initial religious accommodation request, completely ignored its obligations under Title VII and FEHA requiring employers to make reasonable accommodations for their employees' religious beliefs, as well as religious observances and practices, absent undue hardship.

33. PLAINTIFF responded to Chris White's memorandum that same day reiterating her need for a religious accommodation from DEFENDANT's Policy provisions and asking if her initial request for a religious accommodation was denied. She once again explained the conflict with DEFENDANT's Policy and her sincerely held religious beliefs as follows:

> What I am asking for is a simple statement from DRC stating that I am excused from "supporting" the personal choices of my fellow transgender and gender dysphoric staff….
> To be clear, whether DRC approves my request or not, I will not be referring to a biological female as "he", nor a biological male as "she" if I am made aware of their chromosomal nature (which is none of my business). I

> cannot do it. That is lying, a sin, and the affirmation of a lifestyle choice that the Lord says is wickedness, another sin.

PLAINTIFF stated she was willing to show kindness and respect to any member of the LGBTQIA+ community, but she was only willing to use a transgender employee's name or gender- neutral pronouns, not a chosen pronoun.

34.    The next morning, July 1, 2022, PLAINTIFF was terminated effective July 7, 2022. DEFENDANT cited PLAINTIFF's religious beliefs as a reason for the termination of her employment.

35.    At the time of her termination, PLAINTIFF still had not received a reply to her May 6, 2022 or June 30, 2022 religious accommodation requests.

36.    PLAINTIFF was terminated without an interactive process or meaningful discussions regarding her religious accommodation request.

37.    Prior to her termination of employment, PLAINTIFF had not received a formal warning, formal performance evaluation, or formal corrective action from DEFENDANT.

38.    Prior to her termination of employment, PLAINTIFF had never indicated to DEFENDANT that she would be unwilling or unable to perform her job duties, as outlined in her job description, or projects she was tasked with because of her religious beliefs. For example, even though PLAINTIFF holds pro-life views and considers abortion at any stage a sin, PLAINTIFF successfully advocated for the rights of a DRC client who was seeking an abortion.

39.    Ms. Hasia-Welch timely filed a complaint with the Equal Employment Opportunity Commission (EEOC) and the Civil Rights Department. (CRD). She received a Notice of Right to Sue (NRTS) from the EEOC on February 29, 2024, attached hereto as "Exhibit One" for the purpose of this amended Complaint. Ms. Hasia-Welch also received her NRTS from the CRD on May 9,

HASIA-WELCH SECOND AMENDED COMPLAINT FOR VIOLATION OF TITLE VII;
DEMAND FOR JURY TRIAL

2024, attached hereto as "Exhibit Two" for the purpose of this amended Complaint.

## FIRST CAUSE OF ACTION
### Violation of Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e et seq.]- Failure to Accommodate Against Defendant

40.    Plaintiff hereby incorporates and realleges the preceding paragraphs as though fully set forth herein.

41.    Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), it is an unlawful employment practice for an employer: (1) to fail or refuse to hire or discharge any individual, or otherwise discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his or her employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his or her status as an employee, because of such individual's race, color, religion, sex, or national origin.

42.    A plaintiff can make out a Title VII prima facie case for a failure to accommodate by showing (1) she had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) she informed her employer of the belief and conflict; and (3) the employer threatened her or subjected her to discriminatory treatment, including discharge, because of her inability to fulfill the job requirements. *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998).

43.    Plaintiff was, at all times relevant herein, an employee and applicant covered by U.S.C. 42 § 2000e et seq.

44.   Plaintiff held a deeply sincere religious objection to Defendant's Policy requiring her to "support" a co-worker's transition and use an employee's chosen pronoun, and asked Defendant to accommodate her sincerely held religious belief due to such conflict.

