Michael J. Nader, SBN 200425
Michael.Nader@ogletree.com
Alexandra M. Asterlin, SBN 221286
alexandra.asterlin@ogletree.com
George J. Theofanis, SBN 324037
george.theofanis@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
400 Capitol Mall, Suite 2800
Sacramento, CA 95814
Telephone: 916-840-3150
Facsimile: 916-840-3159

Attorneys for Defendant
DISABILITY RIGHTS CALIFORNIA

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOYA R. HASIA-WELCH, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>DISABILITY RIGHTS CALIFORNIA; DOES 1-10, inclusive,<br><br>    Defendants. | Case No. 3:24-cv-00810-AJB-BLM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT DISABILITY RIGHTS CALIFORNIA'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FRCP 12(B)(6)**<br><br>Date:       March 6, 2025<br>Time:       2:00 p.m.<br>Location:   Courtroom 4A, 4th Floor<br><br>Complaint Filed: 5/10/2024<br>Trial Date:       TBD |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................. 1

II.   FACTS AND PROCEDURAL HISTORY ............................. 3

    A.    Plaintiff's First Amended Complaint and The Court's Dismissal Order ............................................................ 3

    B.    Plaintiff's Second Amended Complaint ........................... 4

        1.    The Policy .............................................................. 4

        2.    Plaintiff's Religious Accommodation Allegations ............... 5

        3.    Plaintiff's retaliation allegations ............................. 9

III.  LEGAL STANDARD ........................................................ 10

IV.   LEGAL ARGUMENT ....................................................... 12

    A.    Plaintiff fails to allege facts supporting a plausible inference that Defendant failed to accommodate her religious beliefs in violation of Title VII or FEHA. .................................... 12

        1.    Plaintiff's religious belief did not conflict with the Policy. ................................................................ 12

        2.    Plaintiff failed to adequately inform DRC of the conflict between her religious beliefs and the Policy. .......... 15

        3.    Accommodation not required if resulting in violation of FEHA. ............................................................ 17

    B.    Plaintiff fails to allege facts supporting a plausible inference that DRC retaliated against Plaintiff because of her request for accommodation or hostile work environment complaint in violation of Title VII or FEHA. .................................... 17

        1.    Plaintiff fails to allege a protected activity. ................ 18

        2.    Plaintiff fails to plausibly allege an adverse employment action. ............................................... 20

        3.    Plaintiff fails to plausibly allege a causal link between her hostile work environment complaint and termination. ........................................................ 21

    C.    Plaintiff fails to allege facts supporting a plausible inference that Defendant wrongfully terminated her. ........................ 22

    D.    Plaintiff Should Not be Granted Leave to Amend Because any Such Amendment Would be Futile. ............................ 23

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

E.    Defendant Alternatively Requests Plaintiff Provide a More Definite Statement Pursuant to Rule 12(e). .................................... 23

V.    CONCLUSION ........................................................................... 24

Case No. 3:24-cv-00810-AJB-BLM

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

5    *Ambat v. City & Cnty. of S.F.,*
     757 F.3d 1017 (9th Cir. 2014) ..................................................................... 12

6

7    *Ashcroft v. Iqbal ("Iqbal"),*
     556 U.S. 662 (2009) ...................................................................................... 11

8

9    *Balistreri v. Pacifica Police Dep't,*
     901 F.2d 696 (9th Cir. 1988) ........................................................................ 11

10

11    *Bell Atl. Corp. v. Twombly ("Twombly"),*
     550 U.S. 544 (2007) ...................................................................................... 11

12    *Bergene v. Salt River Project Agr. Imp. & Power Dist.,*
     272 F.3d 1136 (9th Cir. 2001) ...................................................................... 18

13

14    *Boone v. Amazon.com Servs., LLC,*
     562 F. Supp. 3d 1103 (E.D. Cal. 2022) ....................................................... 10

15

16    *Brooks v. City of San Mateo,*
     229 F.3d 917 (9th Cir. 2000) ........................................................................ 18

17

18    *Burlington Northern & Santa Fe Ry. Co. v. White*
     (2006) 548 US 53 ......................................................................................... 20

19

20    *Dep't of Fair Empl. & Hous. V. Lucent Techs., Inc.,*
     642 F.3d 728 (9th Cir. 2011) ................................................................... 22, 23

21

22    *EEOC v. Consol Energy, Inc.*
     860 F3d 131 (4th Cir. 2017) ......................................................................... 13

23    *Enriquez v. Gemini Motor Transp. LP,*
     No. CV-19-04759-PHX-GMS, 2021 WL 5908208
     (D. Ariz. Dec. 14, 2021) ............................................................................... 18

24

25    *Fowler v. Rhode Island,*
     345 U.S. 67 (1953) ........................................................................................ 15

26

27    *Goldmeier v. Allstate Ins. Co.,*
     337 F3d 629 (6th Cir. 2003) ......................................................................... 13

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

*Heller v. EBB Auto Co.*,
   8 F.3d 1433 (9th Cir. 1993) ................................................................. 12, 15

*Jones v. Cmty. Redevelopment Agency of City of Los Angeles*,
   733 F.2d 646 (9th Cir. 1984) ..................................................................... 23

*Lewis v. Wilkie*
   909 F3d 858 (7th Cir. 2018) ...................................................................... 21

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) ..................................................................... 11

*Peterson v. Hewlett-Packard Co.*,
   358 F.3d 599 (9th Cir. 2004) ..................................................................... 12

*Redmond v. GAF Corp.*,
   574 F.2d 897 (7th Cir. 1978) ..................................................................... 15

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ..................................................................... 11

*In re Stac Elecs. Sec. Litig.*,
   89 F.3d 1399 (9th Cir. 1996) ..................................................................... 11

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ................................................................... 12

*Tiano v. Dillard Dept. Stores, Inc.*,
   139 F.3d 679 (9th Cir. 1998) ..................................................................... 13

*Trent v. Valley Elec. Ass'n Inc.*
   41 F.3d 524 (9th Cir. 1994) ....................................................................... 19

*Trump v. New York*,
   592 U.S. 125 (2020) .................................................................................. 14

*W. Min. Council v. Watt*,
   643 F.2d 618 (9th Cir. 1981) ..................................................................... 11

*Weiss v. Permanente Med. Grp., Inc.*,
   2024 WL 3090496 (N.D. Ca. June 21, 2024).......................................... 15, 16

