1  Michael Peffer (SBN 192265)
2  Nilab Sharif (SBN 231296)
   PACIFIC JUSTICE INSTITUTE
3  2200 N. Grand Avenue
   Santa Ana, CA  92704
4  Telephone:  (714) 796-7150
5  Email: michaelpeffer@pji.org

6  Attorneys for Plaintiff, TOYA R. HASIA-WELCH

7

8              UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10

11
   | TOYA R. HASIA-WELCH, an individual, | **CASE NO.:**   3:24-cv-00810-AJB-BLM |
12 |                                     |                                      |
13 |              Plaintiff,             | **OPPOSITION TO DEFENDANT'S**        |
14 |                                     | **MOTION TO DISMISS PLAINTIFF'S**    |
   |        v.                           | **SECOND AMENDED COMPLAINT**         |
15 |                                     |                                      |
16 | DISABILITY RIGHTS CALIFORNIA;       | Date:   March 6, 2025                 |
17 | DOES 1-10, inclusive                | Time:  2:00 P.M.                     |
   |                                     | Judge: Hon. Anthony J. Battaglia     |
18 |              Defendants.            | Location: Courtroom 4A, 4th Floor    |
19 |                                     |                                      |
20 |                                     | FAC Filed:  May 10, 2024             |

21
22
23
24
25
26
27
28

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ...........................................6

II.   STATEMENT OF FACTS ....................................................................8

III.  PROCEDURAL HISTORY .................................................................13

  A.  PLAINTIFF'S ALLEGATIONS- LEGAL STANDARD UNDER TITLE VII ..........................14

IV.  LEGAL STANDARD FOR MOTION TO DISMISS .............................................15

V.   LEGAL ARGUMENT ......................................................................16

  A.  PLAINTIFF HAS ADEQUATELY ALLEGED FACTS FOR A CLAIM OF FAILURE TO ACCOMMODATE UNDER TITLE VII AND FEHA (CAUSES OF ACTION 1 AND 4). .............16
     1.  The Conflict ....................................................................18
     2.  Inform the Employer of the Conflict ...........................................21
     3.  Adverse Employment Action: ...................................................23

  B.  PLAINTIFF HAS SUFFICIENTLY PLED A CAUSE FOR RETALIATION (CAUSES OF ACTION 2 AND 3). ...................................................................23
     1.  Protected Activity ..............................................................24
     2.  Adverse Employment Action ....................................................26
     3.  Causation ......................................................................26

  C.  PLAINTIFF'S WRONGFUL TERMINATION CLAIM IN VIOLATION OF PUBLIC POLICY ..28

VI.  SHOULD THE COURT GRANT DRC'S MOTION, THE COURT SHOULD ALSO GRANT PLAINTIFF LEAVE TO AMEND HER COMPLAINT. ................................28

VII.   DEFENDANT'S REQUEST FOR A MORE DEFINITE STATEMENT ............29

VIII.  CONCLUSION ........................................................................30

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

1

# TABLE OF AUTHORITIES

2

3

**CASES**

*American Postal Workers' Union* v. *Postmaster General*, 781 F.2d 772 (9th Cir. 1986) 20

*AmerisourceBergen Corp. v. Dialysis West, Inc.*, 465 F.3d 946 (9th Cir. 2006).............. 28

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................... 16

*Ayala v. Frito Lay, Inc.*, 263 F. Supp. 3d 891 (E.D. Cal. 2017)................................... 7, 26

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................... 16

*Bostock v. Clayton Cnty., Georgia*, 207 L. Ed. 2d 218, 140 S. Ct. 1731 (2020) ............. 27

*Buonanno v. AT&T Broadband*, LLC, 313 F. Supp. 2d 1069 (D. Colo. 2004) ......... 19, 22

*Bureerong v. Uvawas*, 922 F.Supp. 1450 (C.D. Cal. 1996) .............................. 29

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)............................ 26

*Castillo v. Norton*, 219 F.R.D. 155 (D. Ariz. 2003)........................................ 29

*Cervantes v. City of San Diego*, 5 F.3d 1273 (9th Cir. 1993) ............................. 15

*EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015) ......................... 7

*Equal Emp. Opportunity Comm'n v. N. Mem'l Health Care*, 908 F.3d 1098 (8th Cir. 2018) .......................................................................... 24, 25

*Franks v. Bowman Transp. Co.*, 424 U.S. 747 (1976) ..................................... 22

*Garcia v. City of Merced*, 637 F.Supp.2d 731 (E.D. Cal. 2008)...................................... 29

*Griffin v. Cedar Fair, L.P.*, 817 F.Supp.2d 1152 (N.D. Cal. 2011) ................................ 29

*Groff v. Dejoy*, 600 U.S. 447 (2023) ......................................... 14, 22

*Heller v. EBB Auto Co.*, 8 F.3d 1433 (9th Cir. 1993) .........................7, 20, 21

*Lucky v. Landmark Medical of Michigan, P.C.*, No. 23-2030 (6th Cir. June 12, 2024) ... 17

*Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009)................................ 16

*Neveu v. City of Fresno*, 392 F.Supp.2d 1159 (E.D. Cal. 2005) ...................................... 29

*Opuku-Boateng v. State of Cal.*, 95 F.3d 1461 (9th Cir. 1996)...................................... 20

*Peterson v. Hewlett-Packard Co.*, 358 F.3d 599 (9th Cir. 2004)........................... 16

*Ray v. Henderson*, 217 F.3d 1234 (9th Cir. 2000) ................................... 23

*Rope v. Auto-Chlor System of Washington, Inc.* (2013) 220 Cal.App.4th 635 ................. 24

3

*Rosen v. Walters*, 719 F.2d 1422 (9th Cir. 1983) ....................................................7, 15, 16

*San Bernardino Public Employees Ass'n v. Stout,* 946 F.Supp. 790 (C.D. Cal. 1996).....29

*Sanders-Hollis v. State, Health and Human Servs. Agency*,
    2:19-cv-00092-KJM-DB  (E.D. Cal. Jul. 1, 2021) ................................................17, 23

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011).......................................................................17

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002) ............................................................17

*Tiano v. Dillard Dep't Stores, Inc.,* 139 F.3d 679 (9th Cir. 1998) ...............................7, 17

*Trent v. Valley Elec. Ass'n Inc.* 41 F3d 524 (9th Cir. 1994)...............................................25

*Trump v. NY is a Supreme Court,* 592 U.S. 125 (2020) .......................................................20

*United States v. Bethlehem Steel Corp*., 446 F.2d 652 (2d Cir. 1971) ..............................22