45.   Plaintiff's request for a religious accommodation was neither approved nor denied when she was terminated from her employment. In fact, Defendant never provided any accommodation, engaged in meaningful discussions or in an interactive process with Plaintiff to discuss possible accommodations, and instead engaged in delay tactics, provided contradictory guidance, and ignored Plaintiff's follow-up communications reiterating her need for a religious accommodation.

46.   Due to her sincerely held religious beliefs, Plaintiff had a right to a religious accommodation from Defendant's Policy provisions under Title VII absent a showing by Defendant of undue hardship resulting in a substantial burden.

47.   Due to Defendant's complete absence of accommodation discussions with Plaintiff, it is clear that Defendant never intended to accommodate Plaintiff and instead chose to terminate her employment due to anti-religious animus.

48.    Defendant's discriminatory actions left Plaintiff without protection and exposed her to retaliatory actions and claims of harassment by Defendant's employees, and possible disciplinary actions for violation of Defendant's Policy.

49.    Therefore, as outlined above, Plaintiff's religious beliefs and practices were a motivating factor in her employment being terminated.

50.   Plaintiff suffered significant damages because of Defendant's unlawful discriminatory actions, including emotional distress, lost wages and benefits, and the costs of bringing this action.

51.   Defendant intentionally violated Plaintiff's rights under Title VII with malice or reckless indifference.

HASIA-WELCH SECOND AMENDED COMPLAINT FOR VIOLATION OF TITLE VII;
DEMAND FOR JURY TRIAL

52.   Plaintiff is entitled to backpay, front pay, compensatory damages, punitive damages, attorney's fees, costs of suit, a declaration that Defendant violated her rights under Title VII, and an injunction preventing Defendant from enforcing its discriminatory policies.

53.   Plaintiff is entitled to further relief as set forth below in her Prayer for Relief.

### SECOND CAUSE OF ACTION
**Violation of Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e et seq.]**
**Retaliation Based on Religion Against Defendant**

54.    PLAINTIFF hereby incorporates and realleges the preceding paragraphs as though fully set forth herein.

55.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-3(a)(1), prohibits retaliation by an employer, employment agency, or labor organization because an individual has engaged in protected activity.

56.   The EEOC has taken the position that requesting a religious accommodation is a protected activity under this provision of Title VII.[1]

57.   The U.S. Department of Labor's section on retaliation states that a protected activity includes "requests for accommodation based on disability or religion." [2]

58.   To make out a prima case for retaliation under Title VII, a plaintiff must show that: (1) she engaged in a protected activity, (2) her employer took an

_____

[1] https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination.
[2] https://www.dol.gov/agencies/oasam/centers-offices/civil-rights-center/internal/policies/retaliation#:~:text=Other%20Protected%20Activity%3A%20Additional%20protected,based%20on%20disability%20or%20religion.(last visited 12/19/24).

adverse employment action against her, and (3) there was a causal connection between the protected activity and the employer's act. *Yanowitz v. L'Oreal USA, Inc*., 36 Cal.4th 1028, 1042(2005); *Passantino v. Johnson & Johnson Consumer Prods., Inc*., 212 F.3d 493, 506 (9th Cir. 2000).

59.   Plaintiff was, at all times relevant herein, an employee and applicant covered by U.S.C. 42 § 2000e et seq.

60.   Plaintiff held a deeply sincere religious objection to specific provisions of Defendant's employment policy, and engaged in a protected activity when she submitted to Defendant a request for a religious accommodation based on her sincerely held religious beliefs.

61.   Plaintiff engaged in further protected activity when she filed a claim for hostile work environment with Defendant.

62.   As outlined above, Defendant and its employees were aware of Plaintiff's submission of a religious accommodation request and claim of hostile work environment.

63. As outlined above, Defendant engaged in multiple retaliatory actions against Plaintiff after she engaged in protected activities, including but not limited to, repeatedly delaying the accommodation process, failing to engage in a meaningful interactive process, and making false accusations against her.