*Westendorf v. W. Coast Contractors of Nev., Inc.*,
   712 F.3d 417 (9th Cir. 2013) ..................................................................... 18

v                     Case No. 3:24-cv-00810-AJB-BLM

**State Cases**

*Silo v. CHW Med. Found.*,
    27 Cal. 4th 1097 (Cal. 2002) ...............................................................23

**Federal Statutes**

42 U.S.C. § 2000e-3(a) ............................................................................18

Civil Rights Act of 1964 Title VII...................................................*passim*

**State Statutes**

Cal. Gov. Code §12940, subds.(a), (j) ............................................*passim*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

## I. **<u>INTRODUCTION</u>**

Plaintiff Toya R. Hasia-Welch ("Plaintiff") brought this action against her former employer, Disability Rights California ("Defendant" or "DRC"), under Title VII of the Civil Rights Act of 1964 ("Title VII") and the California Fair Employment and Housing Act, California Government Code section 12940 ("FEHA"). Despite this Court's previous dismissal of Plaintiff's First Amended Complaint ("FAC") for failure to state a claim, Plaintiff's Second Amended Complaint ("SAC") continues to fall short of alleging a plausible cause of action.

On the FAC, this Court dismissed Plaintiff's failure to accommodate religion claims under Title VII and FEHA because Plaintiff alleged that she was willing to use gender-neutral pronouns (they/them) and employee names in lieu of preferred pronouns, and to treat transgender employees with respect and kindness in compliance with Defendant's Transgender, Non-Binary Inclusion Policy (the "Policy"). As such, Plaintiff failed to demonstrate any conflict between her alleged religious beliefs (Christianity) and the Policy. The discrimination and wrongful termination claims were also dismissed as they were predicated upon Plaintiff's baseless accommodation claims. Additionally, the Court dismissed Plaintiff's FEHA retaliation claim for lack of sufficient factual allegations to constitute a cognizable claim and her Title VII retaliation claim because she did not "oppose" any allegedly unlawful activity under Title VII by merely initiating the accommodations process and, therefore failed to engage in a protected activity. Plaintiff's SAC adds a bunch of extraneous allegations, but still fails to allege a plausible claim.

The SAC's First and Fourth Causes of Action—alleging failure to accommodate theories under Title VII and FEHA—are adorned with new, conclusory statements attempting to shore up  Plaintiff's accommodation request and characterizing her response to DRC's request for clarification. But the amendments fail to materially change the claims dismissed in the FAC. When these new conclusory allegations are set aside, the relevant claims in the SAC are virtually

1    identical to those in the FAC. Plaintiff's own allegations continue to establish that

2    her sincerely held beliefs permit her to (a) use gender-neutral pronouns such as

3    "they" and "them;" (b) address transgender persons by their name; and (c) show

4    "kindness" and "respect" to any member of the LGBTQIA+ community. Plaintiff

5    also concedes she never told DRC "she would be unwilling or unable to perform her

6    job duties, as outlined in her job description, or projects she was tasked with because

7    of her religious beliefs."   Thus, Plaintiff still fails to plausibly allege a conflict

8    between her religion and the Policy, nor can she credibly allege she adequately

9    informed DRC of such a conflict.

10        Plaintiff also fails to allege any current or impending situation in which her

11   alleged religious beliefs required her to repeatedly—or even on a single instance—

12   use a pronoun another employee asked her not to use. Thus, the SAC provides no

13   new factual allegations demonstrating a conflict between her beliefs and the Policy,

14   nor does it demonstrate she provided DRC with sufficient notice of such a conflict.

15        The SAC's Second and Third Causes of Action—alleging retaliation theories

16   under Title VII and FEHA — must also be dismissed because Plaintiff fails to

17   plausibly establish she engaged in any protected activity, that she suffered an adverse

18   employment action (other than her termination), and a causal connection between her

19   hostile work environment complaint and her termination. First, Plaintiff's retaliation

20   claim based on her religious accommodation request must be dismissed because

21   Plaintiff's own allegations confirm she never had a conflict with the Policy and she

22   failed to request any accommodation for her religious beliefs. As a result, Plaintiff

23   never engaged in a protected activity. Initiating the accommodation process does not

24   equate to "opposing" allegedly unlawful activity under Title VII, and therefore,

25   Plaintiff was not engaged in a protected activity in making any such accommodation

26   request.

27        Second, Plaintiff's retaliation claim based on her hostile work environment

28   complaint must be dismissed because Plaintiff fails to allege any non-conclusory

allegations that establish an objectively reasonable belief of a hostile work environment or that her hostile work environment complaint caused her termination. Even assuming (hypothetically) that Plaintiff can establish a protected activity, she fails to plausibly allege a causal connection between her alleged hostile work environment complaint and her termination.

The SAC's Fifth Cause of Action—alleging wrongful termination in violation of public policy—is purely derivative of Plaintiff's retaliation and failure to accommodate claims and, therefore, fails for the same reasons as the underlying claims.

Defendant respectfully requests the Court to dismiss each of Plaintiff's causes of action alleged in the SAC without leave to amend. Alternatively, Defendant moves this Court to require Plaintiff to provide a more definite statement pursuant to Rule 12(e).

## II.  FACTS AND PROCEDURAL HISTORY

### A.  Plaintiff's First Amended Complaint and The Court's Dismissal Order.

Plaintiff filed this action in the United States District Court for the Southern District of California on May 10, 2024. (Doc. 1-3.) On May 13, 2024, Plaintiff filed a Verified First Amended Complaint ("FAC") alleging five claims under Title VII and FEHA against DRC for failure to accommodate religion, discrimination, retaliation, and wrongful termination. (*See* FAC, Doc. 4).

In a comprehensive ruling issued on December 13, 2024, the Court dismissed the FAC in its entirety. (Ct. Order, Doc. 9). The Court reasoned Plaintiff's own allegations demonstrated she was willing to use gender-neutral pronouns and treat transgender employees with respect in compliance with DRC's Transgender, Non-Binary Inclusion Policy (the "Policy"). Consequently, Plaintiff failed to plausibly allege a bona fide religious belief that conflicted with DRC's Policy. (Ct. Order 8:26-9:18). The Court further concluded Plaintiff failed to provide clarity to DRC about

any conflict between her beliefs and the Policy, and, thus, she did not adequately inform Defendant of such a conflict. (Ct. Order 9:19-10:8). The discrimination and wrongful termination claims were also dismissed as they were predicated upon Plaintiff's failure to accommodate claims. (Ct. Order 10:24-11:6).