*Weiss v. Permanente Med. Grp., Inc*., 2024 WL 3090496 (N.D. Ca. June 21, 2024) ......21

## OTHER AUTHORITIES

CA Govt. Code § 12940(l)(4)...............................................................................................24

CA Govt. Code §12940(m)(2)..............................................................................................24

https://www.dol.gov/agencies/oasam/centers-offices/civil-rights-
    center/internal/policies/retaliation#:~:text=Other%20Protected%20Activity%3A%20A
    dditional%20protected,based%20on%20disability%20or%20religion. .......................24

https://www.eeoc.gov/laws/guidance/questions-and-answers-religious-discrimination-
    workplace ...................................................................................................................24

https://www.eeoc.gov/laws/guidance/questions-and-answers-religious-discrimination-
    workplace#:~:text=Scheduling%20Changes%2C%20Voluntary%20Substitutes%2C%2
    0and%20Shift%20Swaps&text=The%20employer's%20obligation%20is%20to,Part%2
    01605..........................................................................................................................23

https://www.eeoc.gov/laws/guidance/retaliation-guidance.cf...........................................24

https://www.eeoc.gov/laws/guidance/section-12-religious-
    discrimination#h_62873864446141610750081457, 12-IV Reasonable
    Accommodation..........................................................................................................20

https://www.eeoc.gov/religious-discrimination.................................................................15

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT**

**RULES**

Fed. R. Civ. P. 8(a) ................................................................................... 17, 29

Fed. R. Civ. P. 8(a)(2) ..................................................................................... 15

Fed. R. Civ. P. 8(e) ......................................................................................... 16

Fed. R. Civ. P. 12(b) ....................................................................................... 23

Fed. R. Civ. P. 12(e) ....................................................................................... 29

Fed. R. Civ. P. 15(b)(1) ..................................................................................... 8

**STATUTES**

California Fair Employment and Housing Act ................................................ passim

Title VII of the 1964 Civil Rights Act .......................................................... passim

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT**

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff, Toya R. Hasia-Welch ("Plaintiff or Ms. Hasia-Welch") worked as an investigator at Defendant, Disability Rights California's ("DRC") San Diego, CA location. Defendant required its employees to comply with its Transgender, Non-Binary Inclusion Policy ("the Policy"), which included  provisions demanding the use of an employee's chosen pronoun, as well as for employees to "support" a transgender employee's transition. Because of  Plaintiff's faith, she sought an accommodation from such provisions of the Policy based on their conflict with her sincerely held religious beliefs.  Rather than engage in meaningful discussions or in a good faith attempt to find an accommodation that would eliminate the conflict between Plaintiff's religious beliefs and the Policy, Defendant refused to accommodate, retaliated against, and ultimately terminated Plaintiff's employment due to her sincerely held religious beliefs.  Plaintiff initiated this action against DRC alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the California Fair Employment and Housing Act ("FEHA").

Defendant filed a Motion to Dismiss on August 16, 2024 seeking to dismiss all claims against it. [ECF No. 8]. On December 13, 2024, this Court issued its Ruling, [ECF No. 14],  granting Defendant's Motion with leave to amend for Plaintiff to cure certain deficiencies discussed in the Ruling.  As discussed in detail below, Plaintiff has addressed such deficiencies in her SAC by pleading additional facts with particularity in support of her failure to accommodate and retaliation claims, and has cited to the proper authority demonstrating that submission of a religious accommodation is considered a protected activity under Title VII and FEHA.

In its Motion before this Court, Defendant again argues that there was no conflict with Defendant's Policy because Plaintiff was willing to use gender neutral pronouns. Defendant puts forth such an argument despite the fact that Defendant's own policy included a mandate that "employees have the right to be addressed by their chosen name and pronoun" or it would constitute harassment, and that Defendant's Human Resources Director and Plaintiff's immediate supervisor both informed Plaintiff on two separate

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

occasions that she was expected to use an employee's preferred pronoun in place of gender neutral pronouns in order to be compliant with the Policy.

Furthermore, Defendant's argument that Plaintiff failed to inform Defendant of a conflict, conveniently ignores Plaintiff's allegations evidencing that she sent several follow-up communications reiterating the conflict and reaffirming her accommodation request. Throughout its Motion, Defendant misstates Plaintiff's burden under Title VII and FEHA, fails to take all pleaded facts into account, and even looks to hypothetical facts outside of the Second Amended Complaint to assert its arguments.

Taking all well-pleaded facts as true, and drawing all inferences therefrom in favor of Plaintiff, [*see Rosen v. Walters*, 719 F.2d 1422, 1424 (9th Cir. 1983)], this Court should deny DRC's Motion to Dismiss ("MTD") Plaintiff's SAC – or, in the alternative, grant Plaintiff leave to amend the pleadings and proceed with her claims – for the following reasons:

- Plaintiff has adequately pled the elements for a failure to accommodate claim: (1) she held sincere religious beliefs that conflicted with certain provisions of Defendant's Policy, and (2) she informed Defendant of that conflict via her multiple communications. *See Tiano v. Dillard Dep't Stores, Inc.,* 139 F.3d 679, 681 (9th Cir. 1998), *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993).

- The conflict between an employee's faith need not make the job impossible, as Defendant erroneously argues. The law only requires a conflict with a duty or policy provision.

- The Supreme Court also made clear in *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015), that when an employer's true reason for firing an employee is anti-religious animus, not failure to comply with an otherwise-neutral state or internal company policy, the employer has violated Title VII.

- Plaintiff has adequately pled the elements for a claim of retaliation: the EEOC, United States Department of Labor, and FEHA recognize submission of a religious accommodation request as a protected activity; Plaintiff engaged in protected

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

activities when she submitted a religious accommodation request and when she filed a hostile work environment claim; the employer subjected Plaintiff to an adverse employment action, including termination of employment; and a causal link between the alleged protected activity and the alleged adverse actions exist due to the circumstantial evidence and proximity in time between Plaintiff having engaged in the protected activities and the adverse actions. *See Ayala v. Frito Lay, Inc.*, 263 F. Supp. 3d 891, 911 (E.D. Cal. 2017).

- Plaintiff has adequately pled her claim of Wrongful Termination in Violation of Public Policy because she suffered a wrongful termination for exercising her right to seek an accommodation of her truly sincere religious beliefs entitled to her under Title VII and FEHA.

- Fed. R. Civ. P. 15(b)(1) advises the Court to "freely permit an amendment when doing so will aid in presenting the merits." Because permitting amendment will accomplish that here, should the Court grant Defendant's Motion, it should do so without prejudice.