64.   Plaintiff suffered an adverse employment action when she was terminated soon after filing her claim of a hostile work environment and almost immediately after her June 30, 2022 email to Defendant reiterating her need for a religious accommodation from specific provisions of Defendant's Policy. In fact, Defendant cited Plaintiff's religious beliefs as a reason for the termination of her employment

65.   Therefore, Plaintiff's submission of a religious accommodation request and religious beliefs were motivating factors in the termination of her

employment.

66.    Plaintiff suffered significant damages because of Defendant's unlawful retaliatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing the action.

67.    Defendant intentionally violated Plaintiff's rights under Title VII with malice or reckless indifference.

68.    Plaintiff is entitled to backpay, front pay, punitive damages, compensatory damages, attorney's fees, costs of suit, a declaration that Defendant violated her rights under Title VII, and an injunction preventing Defendant from enforcing their discriminatory policies.

69.    Plaintiff is entitled to further relief as set forth below in her Prayer for Relief.

### THIRD CAUSE OF ACTION
**Violation of the California Fair Employment and Housing Act**
**(Cal. Govt. Code § 12900 et seq.)— Retaliation**
**Based on Religious Creed Against Defendant**

70.    Plaintiff hereby incorporates and realleges the preceding paragraphs as though fully set forth herein.

71.    Under FEHA, it is an unlawful employment practice for an employer to discriminate against an employee in compensation, terms, conditions, or privileges of employment, because of the employee's religious creed.

72.    Under FEHA, retaliation is considered an unlawful employment practice.

73.    Retaliation under FEHA refers to any adverse action taken by an employer against an employee because the employee engaged in a protected activity. Protected activities under FEHA include, but are not limited to, opposing practices forbidden under FEHA, such as workplace discrimination.

74.    Plaintiff was always relevant herein an employee for purposes of FEHA.

75.    Defendant was always relevant herein an employer for purposes of FEHA.

76.    Plaintiff was always relevant herein a member of a protected religious class.

77.    FEHA broadly defines religious creed to include all aspects of observance and practice.

78.    As outlined above, Defendant intentionally retaliated against Plaintiff by making an adverse employment decision against her—terminating her employment without providing any alternative after Plaintiff's request for a religious accommodation and claim of a hostile work environment.

79.    Defendant demonstrated discriminatory animus toward Plaintiff by abruptly terminating her employment the morning after she reiterated her request for a religious accommodation, and showing callous indifference toward her sincere religious beliefs.

80.    Defendant terminated Plaintiff's employment because of her religious creed and her religious beliefs.

81.    Plaintiff suffered damages because of Defendant's unlawful actions, including emotional distress, past and future loss of wages and benefits, and the cost of bringing this action.

82.    Plaintiff is entitled to backpay, front pay, compensatory damages, attorneys' fees, costs to bring suit, a declaration that Defendant violated Plaintiff's rights under FEHA, and an injunction preventing Defendant from enforcing their unlawful policies.

83.    Defendant intentionally violated Plaintiff's rights under FEHA

with malice or reckless indifference, and, as a result, are liable for punitive damages.

84.    Plaintiff is entitled to such other and further relief as more fully set forth below in her Prayer for Relief.

## FOURTH CAUSE OF ACTION
### Violation of the California Fair Employment and Housing Act (Cal. Govt. Code § 12900 et seq.)—Failure to Provide Religious Accommodation Against Defendant

85.    Plaintiff hereby incorporates and realleges the preceding paragraphs as though fully set forth herein.

86.    Under FEHA, it is an unlawful employment practice for an employer to terminate a person's employment because of a conflict between the person's religious beliefs or observance and any employment requirement, unless the employer demonstrates that it has explored all reasonable means of accommodation of the religious beliefs or observance.

87.    Plaintiff was a person and an employee of Defendant within the meaning of FEHA.

88.    Defendant was always relevant herein employer of Plaintiff for purposes of FEHA.

89.    Plaintiff is a devout follower of the Christian faith.

90.    As outline above, Defendant was aware of Plaintiff's sincerely held religious beliefs because she asserted them.

91.    Plaintiff holds strong beliefs based on her understanding of the teachings of Christianity, which prohibit Plaintiff from complying with specific provisions in Defendant's Policy.