Additionally, the Court found Plaintiff's retaliation claim under Title VII failed because she did not "oppose" any allegedly unlawful activity by merely initiating the accommodations process and, thus, was not engaged in a protected activity. (Ct. Order 11:26-13:3). Plaintiff's FEHA retaliation claim was dismissed for lacking the necessary allegations to state a legally cognizable claim for relief. (Ct. Order 13:4-9).

**B. Plaintiff's Second Amended Complaint**

On December 26, 2024, Plaintiff filed a Verified Second Amended Complaint ("FAC") alleging five claims: (1) Failure to Accommodate Religion in violation of Title VII; (2) Retaliation in violation of Title VII; (3) Retaliation in violation of FEHA; (4) Failure to Accommodate Religion in violation of FEHA; and (5) Wrongful Termination in violation of Public Policy.[1]

**1.  <u>The Policy</u>**

Plaintiff alleges DRC has a Transgender, Non-Binary Inclusion Policy (the "Policy"), which states: "All employees have the right to be addressed by their chosen name and pronoun. The intentional or persistent refusal to respect an employee's gender identity, name, or pronoun is harassment." (SAC ¶ 10.)

Plaintiff alleges the DRC Inclusive Pronoun Protocol for Written Material section of the Policy states, "the use of binary pronouns is not inclusive of all TNGI [transgender, non-binary, gender-non-conforming, and intersex] people. Currently, gender-inclusive language can be achieved by simply reusing a noun in-lieu of a

---

[1] Plaintiff asserts the exact same claims in the FAC as the SAC, except Plaintiff's Third Cause of Action under FEHA is for retaliation only and Plaintiff alleges no discrimination claim.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

pronoun or by using 'they/them/their' as a singular, inclusive pronoun." (*Id*. ¶ 11.) Plaintiff avers under the same section, the following language can be found:

> **Use Inclusive, Singular Pronouns "They/Them/Their"**
> "They" is recognized as a singular, gender-inclusive pronoun. When the use of pronouns is necessary to refer to an individual, use "they."

(*Id*.)

Plaintiff alleges under the section titled Gender Affirmation, DRC's Policy states, "Employees who transition are entitled to the support of DRC management, Human Resources, and their colleagues." (*Id*. ¶ 12.)

### 2. **Plaintiff's Religious Accommodation Allegations.**

According to the Second Amended Complaint ("SAC"), Plaintiff Toya R. Hasia-Welch alleges she worked as an investigator in training at Disability Rights California's ("DRC") San Diego location from March 16, 2022, to July 1, 2022. (SAC 2:4-6, ¶5). Plaintiff asserts she is a follower of the Christian faith and believes God assigns each person a gender at birth as male or female. (*Id*. ¶¶ 7–8.) She further claims that, during regular informal staff meetings, she shared she is of the Christian faith. (*Id*. ¶ 15.) Plaintiff claims her sincerely held beliefs dictate she cannot support positions contrary to the teachings of the Bible, including the use of pronouns other than those corresponding to one's biological gender at birth or gender-neutral pronouns such as they/them/their. (*Id*. ¶¶ 8-9.)

Plaintiff alleges DRC's Policy, which states, "employees have the right to be addressed by their chosen name and pronoun" and requires employees to "support" colleagues who transition, conflicted with her religious beliefs. (SAC ¶¶ 13-14).

Plaintiff alleges her immediate supervisor identified as a transgender person and that, on or about April 8, 2022, she sought clarification regarding DRC's Policy from this supervisor. (SAC ¶¶ 16-17). She inquired if Christians were permitted to use gender-neutral pronouns instead of an employee's chosen pronoun. (*Id*.) Plaintiff claims her supervisor responded, "it would be inappropriate to use 'they/them'" in

place of a requested pronoun, and "that trans men are men and trans women are women." (SAC ¶ 17). Plaintiff avers her supervisor later requested to no longer manage her due to her religious beliefs. (SAC ¶¶ 17-18.)

On April 29, 2022, Plaintiff claims she submitted a request to DRC's HR employee, Chris White, for a religious accommodation to the Policy provisions requiring her to support a transgender employee's transition and use an employee's chosen pronouns. (SAC ¶ 19). Plaintiff explained she required accommodation because "the Policy provision requiring her to address employees by their chosen name and pronoun because the requirement "forces [her] to violate [her] faith by forcing [her] to support someone's personal life decisions." (*Id.* ¶ 20). She further explained she needed accommodation from the requirement "that she support employees who transition" because she "cannot and will not offer support to what [she] believe[s] to be sin . . ." (*Id.*).

On May 3, 2002, Ms. White responded to her request, stating: "***Encouraging the use of pronouns does not mean it is required. There are other options as the policy states.*** What is not compliant with our policy is repeatedly using a pronoun that another employee has asked you not to use. ***Support means treating co-workers and clients with respect and kindness.*** Do you feel you need an accommodation based on your religion?" (SAC ¶ 21) (emphasis added).

Plaintiff attempts to retroactively supplement her communications with Ms. White and recharacterize her response by alleging Ms. White's statement confirmed she still required an accommodation because she "could be" in violation of DRC's Policy "if she repeatedly used they/them/their or an employee's name," instead of the chosen pronoun, and she could be accused of harassment for repeatedly failing to use an employee's chosen pronoun. (SAC ¶ 22). However, Plaintiff's own allegations confirm she has no objection to using an employee's name instead of a pronoun under the Policy, and therefore, no conflict existed. (SAC ¶¶ 23, 33).

Even though Ms. White confirmed "support" means to show "respect" and "kindness," Plaintiff asserts that, on May 3, 2022, she explained to Ms. White that she had "***no objection to treating co-workers and clients with respect and kindness,***" but she still required a religious accommodation due to the words "support" and "entitled to" being "open to interpretation." (SAC ¶ 23). She also raised concerns about a hostile work environment due to her religious beliefs and requested an accommodation in her employee file to protect her from harassment claims. (SAC ¶ 24). Although Plaintiff claims she continued to require a religious accommodation, Plaintiff's own allegations confirm she was willing to treat co-workers with respect and kindness. Thus, no conflict existed.

On May 4, 2022, Ms. White's response reiterated to Plaintiff that no conflict existed: "***I am not sure from what job requirement you are requesting an accommodation . . . I don't see a need for an accommodation***" so long as [Plaintiff] was "willing to comply with requirements that [she] use the pronouns requested by [her] coworkers and clients (***or names and nouns as expressed in the policy***)." (SAC ¶ 24) (emphasis added). While Plaintiff asserts Ms. White "ignored [her] explanation of a religious conflict" and her response "avoided the obvious need for accommodation," Plaintiff's allegations fail to show she ever identified for Ms. White any job requirement that actually conflicted with her religious belief in response to Ms. White's repeated follow-ups seeking clarification of Plaintiff's requests for accommodation. (*Id.*).