- A motion for a more definite statement should not be granted because: Defendant has put forth a general conclusory single paragraph argument devoid of pointing out "the defects complained of and the details desired" as required under Fed. R. Civ. P. 12(e); and Plaintiff has pled her claims with sufficient specificity to give Defendant fair notice for opposing party to respond, even with a simple denial, in good faith or without prejudicing itself.

## II.     STATEMENT OF FACTS

Plaintiff was an employee of Defendant from March 16, 2022 to July 1, 2022 as an investigator in training. Her job assignment was to investigate claims of abuse against the elderly and individuals with disabilities, and conduct COVID-19 data gathering. Plaintiff's employment was terminated on the morning of July 1, 2022. (SAC ¶¶6, 34).

As a follower of the Christian faith, Plaintiff believes that God assigned each

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

person a gender at birth as male or female. Due to her sincerely held beliefs, Plaintiff cannot speak or live by lies which support a position that runs opposite of the teachings of the Bible, and she therefore, objects to the use of pronouns other than one's biological gender at birth or gender neutral pronouns they/them/their. (SAC ¶¶7-9). Throughout her employment at DRC, Plaintiff attended regular informal staff meetings, "meet and greet" sessions, during which employees were asked to share information about themselves. During such meetings, Plaintiff shared that she is of the Christian faith. (SAC ¶15).

During Plaintiff's employment at DRC, Defendant had a Transgender, Non-Binary Inclusion Policy ("the Policy") which specified that "employees have the right to be addressed by their chosen name and pronoun. The intentional or persistent refusal to respect an employee's gender identity, name, or pronoun is harassment." However, the Policy also included contradictory guidance, in its section titled "DRC Inclusive Pronoun Protocol, Written Material"- "gender-inclusive language can be achieved by simply reusing a noun in-lieu of a pronoun or by using 'they/them/their'…" (SAC ¶¶10 and 11).

Under the section titled "Gender Affirmation," Defendant's Policy includes a provision that "Employees who transition are entitled to the support of DRC management, Human Resources, and their colleagues." (SAC ¶12).

Defendant's requirements for Plaintiff to use an employee's preferred pronoun and support an employee's transition conflicted with her sincerely held religious beliefs. (SAC ¶¶13 and 14). Accordingly, on or about April 8 of 2022, Plaintiff sought clarification of the Policy provision requiring her to use an employee's chosen pronoun from her assigned immediate supervisor. Specifically, Plaintiff inquired if Christians were permitted to use gender neutral pronouns "they/them/their" instead of an employee's chosen pronoun. Her immediate supervisor, who identified as a transgender person, stated it would not be appropriate for Plaintiff to use gender neutral pronouns in place of a requested pronoun, and then proceeded to scream at Plaintiff that trans men are men and trans women are women. (SAC ¶17).

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Due to the unresolved conflict between her sincerely held religious beliefs and Defendant's Policy provisions, on or about April 29, 2022, Plaintiff submitted to Defendant's Human Resources Director, Chris White, her religious accommodation request seeking an accommodation from the Policy provisions requiring her to: (1) support a transgender employee's transition, and (2) to use an employee's chosen pronoun. In her accommodation request, Plaintiff explained that requiring her to address employees by their chosen name and pronoun "forces me to violate my faith by forcing me to support someone's personal life decisions," and that she "cannot and will not offer support to what I believe to be sin…. I respectfully request a religious accommodation to this policy." (SAC ¶¶19 and 20).

On or about May 3, 2022, Chris White responded to Plaintiff confirming that it *was not compliant with Defendant's Policy* to refuse to use an employee's preferred pronoun. Chris White also explained that "support" meant "treating co-workers and clients with respect and kindness," and asked if Plaintiff still felt she needed an accommodation. (SAC ¶21).

On or about May 3, 2022, Plaintiff responded to Chris White via email stating she had no objection to treating co-workers and clients with respect and kindness, but that she still needed a religious accommodation because she still felt that the words "support" and "entitled to" were open to interpretation. Plaintiff also raised her concerns about a hostile work environment due to her religious beliefs, and explained that these concerns were yet another reason for her wanting an accommodation in her employee file. It was Plaintiff's belief that having a religious accommodation in her employee file would protect her from potential harassment claims stemming from the advisement in the Policy stating that failure to use an employee's chosen pronoun constituted harassment. (SAC ¶¶22-24).

On or about May 4, 2022, Chris White responded to Plaintiff with: "I am not sure from what job requirement you are requesting an accommodation; and "**I don't see a need for an accommodation**" so long as Plaintiff was "willing to comply with requirements that you use the **pronouns requested by your coworkers** and clients

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

(or names and nouns as expressed in the policy)…."  (emphasis added).  The email concluded with what can only be viewed as a blatant attempt by Chris White to avoid the accommodation process - asking Plaintiff to once again explain if she needed an accommodation. (SAC ¶ 24).

On or about May 6, 2022, Plaintiff responded to Chris White as follows:

> I am requesting a religious accommodation from having to "support" my transgender co-workers as stated in the updated DRC Inclusion policy. It is my interpretation that "support" means to show agreement with.
>
> []Because language is open to interpretation, this policy sews the seeds for a hostile work environment should an LGBTQIA, or LGBTQIA-allied co-worker have the same interpretation that I do and demand such support from me. Support that I am forbidden from giving.
>
> For these reasons, I request a religious accommodation to refrain from having to show support for transgender co-workers beyond basic respect, kindness, and human decency….

(SAC ¶26). Defendant did not respond to Plaintiff. (SAC ¶27).

During the months of May and June 2022, subsequent to submission of her religious accommodation request, Plaintiff began experiencing  retaliatory actions at the hands of Defendants' employees in a deliberate attempt to force Plaintiff to resign, which included: Plaintiff's supervisor, Liz Logsdon, falsely accusing her of use of her personal laptop to access DRC records; having to complete a six-month goal sheet while her colleague, who had started working as an investigator around the exact same time as Plaintiff, did not; being asked by her supervisor Logsdon on more than one occasion if she wanted help finding alternate employment; repeatedly being told by her manager, Jung Pham, to openly discuss her religious opinions and faith at work, causing Plaintiff to feel hounded and come to the understanding that Pham's acts were intended to cause Plaintiff's coworkers to feel proselytized to so that would then initiate hostile work environment and harassment claims against her; Plaintiff was intentionally encouraged

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

and provided with false guidance instructing her to falsify her meal reimbursement sheets; Plaintiff was intentionally provided with inaccurate guidance instructing her not to report unlawful acts witnessed during DRC client interviews. (SAC ¶¶28 and 29).