92.    Plaintiff requested an accommodation to specific provisions in the Policy from Defendant due to a conflict with her religious beliefs.

93.     Defendant refused to: explore available reasonable alternatives to allow Plaintiff to do her job; or engage in any interactive, meaningful, or good faith process with Plaintiff to accommodate her sincerely held religious beliefs. Defendant instead chose to delay the accommodation process, provide inconsistent responses regarding its policy, and request further explanation of a religious conflict, only to ignore Plaintiff's follow-up communications.

94.     Defendant's refusal to accommodate, or even explore any kind of accommodation of Plaintiff's religious beliefs, was a substantial motivating factor in Defendant's decision to deprive Plaintiff of her employment. In fact, Defendant cited Plaintiff's religious beliefs as a reason for her termination.

95.     Plaintiff suffered significant damages because of Defendant's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

96.     Defendant intentionally violated Plaintiff's rights under FEHA with malice or reckless indifference.

97.     Plaintiff is entitled to backpay, front pay, compensatory damages, punitive damages, attorneys' fees, costs to bring suit, a declaration that Defendant violated Plaintiff's rights under FEHA, and an injunction preventing Defendant from enforcing their discriminatory policies.

98.     Plaintiff is entitled to further relief as more fully set forth below in her Prayer for Relief.

## FIFTH CAUSE OF ACTION
### Wrongful Termination in Violation of Public Policy- Common Law Tort Against Defendant

99.     Plaintiff hereby realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

//

100.    Plaintiff was terminated for requesting a religious accommodation in compliance with both Title VII of the Civil Rights Act of 1964, and Cal. Govt. Code § 12900 et seq.

101.    Cal. Govt. Code § 12920 states, "It is hereby declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of race, religious creed…."

102.    Plaintiff was always relevant herein an employee of Defendant within the meaning of Title VII and FEHA.

103.    Defendant was always relevant herein an employer of Plaintiff for purposes of Title VII and FEHA.

104.    Plaintiff is a devout follower of the Christian faith.

105.    As outline above, Defendant was aware of the sincere religious beliefs Plaintiff held.

106.    Plaintiff held a deeply religious objection to specific provisions of Defendant's Policy and was denied accommodation although Defendant recognized that Plaintiff had sincerely held beliefs.

107.    Plaintiff felt pressured to abide by Defendant's Policy, causing anxiety and stress due her employer forcing her to choose between her deeply held religious beliefs and her financial livelihood, her job.

108.    There were no valid reasons whatsoever for terminating Plaintiff's employment, other than Plaintiff requesting accommodation due to her sincerely held religious beliefs and filing a claim for hostile work environment under Title VII and FEHA.

109.    Plaintiff's religious beliefs and practices were therefore a motivating factor in her termination. Plaintiff suffered a wrongful termination for exercising her right to seek an accommodation of her truly sincere religious beliefs entitled to

her under Title VII and FEHA.

110.    FEHA declares by statute that such unlawful termination is in violation of public policy.

111.    Plaintiff suffered significant harm because of Defendant's unlawful discriminatory actions, including emotional distress, past and future loss wages and benefits, and the costs associated with bringing this action.

112.    Defendant intentionally violated Plaintiff's rights under Title VII and FEHA with malice or reckless indifference.

113.    Plaintiff is entitled to backpay, front pay, compensatory damages, punitive damages, attorneys' fees, costs of suit, a declaration that Defendant violated her rights under Title VII, and an injunction preventing Defendant from enforcing their discriminatory policies.