Plaintiff also alleges that Ms. White's May 4, 2022 response contradicted her previous email, which stated, "repeatedly using a pronoun that another employee has asked you not to use" would not be compliant with DRC's policy. Plaintiff alleges this purported "contradiction" resulted in further confusion for Plaintiff regarding the use of gender-neutral pronouns versus chosen pronouns. (SAC ¶ 25.) However, Plaintiff's own allegations confirm Ms. White's response was consistent with her

prior email because on both occasions Ms. White confirmed Plaintiff could either use names or nouns, as explicitly set forth in the Policy. (SAC ¶¶ 21, 24.)

On May 6, 2022, Plaintiff responded to Ms. White's email, reiterating the perceived conflict between her beliefs and DRC's Policy, in that she interprets the word "support" to mean "agree with." As such, Plaintiff requested a religious accommodation to refrain from having to show support for transgender co-workers beyond basic respect, kindness, and human decency. (SAC ¶ 26.) However, Plaintiff's continued objections to the word "support" did not create a conflict with an employment duty, as confirmed by Ms. White's response on June 30, 2022: "With respect to your religious accommodation request, I am unclear what you want us to do. As we have discussed, you must work cooperatively and respectfully with all employees and clients at DRC. I understand you have an issue with the word 'support' in our [Policy], but we are not changing that [Policy] at this time." (SAC ¶ 31.)

Plaintiff alleges she responded to Ms. White's memorandum the same day, generically reiterating her need for a religious accommodation, and asking if her initial request was denied. But Plaintiff again failed to articulate  any alleged conflict between DRC's Policy and her sincerely held religious beliefs. (SAC ¶ 33.) Plaintiff also avers she asked for "a simple statement from DRC stating that [she] is excused from 'supporting' the personal choices of my fellow transgender and gender dysphoric staff" and she "will not be referring to a biological female as 'he,' nor a biological make as "she" . . ." (*Id*.)  However, Plaintiff simply providing information as to what ***accommodation she desired*** failed to provide any clarity as to what the ***actual conflict*** between her religious belief and the Policy was. Plaintiff was repeatedly told that "support" meant to show kindness and respect to others and, as such, if she did not wish to use an employee's preferred pronoun, she could refer to the employee by name. Plaintiff does not allege any objections to that Policy explanation.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Although Plaintiff repeatedly proffers circular allegations and legal conclusions pertaining to this purported conflict between her religious belief and the words "support" and "entitled" and the requirement to not repeatedly use a "pronoun that another employee has asked [her] not to use," Plaintiff's own allegations confirm that no such conflict existed under the Policy. This is confirmed by the allegations in Plaintiff's SAC, which states, "[Plaintiff] stated she was willing to show **kindness and respect** to any member of the LGBTQIA+ community, but she was only **willing to use a transgender employee's name or gender- neutral pronouns**, not a chosen pronoun." (SAC ¶ 33) (emphasis added).

Further evidencing the lack of conflict between Plaintiff's religious beliefs and the Policy are Plaintiff's allegations that, prior to her termination, **she never indicated to DRC that she would be unwilling or unable to perform her job duties due to her religious beliefs.** (SAC ¶ 38) (emphasis added). In support thereof, she provides an example of successfully advocating for a DRC client seeking an abortion, despite her pro-life views. (*Id.* ¶ 38.)

Finally, Plaintiff alleges that, on July 1, 2022, she was terminated effective July 7, 2022. Plaintiff adds a conclusory allegation that DRC cited the Bible and her religious beliefs as reasons for her termination. (SAC ¶ 34). But none of the facts required to state a plausible claim are included. For example, she does not allege who the decision maker was in terms of her termination, who communicated the termination decision to her, or how said decision was communicated.

### 3. Plaintiff's retaliation allegations.

Plaintiff alleges, as ultimately nothing more than a legal conclusion, that during May and June 2022, she was retaliated against by DRC employees for asserting her religious beliefs. Specifically, Plaintiff claims: (i) on May 5, 2022, her supervisor, Liz Logsdon, falsely accused her via email of using her personal laptop; (ii) on May 6, 2022, Plaintiff was asked to complete a six-month goal sheet, which another colleague did not have to complete; (iii) Liz Logsdon repeatedly asked

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

1    Plaintiff if she would like help finding alternate employment; (iv) Jung Pham,

2    Plaintiff's Manager, persistently urged Plaintiff to openly discuss her religious

3    opinions and faith at work, which Plaintiff consistently declined to do; and (v)

4    Plaintiff was intentionally given false directions and guidance by DRC, which, if

5    followed, would have resulted in legal violations, including Ms. Logsdon coaching

6    Plaintiff to falsify her meal reimbursement sheets and instructing her not to notify

7    authorities if she encountered DRC clients engaging in criminal acts, such as

8    pedophilia. (SAC ¶28.)  However, none of Plaintiff's allegations provide any basis

9    for a hostile work environment complaint based on a protected characteristic under

10   either FEHA or Title VII.

11       Plaintiff further alleges that it is her "belief and understanding that [DRC's]

12   delay in the accommodation process and the retaliatory actions by [DRC's]

13   employees were deliberate attempts to cause Plaintiff to resign from her job." (SAC

14   ¶29). Plaintiff claims, "[d]ue to [DRC's] retaliatory actions, [she] filed a hostile work

15   environment claim with Human Resources." (SAC ¶30). She also alleges that "[i]n

16   an effort to resolve her claim in an amicable fashion and live by the teachings of

17   scripture, [she] later withdrew her claim after [DRC's] employees apologized to her

18   and explained that they would leave [Plaintiff] alone and wished to have a fresh start

19   in their professional relationship," but she continued to experience discrimination.

20   (*Id*).

21       For the reasons explained in more detail below, none of Plaintiff's claims

22   satisfy the federal pleading standards. Therefore, the Court should grant Defendant's

23   motion to dismiss the SAC in its entirety.

24   **III.   LEGAL STANDARD**

25       "The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the

26   legal sufficiency of the complaint." *Boone v. Amazon.com Servs., LLC*, 562 F. Supp.

27   3d 1103 (E.D. Cal. 2022) (citing *N. Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d

28   578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal

1  theory or the absence of sufficient facts alleged under a cognizable legal theory."