As a result of such retaliatory actions, Plaintiff filed a hostile work environment claim with Defendant's Human Resources department.  Plaintiff chose to withdraw her claim following receipt of an apology and confirmation from Defendant's employees that they would leave her alone. Plaintiff's belief in resolving workplace issues in an amicable manner and living by the teachings of scripture contributed to her decision.  (SAC ¶30).

Despite this step in moving forward with her employment at DRC, it soon became clear that Defendant still had no intentions of accommodating Plaintiff's religious beliefs. On June 30, 2022, Chris White, sent Plaintiff a memorandum stating the following:

> With respect to your religious accommodation request, I am unclear what you want us to do. As we have discussed, you must work cooperatively and respectfully with all employees and clients at DRC. I understand you have an issue with the word "support" in our Transgender and Non-Binary Inclusion policy, but we are not changing that policy at this time.
> SAC ¶31.

The June 30, 2022 memorandum, sent two months after Plaintiff's accommodation request, ignored the stated conflict and misstated Plaintiff's request since had never asked for a policy change, but had only sought an accommodation from it.

That same day, Plaintiff responded to Chris White reiterating her need for a religious accommodation. Her email stated the following:

> What I am asking for is a simple statement from DRC stating that I am excused from "supporting" the personal choices of my fellow transgender and gender dysphoric staff….
> To be clear, whether DRC approves my request or not, I will not be referring to a biological female as "he", nor a biological male as "she" if I am made aware of their chromosomal nature (which is none of my business). I cannot do it. That is lying, a

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

sin, and the affirmation of a lifestyle choice that the Lord says is wickedness, another sin.

PLAINTIFF made it clear that the word "support" presented a conflict for her religious beliefs, that she was only willing to show kindness and respect to any member of the LGBTQIA+ community, but that she was not willing to use a transgender employee's chosen pronoun. (SAC ¶33).

The next morning, Defendant terminated Plaintiff's employment citing her religious beliefs as a reason for her termination. Prior to her termination, Plaintiff had not received a formal warning, formal performance evaluation, or formal corrective action from Defendant. (SAC ¶¶34 and 37).

Plaintiff timely filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). She received her Notice of Right to Sue from the EEOC on February 29, 2024 and from the Civil Rights Department on May 9, 2024. (SAC ¶39).

## III.  PROCEDURAL HISTORY

On December 13, 2024, this Court issued its Ruling ("MTD Ruling"), [ECF No. 14],  granting Defendant's Motion with leave to amend for Plaintiff to cure the following deficiencies:

1.  Failure to Accommodate Claims- This Court found that Plaintiff did not provide DRC with clarity of the purported conflict when requested to in May 2022, which included not responding to Chris White's May 4, 2022 email. (MTD Ruling, Pg. 9).

2.  Due to Plaintiff's failure to provide the requested clarity, "Plaintiff has failed to plausibly allege she had a bona fide religious belief which conflicted with DRC's Policy." (MTD Ruling, Pg. 10).

3.  Plaintiff's retaliation claims- This Court found that Plaintiff did not cite to any authority suggesting that submission of a religious exemption request constituted a protected activity (MTD Ruling, Pg. 12 at 7-10). This Court,

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

therefore looked to whether Plaintiff opposed unlawful activity by initiating the accommodations process, and found that she had not. (MTD Ruling, Pg. 13).

On December 26, 2024, Plaintiff filed her Second Amended Complaint ("SAC"). [ECF No. 15], in which she has addressed the deficiencies discussed in the MTD Ruling:

1. Plaintiff has alleged with particularity that on May 6 and June 30, 2022 she responded to White's emails, in which she again explained the conflict between her beliefs and Defendant's Policy provisions. (SAC ¶¶ 26 and 33.)

2. Plaintiff has cited to authority supporting her position that submission of a religious accommodation is a protected activity under Title VII and FEHA. (SAC ¶¶ 56 and 57).

3. Plaintiff has also alleged that she engaged in a protected activity when she filed a hostile work environment claim. (SAC ¶¶ 28, 30, and 34).

Furthermore, Plaintiff's SAC includes additional pertinent facts in support of her claims, including that in April 2022, Plaintiff requested clarification of the policy requiring her to use an employee's chosen pronoun, and her immediate supervisor made it clear that use of gender neutral pronouns in place of an employee's chosen pronoun was **not** acceptable. (SAC ¶17).

Defendant repeatedly ignores such pertinent facts and only focuses on one allegation - that Plaintiff had no objection to using gender neutral pronouns or an employee's name. Defendant intentionally avoids addressing the conflict created by the contradicting statements in the Policy itself, as well as the Policy clarification made by Defendant's employees - that failing to use an employee's preferred pronoun violates Defendant's policy.  At no point in its Motion does Defendant dispute these facts.

## A.    Plaintiff's Allegations- Legal Standard Under Title VII

Defendant misstates the requirements of Title VII in its Motion (Def. MTD, pgs.

5-9). Initially, Defendant directs the Court to Plaintiff's allegation that "*she never indicated to DRC that she would be unwilling or unable to perform her job duties due to her religious beliefs*." Defendant later states that "the bona fide belief must make it *impossible* for the employee to perform the employee's job." (Def. MTD pg. 13 at 1-2).

Under Title VII, a plaintiff can allege a conflict with an employment duty or policy, and still be able to perform her job. *See Groff v. Dejoy*, 600 U.S. 447 (2023) (plaintiff was willing and able to still perform his job 6 days out of the week, and only sought an accommodation for his Sunday Sabbath practice). Per the Equal Employment Opportunity Commission ("EEOC"),  "some common religious accommodations include flexible scheduling, voluntary shift substitutions or swaps, job reassignments, and modifications to workplace policies or practices." [1] However, at no point does Defendant assert that it made good faith efforts to engage in meaningful discussions or accommodate Plaintiff, or at least inform her that she was not being required to violate her sincerely held religious beliefs.

Defendant proceeds to dissect Plaintiff's hostile work environment claim that she filed in 2022 to support its position that Plaintiff did not engage in a protected activity. By alleging in detail the retaliatory acts and the individuals who committed those acts that led to her filing of a hostile work environment claim, Plaintiff has met her burden of having engaged in a protected activity. Furthermore, the particulars of Plaintiff's hostile work environment claim are not before this Court. The prima facie burden asks if Plaintiff engaged in a protected activity, which Plaintiff has sufficiently alleged she did.