114.    Plaintiff is entitled to further relief as more fully set forth below in her Prayer for Relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays this Court grant relief as follows:

A.    Award PLAINTIFF backpay, including past loss of wages and benefits, plus interest;

B.    Award PLAINTIFF front pay, including future wages and benefits;

C.    Award PLAINTIFF other and further compensatory damages in an amount according to proof;

D.    Award PLAINTIFF noneconomic damages, including but not limited to mental health suffrage;

E.    Award PLAINTIFF punitive damages

F.    Award PLAINTIFF her reasonable attorney's fees and costs of suit;

G.    Enjoin DEFENDANT from enforcing its discriminatory policies;

- 22 -

H.    Declare that DEFENDANT has violated Title VII of the Civil Rights Act;

I.    Declare that DEFENDANT has violated FEHA; and

J.    Grant PLAINTIFF such additional or alternative relief as the Court deems just and proper.


DATED: 12/ 20/2024                        **PACIFIC JUSTICE INSTITUTE**

By: *Michael Peffer*

MICHAEL J. PEFFER, ESQ.,
Attorney for Plaintiff,
TOYA R. HASIA-WELCH


## **DEMAND FOR JURY TRIAL**

PLAINTIFF, TOYA R. HASIA-WELCH, hereby demands a jury trial in this matter.


DATED: 12/ 20/2024                        **PACIFIC JUSTICE INSTITUTE**

By: *Michael Peffer*

MICHAEL J. PEFFER, ESQ.,
Attorney for Plaintiff,
TOYA R. HASIA-WELCH

HASIA-WELCH SECOND AMENDED COMPLAINT FOR VIOLATION OF TITLE VII;
DEMAND FOR JURY TRIAL

## <u>VERIFICATION</u>

I, TOYA R. HASIA-WELCH, am the Plaintiff in the above-captioned matter. I have read the VERIFIED COMPLAINT FOR VIOLATION OF RIGHTS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 [42 U.S.C. 2000e et seq.] and am familiar with the same. The contents are true and accurate and known to me by personal knowledge except for those matters asserted on information and belief. As to those matters, I believe them to be true. I declare under penalty of lying under oath, under the laws of the United States and the State of California, that the foregoing is true and correct. Executed this 20th day of December 2024, in San Diego County, State of California.

TOYA R. HASIA-WELCH

HASIA-WELCH SECOND AMENDED COMPLAINT FOR VIOLATION OF TITLE VII;
DEMAND FOR JURY TRIAL

1
2
3
4
5
6 **EXHIBIT ONE (1)**
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HASIA-WELCH SECOND AMENDED COMPLAINT FOR VIOLATION OF TITLE VII;
DEMAND FOR JURY TRIAL



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**San Diego Local Office**
555 West Beech Street, Suite 504
San Diego, CA 92101
(619) 900-1616
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 02/29/2024

**To:** Mrs. Toya R. Hasia-Welch

████████████████████

Charge No: 488-2022-00883

EEOC Representative and email:    PATRICIA KANE
                                 Deputy Director
                                 PATRICIA.KANE@EEOC.GOV

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

**PATRICIA KANE** Digitally signed by PATRICIA KANE
Date: 2024.02.29 16:03:04 -08'00'    (FOR)

---

Christine Park-Gonzalez
District Director

**Cc:**
Julia C Melnicoe Insel
Shaw Law Group, PC
425 UNIVERSITY AVE STE 200
Sacramento, CA 95825

Raymond Freeman
Disability Rights California
1831 K ST
Sacramento, CA 95811


Please retain this notice for your records.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT TWO (2)**

HASIA-WELCH SECOND AMENDED COMPLAINT FOR VIOLATION OF TITLE VII;
DEMAND FOR JURY TRIAL

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

**Civil Rights Department**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

May 9, 2024

Toya Hasia-welch



RE:    **Notice of Case Closure and Right to Sue**
       CRD Matter Number: 202405-24657109
       Right to Sue: Hasia-welch / Disability Rights California

Dear Toya Hasia-welch:

This letter informs you that the above-referenced complaint filed with the Civil Rights Department (CRD) has been closed effective May 9, 2024 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this CRD Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 02/23)