2  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

3        To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain

4  "more than labels and conclusions" or "a formulaic recitation of the elements of a

5  cause of action." *Bell Atl. Corp. v. Twombly ("Twombly")*, 550 U.S. 544, 555

6  (2007); *see Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) ("[B]are

7  assertions . . . amounting to nothing more than a 'formulaic recitation of the

8  elements'" of a claim "are not entitled to an assumption of truth." (quoting *Ashcroft*

9  *v. Iqbal ("Iqbal")*, 556 U.S. 662, 681 (2009)). In this regard, courts may not "assume

10  the truth of legal conclusions merely because they are cast in the form of factual

11  allegations." *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *see In re*

12  *Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) ("Conclusory allegations

13  of law and unwarranted inferences are insufficient to defeat a motion to dismiss for

14  failure to state a claim."); *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the

15  elements of a cause of action, supported by mere conclusory statements, do not

16  suffice."). "Nor is the court required to accept as true allegations that are merely

17  conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v.*

18  *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff armed with

19  nothing more than conclusions" cannot "unlock the doors of discovery." *Iqbal*, 556

20  U.S. at 678-679.

21        Further, a plaintiff must articulate "enough facts to state a claim to relief that is

22  plausible on its face." *Twombly*, 550 U.S. at 570. "The plausibility standard is not

23  akin to a 'probability requirement,' but rather, it asks for more than a sheer

24  possibility that a defendant has acted unlawfully" or "facts that are 'merely

25  consistent with' a defendant's liability." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

26  550 U.S. at 556, 557). It further asks whether the pleading's "factual content . . .

27  allows the court to draw the reasonable inference that the defendant is liable for the

28  misconduct alleged," (*Id.* (citing *Twombly*, 550 U.S. at 557)), such that "it is not

1    unfair to require the opposing party to be subjected to the expense of discovery and

2    continued litigation," *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

3    **IV.    LEGAL ARGUMENT**

4          **A.  Plaintiff fails to allege facts supporting a plausible inference that Defendant failed to accommodate her religious beliefs in violation of Title VII or FEHA.**

5

6          In Plaintiff's first and fourth causes of action, she avers DRC failed to

7    accommodate her religious beliefs in violation of Title VII and FEHA, respectively,

8    because she "held a deeply sincere religious objection to Defendant's Policy

9    requiring her to 'support' a co-worker's transition and use an employee's chosen

10   pronoun, and asked Defendant to accommodate her sincerely held religious belief

11   due to such conflict." (SAC ¶¶ 44, 89-92.)

12         To establish a prima facie case of failure to accommodate religion, the plaintiff

13   must show that (1) she had a bona fide religious belief, the practice of which

14   conflicts with an employment duty; (2) she informed her employer of the belief and

15   conflict; and (3) the employer discharged, threatened, or otherwise subjected her to

16   an adverse employment action because of [her] inability to fulfill the job

17   requirement." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004);

18   *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993).[2]

19         Here, Plaintiff has not alleged any facts demonstrating the practice of her

20   religious belief conflicted with an employment duty or that she notified DRC about

21   the nature of her religious beliefs and how they conflict with her employment duties.

22         **1.    Plaintiff's religious belief did not conflict with the Policy.**

23         To establish a failure to accommodate religion claim under Title VII and

24   FEHA, a plaintiff must allege, among other things, she holds "a bona fide religious

25   belief" that *conflicts with an employment requirement*. *Heller*, 8 F.3d at 1438. The

26

27   _____

28   [2] The Ninth Circuit has noted that "FEHA is interpreted consistently with Title VII" so the federal and state law claims are analyzed uniformly. *See Ambat v. City & Cnty. of S.F.*, 757 F.3d 1017, 1023 n.2 (9th Cir. 2014).

bona fide belief must make it *impossible* for the employee to perform the employee's job; i.e., the employee must establish a conflict between the religious belief and the employment *duties*. See *Goldmeier v. Allstate Ins. Co*., 337 F3d 629, 634 (6th Cir. 2003) (prima facie case of religious discrimination exists where conflict between employee's religious belief and employment requirement can only be removed by employee's forfeiture or expenditure of substantial benefit available to other employees); *Tiano v. Dillard Dept. Stores, Inc*., 139 F3d 679, 683 (9th Cir. 1998) (employer not required to accommodate employee who took time off for pilgrimage to Yugoslavia where trip conflicted with employee's job duties and no evidence that timing of trip part of employee's religious beliefs); *EEOC v. Consol Energy, Inc*. 860 F3d 131, 142-143 (4th Cir. 2017) (employee's sincerely-held belief that using biometric hand scanner would render him Antichrist follower created conflict between religious beliefs and job duties).

First, Plaintiff generically asserts a conflict exists between her religious beliefs and the Policy's provision, which required her to use an employee's chosen pronoun. (SAC ¶¶ 13, 19-20). For example, Plaintiff's SAC contends she "could" have a conflict *if* an employee asks her to use a preferred pronoun rather than "they/them" or an employee's name. (SAC ¶¶ 22, 24, 33).  But as alleged in the FAC, the Policy permits using an employee's "name" instead of a pronoun, a fact further confirmed by Ms. White multiple times to Plaintiff. (SAC ¶¶ 11, 21, 33.)   Because Plaintiff alleges she could address employees by their "name," her allegations confirm that in fact she never had a conflict with the Policy. (SAC ¶ 33).

Second, Plaintiff contends a conflict between her religious beliefs and the Policy provision requiring "support" for a transgender employee's transition, because she "cannot and will not offer support to what [she] believe to be sin." (SAC ¶¶ 13, 19-20). Here, the Policy states, "[e]mployees who transition are entitled to the *support* of DRC management, Human Resources, and their colleagues." (SAC ¶ 12 (emphasis added)). As alleged in the SAC, Ms. White's May 3, 2022 email

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

clarified that "[s]upport means treating co-workers and clients with respect and kindness." (Id. ¶ 21.) Because Plaintiff alleges she was "willing to show *kindness and respect* to any member of the LGBTQIA+ community" her own allegations confirm that there was no conflict between Plaintiff's religious beliefs and  the Policy. (SAC ¶¶ 23, 33).