## IV.    LEGAL STANDARD FOR MOTION TO DISMISS

Under Fed. R. Civ. P. 8(a)(2), a plaintiff need not prove her entire case via her complaint – she is only required to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Plaintiff has done that here in her SAC.

---

[1] https://www.eeoc.gov/religious-discrimination

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

The issue to resolve at this stage of the proceedings is whether Plaintiff is entitled to offer evidence to support the claims in SAC, not whether Plaintiff will ultimately prevail. *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993). *"On a motion to dismiss a complaint is liberally construed in the plaintiff's favor, generally taking as true* all facts *as alleged."* *Rosen,* 719 F.2d at 1424 (emphasis added).

"[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inference from the content, must be plausibly suggestive of a claim entitling plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) [citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)]. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must treat all well-pleaded facts as true and view them in the light most favorable to the Plaintiff at this stage of the proceedings. *Rosen*, 719 F.2d at 1424.

Defendant asserts that Plaintiff does not identify the decision maker of the termination decision or how it was communicated - an argument unsupported by the general rules of pleadings. The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which she bases her claim. Such simplified "notice pleading" is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of a claim and to define more narrowly the disputed facts and issues. Following the simple guide of Fed. R. Civ. P. 8(e), "pleadings shall be so construed as to do justice."

## V.    LEGAL ARGUMENT

### A.    Plaintiff Has Adequately Alleged Facts For a Claim of Failure to Accommodate Under Title VII and FEHA (Causes of Action 1 and 4).

Title VII of the 1964 Civil Rights Act "makes it unlawful for an employer 'to discharge any individual … because of such individual's … religion.'" *Peterson v.*

*Hewlett-Packard Co*., 358 F.3d 599, 602 (9th Cir. 2004) [quoting 42 U.S.C. § 2000e-2(a)(1)]. "The term 'religion' includes all aspects of religious observance and practice, as well as belief[.]" *Id*.

The same is true of Fair Employment Housing Act, California's state-law equivalent of Title VII. The analysis under both statutes is identical. Accordingly, any analysis provided herein concerning Title VII applies with equal force to Plaintiff's claims under FEHA.

At the motion to dismiss stage, "[a]n employment discrimination complaint need not contain specific facts establishing a prima facie case, rather, it must contain only a short and plain statement of the claim sufficient to give the employer notice. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 (2002)." *Sanders-Hollis v. State, Health and Human Servs. Agency*, 2:19-cv-00092-KJM-DB, 2 (E.D. Cal. Jul. 1, 2021). "While a prima facie case is not required to survive a motion to dismiss, a complaint must survive a motion to dismiss if it goes beyond notice pleading to plead a plausible prima facie case of discrimination. *Sheppard v. David Evans & Assoc*., 694 F.3d 1045, 1050 & n.2 (9th Cir. 2012)." *Id at 2*. In a Title VII employment discrimination case, the prima facie case is an evidentiary standard and not a pleading requirement. *Lucky v. Landmark Medical of Michigan, P.C.*, No. 23-2030 (6th Cir. June 12, 2024).

Here, Plaintiff has met the requisite burden because she has sufficiently alleged specific facts that placed Defendant on notice of the claims against it–facts that suggest an entitlement to relief. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) [explaining pleading requirements under Fed. R. Civ. P. 8(a)].

A plaintiff can make out a Title VII prima facie case for a failure to accommodate by showing (1) she had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) she informed her employer of the belief and conflict; and (3) the employer threatened her or subjected her to discriminatory treatment, including discharge, because of her inability to fulfill the job requirements. *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998).

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

### 1.    The Conflict

The first part, sincerity of Plaintiff's religious beliefs, is not before this Court as Defendant is not challenging it. Defendant's motion addresses the second part of the first prong of a prima facie case: "*the practice of which conflicted with an employment duty*."

Defendant's main argument is that a conflict between Plaintiff's religious beliefs and the Policy did not exist because Plaintiff stated that she was willing to use "they/them/their" and treat others with respect.  However, Defendant ignores the following pertinent allegations which prove that a conflict did exist between Plaintiff's religious beliefs and Defendant's Policy:

1.  Defendant's Policy included contradictory guidance: one provision allowed for use of gender neutral pronouns, while another provision required use of preferred pronouns and came with an advisement that failure to use preferred pronouns constituted harassment.

2.  In seeking clarification of the contradictory guidance as it pertained to the use of gender neutral pronouns, Plaintiff specifically asked of her immediate supervisor if a Christian was permitted to use gender neutral pronouns. She was told no.

3.  Following her immediate supervisor's instruction, Plaintiff sought a religious accommodation from Defendant's Policy provision requiring her to support an employee's transition, and use an employee's preferred pronoun.

4.  Human Resources Director, Chris White's email affirmed Plaintiff's immediate supervisor's instruction. Chris White stated that using "they/them/their" was "not compliant" with Defendant's Policy (FAC ¶15), and confirmed the that not using an employee's preferred pronoun constituted harassment (FAC ¶8).

5.  Plaintiff communicated to Chris White that the words "support" and "entitled to" are open to interpretation and would leave her exposed to hostile work environment claims unless she had an accommodation in her file.

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT**

6. Chris White acknowledged the existence of a conflict when she stated in her June 30, 2022 email "I understand **you have an issue** with the word "support" in our Transgender and Non-Binary Inclusion policy, but we are not changing that policy at this time." (emphasis added).

7. Plaintiff immediately responded to White reiterating the conflict - "What I am asking for is a simple statement from DRC stating that I am excused from "supporting" the personal choices of my fellow transgender and gender dysphoric staff…. I will not be referring to a biological female as "he", nor a biological male as "she".... I cannot do it. That is lying, a sin, and the affirmation of a lifestyle choice that the Lord says is wickedness, another sin."

From the aforementioned facts, Defendant's instruction to Plaintiff was very clear- Plaintiff must use their preferred pronoun, she must do set even if it violates her religious belief.  Accordingly, Plaintiff has established the first element of a prima facie case.

As to Plaintiff's accommodation request from the word "support," Plaintiff asserted a conflict when she explained that the language of the Policy conflicted with her religious views as it was open to interpretation in its meaning, and without an accommodation in her file she felt exposed to potential claims for workplace harassment. In fact, Defendant's own Policy stated that the persistent use of a nonpreferred pronoun constituted harassment.