Attempting to salvage her claims, Plaintiff's SAC includes new allegations contending that the words "support" and "entitled to" reference how transgender and non-binary people should be treated. She asserts such language could be open to interpretation and, therefore, she continued to require a religious accommodation. (SAC ¶ 26). However, Plaintiff's continued objections to the word "support" failed to create any conflict with an *employment duty*, as confirmed by Ms. White's response on June 30, 2022. (*Id.* ¶ 31). Plaintiff cannot create a conflict where none exists based solely on her own manufactured definition of an *employment duty*, as such duties are exclusively defined by the *employer*. In fact, Plaintiff alleges she "**never indicated** to [DRC] that she would be unwilling or unable to perform her job duties, as outlined in her job description, or projects she was tasked with because of her religious beliefs." (SAC ¶ 38) (emphasis added). Thus, by Plaintiff's own admission, there was never any conflict between her religious beliefs and any employment duty.

Third, further warranting dismissal is the fact that Plaintiff's allegations demonstrate she **lacks standing** to bring this claim. Plaintiff raises the hypothetical scenario in which *someday*, if an employee asks her to use a preferred pronoun other than "they/them/their," a conflict would arise between her religious beliefs and an employment duty. (SAC ¶¶ 17, 22, 33). However, Plaintiff never alleges that any such situation ever arose. And even if that happened, Plaintiff would have no objection to addressing that employee by their name, which complies with the Policy. A hypothetical event cannot provide the requisite standing to bring a claim. *Trump v. New York*, 592 U.S. 125, 131 (2020) (standing requires an "injury that is

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

1  concrete, particularized, and imminent rather than conjectural or hypothetical" and

2  that is not "dependent on "contingent future events that may not occur as anticipated,

3  or indeed may not occur at all.") As such, Plaintiff's claim must be dismissed.

### 2.  Plaintiff failed to adequately inform DRC of the conflict between her religious beliefs and the Policy.

6  Even assuming (hypothetically) that Plaintiff alleged the requisite facts of a

7  conflict, she failed to allege any facts that she notified her employer about the nature

8  of her religious beliefs and how those beliefs conflict with her employment duties.

9  An employee seeking an accommodation need only provide "enough

10 information...to permit the employer to understand the existence of a conflict

11 between the employee's religious practices and the employer's job requirements."

12 *Heller*, 8 F.3d at 1439; *see also Redmond v. GAF Corp.*, 574 F.2d 897, 902 (7th Cir.

13 1978) ("The employee has the duty of informing [her] employer of [her] religious

14 needs so that the employer has notice of the conflict").

15 "Any greater notice requirement would permit an employer to delve into the

16 religious practices of an employee in order to determine whether religion mandates

17 the employee's adherence," and if a court may not do so, neither may the employer.

18 *Heller*, 8 F.3d at 1439 (invoking *Fowler v. Rhode Island*, 345 U.S. 67, 70 (1953),

19 which held that, in a First Amendment context, a court may not determine whether a

20 particular religious practice is required by the religion). "The employee must,

21 however, relay sufficient information about the conflict between the religious belief

22 and the employer's practice or policy, not simply the employee's desired

23 accommodation, in order for an employer to ensure it has met its obligations under

24 both FEHA and Title VII." *Weiss v. Permanente Med. Grp., Inc.*, 2024 WL 3090496,

25 at *3 (N.D. Ca. June 21, 2024) (granting motion for judgment on the pleadings on

26 the plaintiff's failure to accommodate religious beliefs claims because the plaintiff

27 "failed to aver plausibly that she adequately informed [the defendant] of the conflict

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

1   between her religious beliefs and the Policy" after the defendant sought clarity of the

2   plaintiff's request).

3       In *Weiss*, for example, the plaintiff alleged her religious beliefs prohibited her

4   from taking the Covid-19 vaccine. 2024 WL 3090496 at ** 2-3, 9. However,

5   Plaintiff admitted to never before having declined a vaccine due to her religious

6   beliefs. *Id*. at *9. When asked what makes the COVID-19 vaccine different from

7   others, the plaintiff – like Plaintiff in this case – responded only by restating her

8   religious views. *Id.* The *Weiss* Court opined the plaintiff "provided no direct

9   response" to the question and concluded her "generic explanations amounted to the

10  kind of 'blanket privilege' that would have resulted in a 'limitless excuse for

11  avoiding all unwanted obligations' and provided little basis for [the defendant] to

12  evaluate the extent of her religious beliefs' potential conflict with the Policy." *Id.* at

13  **9-10. The court dismissed the claim, finding that plaintiff had "failed to aver

14  plausibly that she adequately informed [the defendant] of the conflict between her

15  religious beliefs and the Policy." *Id.* at **1, 13-14.

16      Similar to the plaintiff in *Weiss*, Plaintiff Hasia-Welch fails to allege any facts

17  demonstrating she ever directly responded to Ms. White's question: "Do you feel

18  you need an accommodation based on your religion?" (SAC ¶21). As in *Weiss*,

19  Plaintiff "either refused to answer" the follow up questions "or provided vague and

20  generic responses."  Plaintiff argues Ms. White was attempting to delay the

21  accommodation process by seeking clarification, however, Plaintiff's unclear,

22  generic, and vague responses served as a basis for DRC to seek clarity on the very

23  responses she had already provided.

24      Moreover, Plaintiff's issue with the word "support," despite White's

25  clarification is exactly "the kind of 'blanket privilege' that would have resulted in a

26  'limitless excuse for avoiding all unwanted . . . obligations' and provided little basis

27  for [DRC] to evaluate the extent of her religious beliefs' potential conflict with the

28  Policy." 2024 *WL 3090496, at *3* (quoting *Finkbeiner v. Geisinger Clinic,* 623 F.

16

Supp. 3d 458, 465 (M.D. Pa. 2022)).  Plaintiff responded with the same assurances, i.e. that she had no conflict with the Policy and she was willing and able to "show kindness and respect to any member of the LGBTQIA+ community" and "use a transgender employee's name or gender neutral pronouns, not a chosen pronoun." (SAC ¶33). Based on Plaintiff's assurances, there was absolutely no conflict with the Policy.

Thus, Plaintiff's claims should be dismissed based on her failure to plausibly allege that she informed Defendant about the nature of her religious beliefs and an actual conflict with her employment duties.