In a case with similar facts, *Buonanno v. AT&T Broadband*, LLC, 313 F. Supp. 2d 1069 (D. Colo. 2004), the employer had a diversity policy requiring its employees to treat co-workers with respect, but the district court found a violation of Title VII because the employer did not accommodate the employee's refusal on religious grounds to sign the diversity policy asking him to "value" homosexual co-workers, which the employee reasonably believed required him to go beyond simply treating his co-workers with respect. Similar to our case, Buonanno believed that certain behavior and beliefs were

19

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

sinful, and the word "value" was requiring him to value a belief or behavior that was deemed sinful by Scripture.  The court in *Buonanno* strongly relied on the employer's failure to discuss accommodating the employee in finding a violation of Title VII. *Id.* at 1081–83. The court stated: "No AT&T employee sought to devise ways to accommodate Buonanno's religious beliefs, or reassured him that the challenged language did not require him to surrender his religious beliefs." Id. at 1078. "Where an employer has made no efforts to accommodate the religious beliefs of an employee before taking action against him, the employer may only prevail if it shows that no accommodation could have been made without undue hardship. *Toledo,* 892 F.2d at 1490." Id. at 1080-81.

Similar to *Buonanno*, Defendant DRC failed to make any efforts to accommodate Plaintiff's religious beliefs, and instead took adverse actions against her, without demonstrating any undue hardship.

The 9th Circuit has affirmed that Title VII is premised on bilateral cooperation. *See American Postal Workers' Union* v. *Postmaster General,* 781 F.2d 772, 777 (9th Cir. 1986). Per the EEOC "If the accommodation solution is not immediately apparent, the employer should discuss the request with the employee to determine what accommodations might be effective."[2] Employers are to take the "initial step" to accommodate an employee's conflicting religious beliefs. *See Heller*, 8 F.3d at 1441-42. Employers are to engage in negotiations when an employee requests an accommodation, and when negotiations do not produce a proffered accommodation that eliminates the conflict, the employer either accept the employee's proposal or demonstrate undue hardship. *Opuku-Boateng v. State of Cal*., 95 F.3d 1461, 1467 (9th Cir. 1996), as amended (Nov. 19, 1996).

As part of its argument, Defendant raises the issue of standing, inaccurately claims Plaintiff's allegations are based on a hypothetical, and cites to *Trump v. NY, a Supreme Court* - nonbinding and a non-Title VII case. Title VII does not have a "standing"

---

[2] https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination#h_62873864446141610750081457, 12-IV Reasonable Accommodation.

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

requirement in the traditional sense. The protections of Title VII are triggered when the need for a religious accommodation arises. Plaintiff demonstrated such a need when: the Policy required her to violate her religious beliefs; and when Plaintiff's immediate supervisor and Defendant's Human Resources Director informed her that she was required to use an employee's preferred pronoun in order to be compliant with the Policy. Plaintiff has demonstrated that her sincerely held religious beliefs were impacted, and in fact completely disregarded, by Defendant's Policy and practices.

Furthermore, the fact that at least one transgender person was employed by Defendant, who was in fact Plaintiff's immediate supervisor that informed her that she was required to use preferred pronouns, demonstrates that Plaintiff's allegations are not based on a hypothetical.

### 2.    Inform the Employer of the Conflict

Defendant proceeds to argue that Plaintiff did not inform Defendant of the conflict. However, as Defendant correctly points out, per the Ninth Circuit Court of Appeals, an employee seeking an accommodation need only provide "enough information...to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements" and that "[a]ny greater notice requirement would permit an employer to delve into the religious practices of an employee in order to determine whether religion mandates the employee's adherence," and if a court may not do so, neither may the employer. *Heller,* 8 F.3d at 1439.

In *Heller,* the employer argued that the employee failed to give notice of his need for an accommodation for his religious practice because he never explained the nature of the religious ceremony he wished to attend. The 9th Circuit disagreed and found that when the employee requested time off, he informed his supervisor why he needed to miss work. The 9th Circuit found this "satisfactory" for meeting the notice requirement.

Defendant cites to a Title VII case, *Weiss v. Permanente Med. Grp., Inc*., 2024 WL 3090496, (N.D. Ca. June 21, 2024), which involved an accommodation request to the employer's vaccine requirement. It is notable that *Weiss* has been appealed to the 9th

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Circuit Court of Appeal.  On the facts alone, *Weiss* is inapplicable because here Plaintiff gave clear responses explaining what provisions of the Policy she was seeking an accommodation from, she explained more than once that it would be a sin for her to violate her religious beliefs, she responded to every communication in a clear and cogent manner, not with vague responses as Defendant claims.  It is further made clear that Defendant was aware of a conflict when Chris White wrote "I understand you have an issue with the word 'support'."

In *Buonanno,* the district court addressed the notice issue and found that even general concerns expressed by the employee met the notice requirement:

> It is also evident that Buonanno communicated the existence of such a conflict to AT&T. Buonanno's written communication informed AT&T of his concern that his religious beliefs were in conflict with the Handbook, albeit in a very general way. Although Buonanno's communication with AT&T did not particularize the nature of his religious concerns, his letter to Batliner and his comments at the meeting were sufficient to establish [**25] notice to the employer of an issue of religious conflict and to invoke the process of seeking a reasonable accommodation.
>
> *Buonanno,* 313 F. Supp. 2d. at 1081.

Title VII is designed in part to protect religious employees from being discriminated against solely because they hold a minority viewpoint. *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 775, (1976) (quoting *United States v. Bethlehem Steel Corp.*, 446 F.2d 652, 663 (2d Cir. 1971)) ("If relief under Title VII can be denied merely because the majority group of employees, who have not suffered discrimination, will be unhappy about it, there will be little hope of correcting the wrongs to which the Act is directed.").

Interestingly, Defendant puts forth what appears to be a defense to a failure to accommodate claim - that an employer is excused from providing an employee an accommodation "if it would result in a violation of the FEHA or any other law

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

prohibiting discrimination or protecting civil rights." (Def. MTD, pg. 17 at 11-13). Defendant then proceeds to use a hypothetical scenario and appears to look to facts outside of the pleadings for its position.

However, pursuant to *Groff*, the only defense to a request for religious accommodation is substantial undue hardship in the overall context of the employer's business. Certainly a violation of another law can be part of the undue hardship analysis, but it is not a complete defense on its own. In fact, the EEOC's guidance on this issue is clear: when alleged religious rights are in conflict with other protected classifications, each request must still be considered on its individual facts and whether "the proposed accommodation conflicts with another law will also be considered." [3]

### 3.    Adverse Employment Action:

Defendant does not address the third element of a failure to accommodate claim, therefore Plaintiff asks this Court to find for Plaintiff on this element.