### 3. <u>Accommodation not required if resulting in violation of FEHA.</u>

Even assuming (hypothetically) that Plaintiff can establish a prima facie case, under the FEHA, an accommodation is not required if it would result in a violation of the FEHA or any other law prohibiting discrimination or protecting civil rights. Cal. Gov. Code § 12940(l)(3). The FEHA prohibits employment discrimination and harassment based on gender identity and expression. Cal. Gov. Code § 12940, subds. (a), (j). For example, an employer can be liable if co-workers create a hostile work environment for an employee who is undergoing a gender transition or when customers or other third parties harass an employee because of their gender identity or expression. Here, even if Plaintiff can hypothetically state a prima facie claim, Plaintiff's claim fails to the extent Plaintiff's requested accommodations in the SAC violates FEHA as allowing the accommodation could necessarily result in the creation of a hostile working environment for members of a protected class.

### B. Plaintiff fails to allege facts supporting a plausible inference that DRC retaliated against Plaintiff because of her request for accommodation or hostile work environment complaint in violation of Title VII or FEHA.

In Plaintiff's Second and Third causes of action, she avers Defendant retaliated against her in violation of Title VII and FEHA, respectively, for filing a hostile work environment complaint and initiating the accommodation process. (SAC ¶¶ 54-69, 70-84.)  Retaliation claims under Title VII and FEHA require three

elements. "[A] plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brooks v. City of San Mateo*, 229 F.3d 917, 923, 928 (9th Cir. 2000) (examining both Title VII and FEHA claims); *Bergene v. Salt River Project Agr. Imp. & Power Dist*., 272 F.3d 1136, 1141 (9th Cir. 2001) (Title VII).

### 1. <u>Plaintiff fails to allege a protected activity.</u>

Plaintiff alleges her request for a religious accommodation qualifies as a protected activity. (SAC ¶60.) However, as discussed above, Plaintiff was willing to use appropriate gender-neutral pronouns or names and treat transgender employees with respect and kindness. Hence, her allegations confirm she never had a conflict with the Policy. Thus, Plaintiff failed to request any accommodation for her religious beliefs and, therefore, she never engaged in a protected activity.

In addition, while the Ninth Circuit has not clarified whether requesting a religious accommodation constitutes a "protected activity" for Title VII retaliation claim purposes, other districts have found that <u>it does not</u>. *See Enriquez v. Gemini Motor Transp. LP*, No. CV-19-04759-PHX-GMS, 2021 WL 5908208, at *7 (D. Ariz. Dec. 14, 2021) ("Although the Ninth Circuit has not decided whether requesting a religious accommodation constitutes 'oppos[ing] . . . an unlawful employment practice,' the Eighth Circuit has determined that it does not.") (*citing EEOC v. N. Mem'l Health Care*, 908 F.3d 1098 (8th Cir. 2018)). "An employee engages in protected activity when she opposes an employment practice that either violates Title VII or that the employee reasonably believes violates that law." *Westendorf v. W. Coast Contractors of Nev., Inc.,* 712 F.3d 417, 422 (9th Cir. 2013); *see also* 42 U.S.C. § 2000e-3(a). However, as this Court found in its prior Order, Plaintiff did not "oppose" allegedly unlawful activity by initiating the accommodations process and, thus, was not engaged in a protected activity. *Westendorf*, 712 F.3d at 422. (Order 11:26-13:3). Plaintiff's SAC adds no new allegations, and thus, the Court has no reason to deviate from its prior conclusion.

Plaintiff also asserts her "hostile work environment" complaint is protected activity. (SAC ¶ 61). Opposition is protected as long as the employee had a reasonable and good faith belief the employer's practice was unlawful. (*Trent v. Valley Elec. Ass'n Inc.* 41 F3d 524, 526 (9th Cir. 1994) (a reasonable and good faith belief that the incident constituted unlawful sexual harassment). "[I]t is good faith and reasonableness, not the fact of discrimination, that is the critical inquiry in a retaliation case." *Yanowitz v. L'Oreal USA, Inc.* 36 C4th 1028, 1043-1044, fn. 4 (2005).

Here, Plaintiff fails to allege any non-conclusory allegations establishing an objectively reasonable belief of a hostile work environment claim. Plaintiff alleges, as a legal conclusion, she filed a hostile work environment complaint with HR after DRC employees allegedly retaliated against her for asserting her religious beliefs, and she later withdrew the complaint. (SAC ¶¶ 28-29). Plaintiff further alleges the complaint was based on HR providing her a six-month goal sheet, and her supervisor Liz Logsdon sending her emails related to an investigation, asking if she needed help finding another job, and providing her instructions related to her job duties (SAC ¶ 28). Plaintiff also claims she experienced retaliation when her manager, Jung Pham, repeatedly told her to openly discuss her religious opinions and faith at work, which Plaintiff consistently declined to do. (*Id.*). Plaintiff further alleges she "believes [DRC] wanted her to openly discuss her faith so that employees could then initiate hostile work environment and harassment claims against her." (*Id.*).

However, Plaintiff fails to plausibly allege a reasonable and good faith belief of the existence of a hostile work environment. She concedes she withdrew her hostile work environment complaint, which was based solely on instructions from her employer related to her job and job duties. Plaintiff also fails to allege any facts indicating that either Mr. Pham or Ms. Logsdon were aware of her request for accommodation. Asking Plaintiff to share information about her faith, when she had already shared that she is a Christian during weekly "meet and greet" staff meetings,

1  cannot create a reasonable belief of the existence of a hostile work environment (Id.

2  ¶¶ 28-29).

3      The SAC also lacks factual allegations reflecting a hostile work environment

4  or harassment based on a protected characteristic under Title VII or FEHA, including

5  Plaintiff's religion. For example, there are no allegations in the SAC indicating an

6  environment that would be offensive, intimidating, or hostile to reasonable people.

7      Thus, Plaintiff fails to allege facts supporting her reasonably belief that by

8  asserting a hostile work environment complaint, she was opposing conduct that

9  qualified as an unlawful employment practice under Title VII or FEHA.

10     **2. <u>Plaintiff fails to plausibly allege an adverse employment action.</u>**

11     Even assuming (hypothetically) Plaintiff can establish a protected activity, to

12  the extent Plaintiff's retaliation claims are based on the allegation DRC retaliated

13  against her by "repeatedly delaying the accommodation process, failing to engage in

14  a meaningful interactive process, and making false accusations against her," she fails

15  to plausibility allege she suffered an adverse action.  (SAC ¶62).