### B.    Plaintiff Has Sufficiently Pled a Cause for Retaliation (Causes of Action 2 and 3).

A plaintiff can make out a prima facie case of retaliation by alleging that (1) she engaged in a protected activity; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *See Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). The elements for a retaliation claim under FEHA are very similar in that a plaintiff must allege (1) that she engaged in a protected activity; (2) the employer subjected her to an adverse employment action; and (3) a causal link existed between her protected activity and the employer's action. *See Sanders-Hollis,* 2:19-cv-00092-KJM-DB, 6 (E.D. Cal. Jul. 1, 2021).

---

[3] https://www.eeoc.gov/laws/guidance/questions-and-answers-religious-discrimination-workplace#:~:text=Scheduling%20Changes%2C%20Voluntary%20Substitutes%2C%20and%20Shift%20Swaps&text=The%20employer's%20obligation%20is%20to,Part%201605.

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

### 1.    Protected Activity

Informing one's employer of one's sincerely held religious beliefs which conflicts with a term of employment is recognized as a protected activity under Title VII, the EEOC, and the U.S. Department of Labor. (See U.S. DOL section on retaliation: "requests for accommodation based on disability or religion." [4]). The EEOC has maintained in its Enforcement Guidance on Retaliation that "persons requesting religious accommodation under Title VII are protected against retaliation for making such requests."[5] In the Questions and Answers section of its Religious Discrimination in the Workplace guidance, the EEOC "has taken the position that requesting religious accommodation is protected activity." [6]

Furthermore, under FEHA, an employee's request for a religious accommodation is considered protected activity. On July 16, 2015, Assembly Bill 987, amended the language of the FEHA to prohibit an employer from retaliating or otherwise discriminating against a person for requesting a religious accommodation, regardless of whether the accommodation request was granted. The primary purpose of AB 987 was to confirm that requesting a reasonable accommodation is a protected activity. AB 987 overturned *Rope v. Auto-Chlor System of Washington, Inc*. (2013) 220 Cal.App.4th 635, which had held that a mere request for leave as an accommodation did not qualify as a "protected activity" because such a request did not oppose any unlawful conduct. *See* CA Govt. Code §§ 12940(l)(4), 12940(m)(2).

Defendant argues courts have rejected the argument that a religious accommodation is a protected activity, but does not cite to binding authority for its position. Specifically, Defendant cites *Equal Emp. Opportunity Comm'n v. N. Mem'l Health Care*, 908 F.3d 1098 (8th Cir. 2018), an 8th Circuit decision case which can be

---

[4] https://www.dol.gov/agencies/oasam/centers-offices/civil-rights-center/internal/policies/retaliation#:~:text=Other%20Protected%20Activity%3A%20Additional%20protected,based%20on%20disability%20or%20religion.

[5] https://www.eeoc.gov/laws/guidance/retaliation-guidance.cfm

[6] https://www.eeoc.gov/laws/guidance/questions-and-answers-religious-discrimination-workplace

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

distinguished on several grounds. First, the plaintiff was a prospective, not an existing, employee whose conditional offer of employment was withdrawn.  Second, the 8th Circuit was reviewing the lower court's order on summary judgment, not a motion to dismiss. Lastly, the court recognized that a Title VII claim for retaliation claim can still arise in the religious accommodation context in a case that does not involve a simple denial of an accommodation request: "if an employee or applicant in good faith requested a religious accommodation, and if the employer denied the accommodation on the ground that it was not in fact based on a religious practice *and* fired or refused to hire the employee or applicant because she made the request, the reasoning in ADA cases such as Kirkeberg and Heisler would support an opposition-clause retaliation claim under § 2000e-3(a), even if the employer successfully defended a disparate treatment claim under § 2000e-2(a)." *Id.* at 1103

Plaintiff also engaged in a protected activity when she filed a hostile work environment claim with Defendant. Here, Defendant misstates the burden: "Plaintiff fails to plausibly allege a reasonable and good faith belief of the existence of a hostile work environment." Defendant's argument appears to analyze Plaintiff's hostile work environment claim filed in 2022 instead of her retaliation claim, and looks to facts outside of the pleadings to assess the contents of the hostile work environment claim itself. However, not only are the facts of Plaintiff's 2022 hostile work environment are not before this Court, but Plaintiff has sufficiently alleged in her SAC the retaliatory and hostile acts she experienced which caused her to file a hostile work environment claim. (SAC ¶¶ 28-30).

The first element of the prima facie burden seeks to answer whether Plaintiff engaged in a protected activity. Filing a hostile work environment claim is recognized as a protected activity under Title VII and FEHA. In her SAC, Plaintiff has alleged sufficient facts demonstrating that she engaged in a protected activity, and that she held a reasonable and good faith belief that Defendant's retaliatory acts were unlawful. *See Trent v. Valley Elec. Ass'n Inc.* 41 F3d 524, 526 (9th Cir. 1994)

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

### 2.    Adverse Employment Action

Defendant does not dispute or challenge Plaintiff's assertion that her termination constitutes an adverse employment action in its Motion before this Court. Defendant also does not dispute or challenge in its Motion that a cause of Plaintiff's termination was her religious beliefs. Therefore, Plaintiff asks this Court to find that Plaintiff suffered an adverse employment action when she was terminated.

Cases cited by Defendant for its argument are not binding as they are from the CA Court of Appeals and the 7th Circuit. Accordingly, Plaintiff refers this Court to the expansive view of adverse employment actions as discussed by the U.S. Supreme Court, which stated in *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 54 (2006), that "the antiretaliation provision is not limited to actions affecting employment terms and conditions." An employer's actions will be considered an adverse employment action if the conduct "would have been *materially adverse* to a reasonable employee or job applicant." *Id.* (emphasis added).

As noted above, Plaintiff has pled sufficient facts to demonstrate that she was a competent employee, who responded to her employer's requirement to use an employee's preferred pronoun and "support" an employee's transition with a request for an accommodation, based on her sincerely held religious beliefs. As alleged in Plaintiff's SAC, Defendant did not attempt to and refused to engage in any meaningful discussions, or discuss possible accommodations, but engaged in delay tactics, retaliatory acts, and subsequently terminated Plaintiff's employment. Accordingly, Plaintiff has sufficiently pled that she suffered adverse employment actions as a result of her engaging in a protected activity.

### 3.    Causation

As to the issue of causation, a plaintiff may also establish "a causal link between the alleged protected activity and the alleged adverse action by circumstantial evidence, including the employer's knowledge of the protected activity and the proximity in time between the protected action and the adverse employment act." *Ayala*, 263 F. Supp. 3d at

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

911. Plaintiff has met this burden as well. Per Plaintiff's allegations, Defendant was aware of Plaintiff's religious accommodation request due to submission of the same. Soon after this submission of her request, Plaintiff was subjected to retaliatory actions and subsequently terminated from her employment. This proximity in time between Plaintiff's submission of her religious request and the adverse actions she suffered establishes a causal link for the purposes of a retaliation claim.

Furthermore, Defendant does not address or dispute in its Motion that a causal link exists between Plaintiff's filing a request for religious accommodation and the adverse employment actions, including her termination. Therefore, Plaintiff asks this Court to find that a causal link exists for this protected activity.

Defendant argues that Defendants' employees were not aware of Plaintiff engaging in a protected activity. However, Defendant was made aware of Plaintiff's hostile work environment concerns because she asserted them on May 3, 2022 (SAC ¶24). Defendant, including Plaintiff's supervisor and manager, were also aware of Plaintiff's hostile work environment claim due to the fact that they apologized to her and agreed to leave her alone.

In *Bostock v. Clayton Cnty., Georgia*, 207 L. Ed. 2d 218, 140 S. Ct. 1731, 1739–40 (2020), is instructive in this regard:

> "**When it comes to Title VII**, the adoption of the traditional but-for causation standard means a defendant cannot avoid liability just by citing some other factor that contributed to its challenged employment decision. So long as the plaintiff's sex was one but-for cause of that decision, that is enough to trigger the law. See *ibid.*; *Nassar*, 570 U.S. at 350. Emphasis added." (footnotes omitted).

Here, there is no doubt, from a pleading standpoint, that Plaintiff's religious beliefs and their effect on her inability to comply with Defendant's Policy was one but-for cause, if not the only cause, of Defendant's decision to retaliate against her and soon after terminate her employment. The close proximity in time between Plaintiff's submission of

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

her request, filing of a hostile work environment claim, and the adverse actions she suffered, meet the causation element.

Accordingly, Plaintiff has properly stated a claim for retaliation under Title VII and FEHA.

### C.    Plaintiff's Wrongful Termination Claim In Violation of Public Policy

As Plaintiff's claim of wrongful termination is predicated upon her failure to accommodate and retaliation claims, for the above stated reasons, Defendant's motion should be denied.

## VI.    SHOULD THE COURT GRANT DRC'S MOTION, THE COURT SHOULD ALSO GRANT PLAINTIFF LEAVE TO AMEND HER COMPLAINT.

Under Fed. R. Civ. P. 15(a), leave to amend a complaint "shall be freely given when justice so requires." *AmerisourceBergen Corp. v. Dialysis West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). Only if amendment would "(1) prejudice[] the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile" should the Court deny leave to amend. *Id.*

Here, DRC is asking the Court to dismiss Plaintiff's SAC. However, the interests of justice requires that Plaintiff be granted leave to amend. The fact that Defendant has urged that Plaintiff cannot plead sufficient facts, is implausible.

Should the Court find the Complaint defective, amendment would not prejudice DRC, nor would it produce an undue delay in litigation. Amendment would not be futile: Plaintiff could demonstrate with more particularity what she has argued above that the Court may reasonably infer, and thereby eliminate any need for inference. Finally, an amendment is not sought in bad faith. Accordingly, Plaintiff respectfully requests that if the Court grants DRC's Motion, it does not dismiss Plaintiff 's SAC with prejudice, rather, this court should grant her leave to amend.

///

///

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

## VII.   DEFENDANT'S REQUEST FOR A MORE DEFINITE STATEMENT

Defendant has failed to meet the requirements of FRCP 12(e) for its request for a more definite statement. The applicable rule provides that the motion "must point out the defects complained of and the details desired." Fed. R.Civ.P. 12(e).

A motion for a more definite statement must be considered in light of the liberal federal pleading standards of Rule 8. *Garcia v. City of Merced*, 637 F.Supp.2d 731, 764 (E.D. Cal. 2008). The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which she bases her claims. To the contrary, Fed. R. Civ. P. 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. "A complaint is sufficient if it is specific enough to apprise the defendant of the substance of the claim asserted against him or her." *San Bernardino Public Employees Ass'n v. Stout,* 946 F.Supp. 790, 804 (C.D. Cal. 1996). "[A] motion for a more definite statement should not be granted unless the defendant literally cannot frame a responsive pleading." *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1461 (C.D. Cal. 1996).

Plaintiff's SAC is specific enough to give Defendant fair notice of the allegations against it because she has: provided a detailed chronological timeline of the events; identified her religious beliefs and their conflict with specific provisions of Defendant's policy; described the communications with Defendant; specified the retaliatory actions; identified the reason for her termination of employment; and outlined her injuries. Any absence of detail is not such that renders Plaintiff's SAC vague, ambiguous or unintelligible. *See Griffin v. Cedar Fair, L.P.*, 817 F.Supp.2d 1152, 1156 (N.D. Cal. 2011); *Neveu v. City of Fresno*, 392 F.Supp.2d 1159, 1169 (E.D. Cal. 2005).

Defendant fails to point out the defects and the details desired, and only puts forth a single conclusory paragraph.  Motions for a more definite statement are viewed with disfavor by the courts and are rarely granted. *Castillo v. Norton*, 219 F.R.D. 155, 163 (D.

Ariz. 2003). "Parties are expected to use discovery, not the pleadings, to learn the specifics of the claims being asserted." *Sagan*, 874 F.Supp. at 1077.

In view of the reasons stated above, Defendant's request should be denied.

## VIII.  CONCLUSION

Based on the foregoing, the Court should deny Defendant's motion to dismiss in its entirety or, in the alternative, grant Plaintiff leave to amend.

DATED: January 27, 2025                   Respectfully submitted,
                                          PACIFIC JUSTICE INSTITUTE


                                 By: *Michael Peffer*
                                     _____

                                 MICHAEL PEFFER, ESQ.,
                                 NILAB SHARIF, ESQ.,
                                 Attorneys for Plaintiff, TOYA R. HASIA-WELCH

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

CERTIFICATE OF COMPLIANCE (Civil Local Rule 7.1(h))

The undersigned, counsel of record for Plaintiff, TOYA R. HASIA-WELCH, certifies that this brief consists of 25 pages, which complies with the page limit of Civil Local Rule 7.1(h).

DATED: 1/ 27 /2025                    Respectfully submitted,

PACIFIC JUSTICE INSTITUTE

By:  *Michael Peffer*

MICHAEL PEFFER, ESQ.
NILAB SHARIF, ESQ.
Attorneys for Plaintiff,
TOYA R. HASIA WELCH

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**