16     Under Title VII, the anti-retaliation provision "covers those (and only those)

17  employer actions that would have been materially adverse to a reasonable employee

18  or job applicant … [T]hat means the employer's actions must be harmful to the point

19  that they could well dissuade a reasonable worker from making or supporting a

20  charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White* (2006)

21  548 US 53, 57.  Under the FEHA, an "adverse employment action" must materially

22  affect the terms, conditions or privileges of employment. (*Yanowitz*. 36 C.4th at

23  1050-1052 (2005) (not enough that action may deter others from engaging in

24  protected activity); *see also Pinero v. Specialty Restaurants Corp.* 130 CA4th 635,

25  641-642 (2005)

26     In this case, Plaintiff's allegations that the accommodation process was

27  delayed and there was no meaningful interactive process fail to plausibly allege an

28  adverse action. As previously explained, Plaintiff's generic and vague responses

necessitated DRC's efforts to seek clarity on the very responses she had already provided. Plaintiff's own allegations confirm she never experienced a conflict with the Policy. Therefore, she failed to request any accommodation for her religious beliefs.

Furthermore, Plaintiff's claim that the "false accusation against her constitutes retaliation" is unfounded. Plaintiff cannot rely on her supervisors' communications during an investigation to substantiate an adverse action. Job conditions that are merely "inconvenient and irritating" do not rise to the level of significance required to be considered adverse actions, such as demotions, loss of pay or benefits, public humiliation, or harassment in the workplace. *McRae v. Department of Corrections & Rehabilitation* (2006) 142 CA4th 377, 393; *Lewis v. Wilkie* 909 F3d 858, 868-871 (7th Cir. 2018) (following employee's reinstatement after EEO complaint, employer's failure to provide locker, delayed or short paycheck, mandatory 60-day performance review, monitoring, alleged false accusations, unnecessary instruction, and solicitation of negative information about employee from coworkers were not materially adverse actions). Ultimately, Plaintiff's conclusory allegations fail to demonstrate a materially adverse action by DRC under either Title VII or FEHA, such as a demotion or loss in pay, and therefore, Plaintiff's claims as alleged herein should be dismissed for failing to meet the requisite standard for alleging an adverse action.

### 3. **Plaintiff fails to plausibly allege a causal link between her hostile work environment complaint and termination.**

Even assuming (hypothetically) Plaintiff can establish she engaged in a protected activity by filing her hostile work environment complaint, she fails to plausibly allege a causal connection between her complaint and her termination. Plaintiff alleges her "submission of a religious accommodation request and religious beliefs were motivating factors in the termination of her employment" (SAC ¶¶65,

80). However, Plaintiff does not allege her hostile work environment complaint was a motivating factor in her termination.

Plaintiff's conclusory and vague assertion that she was terminated "soon after" filing her hostile work environment complaint is insufficient to state a claim for retaliation. The SAC lacks specific allegations demonstrating that Plaintiff's termination was caused by her hostile work environment complaint. While temporal proximity can sometimes suggest a causal link, Plaintiff fails to provide any facts beyond the mere sequence of events, i.e., that the termination occurred "after" the hostile work environment complaint. That is insufficient to establish a causal connection. Plaintiff does not allege who the decision maker was in terms of her termination, who communicated the termination decision to her, or how the decision was communicated.

Moreover, Plaintiff's allegations that she was terminated due to her religious beliefs and requests for accommodations, coupled with her failure to allege her hostile work environment complaint caused her termination, undermine any inference that she was terminated for making the hostile work environment complaint. The absence of any factual allegations connecting her complaint to her termination further weakens her claim.

Accordingly, Plaintiff fails to plausibly allege a causal connection between her hostile work environment complaint and her termination, which warrants dismissal.

## C. Plaintiff fails to allege facts supporting a plausible inference that Defendant wrongfully terminated her.

"Under California common law, although 'an at-will employee may be terminated for no reason, or for an arbitrary or irrational reason, there can be no right to terminate for an unlawful reason or a purpose that contravenes fundamental public policy.'" *Dep't of Fair Empl. & Hous. V. Lucent Techs., Inc*., 642 F.3d 728, 748 (9th Cir. 2011) (quoting *Silo v. CHW Med. Found.,* 27 Cal. 4th 1097 (Cal. 2002)). This "public policy exception to the at-will employment rule must be based on policies

1    carefully tethered to fundamental policies that are delineated in constitutional or

2    statutory provisions." *Silo*, 45 P.3d at 1166 (internal quotation marks omitted). "The

3    elements for this tort are (1) the existence of a public policy and (2) a nexus between

4    the public policy and an employee's termination." *Lucent Techs., Inc.*, 642 F.3d at

5    749.

6        Plaintiff fails to allege facts supporting a plausible inference of wrongful

7    termination because her claim is entirely derivative of her religious discrimination,

8    retaliation, and failure to accommodate claims, and thereby fails for the same reasons

9    as the underlying claims.

10   ### D. Plaintiff Should Not be Granted Leave to Amend Because any Such
11   Amendment Would be Futile.

12       Leave to amend a complaint should be denied where amendments would be

13   futile or otherwise subject to dismissal. *Jones v. Cmty. Redevelopment Agency of*

14   *City of Los Angeles,* 733 F.2d 646, 650 (9th Cir. 1984). Leave to amend with respect

15   to the Plaintiff's claims should not be granted because her claims fail as a matter of

16   law and there is no possible amendment that could cure the pleading defects. This is

17   Plaintiff's second attempt to state a viable claim in a verified complaint, and she will

18   not be able to allege a valid claim because she cannot allege her religious belief

19   conflicted with the policy or a legally cognizable retaliation claim. As such, leave to

20   amend should be denied.

21   ### E. Defendant Alternatively Requests Plaintiff Provide a More Definite
22   Statement Pursuant to Rule 12(e).

23       Rule 12(e) provides that a "party may move for a more definite statement of a

24   pleading to which a responsive pleading is allowed but which is so vague or

25   ambiguous that the party cannot reasonably prepare a response." Should the Court

26   not grant Defendant's motion under Rule 12(b)(6), Defendant alternatively moves

27   this Court to require Plaintiff to provide a more definite statement pursuant to Rule

28   12(e) for the reasons set forth herein.

1

## V.    <u>CONCLUSION</u>

2         For the reasons set forth herein, Defendant requests the Court's granting of the

3  motion and dismissal of the action. Alternatively, Defendant requests the Court

4  require Plaintiff to provide a more definite statement.

5

6  DATED: January 10, 2025                OGLETREE, DEAKINS, NASH, SMOAK &
                                          STEWART, P.C.
7

8

9                                         By: /s/ George J. Theofanis
                                              _____
10                                            Michael J. Nader
                                              Alexandra M. Asterlin
11                                            George J. Theofanis

12                                            Attorneys for Defendant
                                              DISABILITY RIGHTS CALIFORNIA
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT