Michael J. Nader, SBN 200425
Michael.Nader@ogletree.com
Alexandra M. Asterlin, SBN 221286
alexandra.asterlin@ogletree.com
George J. Theofanis, SBN 324037
george.theofanis@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
400 Capitol Mall, Suite 2800
Sacramento, CA  95814
Telephone:  916-840-3150
Facsimile:   916-840-3159

Attorneys for Defendant
DISABILITY RIGHTS CALIFORNIA

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOYA R. HASIA-WELCH, an individual, <br><br> Plaintiff, <br><br> v. <br><br> DISABILITY RIGHTS CALIFORNIA; DOES 1-10, inclusive, <br><br> Defendants. | Case No. 3:24-cv-00810-AJB-BLM <br><br> **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT DISABILITY RIGHTS CALIFORNIA'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FRCP 12(B)(6)** <br><br> Date:          March 6, 2025 <br> Time:          2:00 p.m. <br> Location:     Courtroom 4A, 4th Floor <br><br> Complaint Filed: 5/10/2024 <br> Trial Date:          TBD |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

## I. <u>INTRODUCTION</u>

Plaintiff's Opposition still fails to demonstrate how her alleged religious beliefs ever conflicted with Defendant's Transgender, Non-Binary Inclusion Policy (the "Policy"). The following chart confirms that Plaintiff's allegations **do not establish any conflict with the Policy**:

| Policy | Plaintiff's Allegations | No Conflict |
|---|---|---|
| "All employees have the right to be addressed by their **chosen name and pronoun."** (Doc. No. 15 (Second Amended Complaint ("SAC") ¶ 10). "Encouraging the use of pronouns does not mean it is required. **There are other options as the policy states.**" (SAC ¶ 21) (emphasis added). <br><br>"Currently, gender-inclusive language can be achieved by simply reusing a noun in-lieu of a pronoun **<u>or</u>** by using "they/them/their'" as a singular, inclusive pronoun." (SAC ¶ 11)(emphasis added). | Plaintiff was "willing to use a **transgender employee's name or gender neutral pronouns,** not a chosen pronoun." (SAC ¶ 33) (emphasis added) <br><br>Thus, Plaintiff's alleged sincerely held beliefs permit her to (a) use gender neutral pronouns such as "they" and "them" and (b) address a person by their name. | ✓ |
| "Employees who transition are entitled to the **support** of DRC management, Human Resources, and their colleagues." (SAC ¶ 12) (emphasis added). <br><br>"Support means treating co-workers and clients **with respect and kindness.**" (SAC ¶ 21) (emphasis added) | Plaintiff was "willing to show **kindness and respect** to any member of the LGBTQIA+ community. . ." (SAC ¶ 33) (emphasis added). Plaintiff alleges no religiously based obstacle to treating a transitioning employee with respect and kindness. | ✓ |
| "The **intentional or persistent refusal to respect** an employee's gender identity, name, ***or*** pronoun is harassment."  (SAC ¶ 10) (emphasis added).  "What is not compliant with our policy is repeatedly using a pronoun that another employee has asked you not to use." (SAC ¶ 21). | Plaintiff never alleged a situation where her religious beliefs required her to use a pronoun against an employee's wishes. And Plaintiff never alleged that her religious beliefs prohibited her from addressing an employee | ✓ |

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

| | | |
|---|---|---|
| | by their name, which is permitted by the Policy. | |

**Plaintiff's persistent failure to allege a conflict warrants the dismissal of her claims, without amendment.** She also fails to plausibly allege she notified DRC of any conflict or request an accommodation, further justifying dismissal of all claims. Additionally, Plaintiff fails to allege facts showing she opposed an unlawful employment practice under Title VII or FEHA, or that her hostile work environment complaint caused her termination. Plaintiff's Second Amended Complaint ("SAC") also lacks plausible allegations that DRC's "delay tactics and retaliatory acts" materially affected her employment, warranting dismissal of the retaliation claims. Plaintiff's wrongful termination claim is derivative of her other claims and fails for the same reasons.  Thus, DRC respectfully requests the Court to dismiss each of Plaintiff's causes of action alleged in the SAC without leave to amend or, in the alternative, require Plaintiff to provide a more definite statement under Rule 12(e).

## II.    LEGAL ARGUMENT

### A. Plaintiff's first and fourth causes of action should be dismissed.

#### 1.  Plaintiff misstates her pleading standard.

Plaintiff contends that establishing a prima facie case is an evidentiary standard rather than a pleading requirement. (Doc. No. 18 ("Opp.") 17:8-18). In support of this argument, Plaintiff cites *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), a pre-*Twombly* and *Iqbal* decision in which the Supreme Court held that "an employment discrimination plaintiff need not plead a prima facie case of discrimination." 534 U.S. at 508. However, a complaint must advance specific averments to show that the plaintiff is plausibly entitled to relief. (citing Fed. R. Civ. P. 8(a)). "[Plaintiff] need not prove her case at this juncture, but she must plead enough facts to satisfy the underlying elements of a failure-to-accommodate claim." *Weiss v. Permanente Med. Grp., Inc.*, No. 23-cv-03490-RS, 2024 WL 3090496, at *2 (N.D. Cal. June 21, 2024). Here, Plaintiff has not alleged any facts that her alleged

religious beliefs actually conflicted with the Policy or that she notified her employer of a conflict and, thus, her claim fails.

### 2. Plaintiff's allegations confirm that her religious beliefs never prohibited her from addressing employees by their name, which always complied with the Policy, and thus she still fails to allege a religious conflict.

DRC's Policy consistently and uniformly permitted employees to be addressed by their names. Plaintiff consistently confirmed that her religious beliefs did not prohibit her from addressing employees by their names. (SAC ¶¶ 21, 24, 33). And thus, Plaintiff's own allegations prove the Policy did not conflict with her religious beliefs. (SAC ¶¶ 10-11, 21, 24, 33).

### 3. Plaintiff's allegations confirm that her religious beliefs never prohibited her from treating employees with respect and kindness, which always complied with the Policy, and thus she still fails to allege a religious conflict.

Plaintiff's allegations acknowledge Ms. White clarified that the meaning of the requirement to "support" employees under the Policy meant employees were required to treat co-workers with respect and kindness, which Plaintiff was willing to do. (SAC ¶¶ 21, 33). Plaintiff never alleges her religious beliefs prohibited her from treating employees with respect and kindness. As such, Plaintiff's allegations confirm there was never a conflict between the Policy and Plaintiff's religious beliefs. Instead, Plaintiff attempts to manufacture a conflict where none existed. As stated by Plaintiff's allegations, DRC repeatedly and painstakingly provided clarification of the meaning of the Policy's requirement to "support" all employees: **(1)** "Support means treating co-workers and clients with respect and kindness." (SAC ¶ 21). **(2)** "As we have discussed, you must work cooperatively and respectfully with all employees and clients at DRC." (SAC ¶ 31). Thus, DRC made it clear the Policy only required Plaintiff to treat employees with cooperation, respect, and kindness. Plaintiff never alleged her religious belief barred her from treating

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

employees and clients with cooperation, respect, and kindness, and thus Plaintiff had no conflict with the Policy.

In an effort to salvage her lawsuit, Plaintiff attempts to allege some sort of "support plus" requirement in the Policy, where none existed. Plaintiff's own allegations belie her strategy. In Paragraph 33 of the SAC, Plaintiff reveals that her mistaken assertion of the meaning of the "support" requirement in the Policy was that it supposedly required her to use preferred pronouns: "To be clear, … I will not be referring to a biological female as 'he', nor a biological male as 'she' …" (SAC ¶ 33). But Plaintiff falsely conflates the meaning of "support" to equal a requirement to use preferred pronouns to manufacture a conflict. But as Plaintiff's own allegations confirm, ***DRC never required Plaintiff to use preferred pronouns***, and thus DRC's Policy never required Plaintiff's support to be manifested in that particular way. The Policy only required Plaintiff "to show kindness and respect" to employees, and Plaintiff confirmed that her religious beliefs did not conflict with that requirement. (SAC ¶ 33).

For example, the Policy ***never required*** Plaintiff to sign a pledge supporting a person's transition, or to sign a greeting card congratulating a person on their transition, or to attend a party celebrating a person's transition, or to buy or contribute to a gift for a person going through a transition. The Policy never required Plaintiff to do anything to particularly affirm a transgender person's "personal choices." (SAC ¶¶ 10-12, 21,24, 33). The Policy only required Plaintiff to treat others with kindness and respect, which, according to Plaintiff's allegations, always complied with her conscience.

Finally, Plaintiff argues she reiterated the conflict and requested an accommodation. (Opp. 19:5-10). However, she failed to explain an actual conflict between her beliefs and the Policy, precisely because none existed. Plaintiff was repeatedly told she could use an employee's name and to treat employees with respect, and Plaintiff confirmed that she could always comply with those

requirements. The SAC lacks factual allegations showing DRC instructed her to use a preferred pronoun against her beliefs. Therefore, Plaintiff's claims should be dismissed for failing to allege an actual conflict with the Policy.

### 4. Plaintiff's standing argument is unavailing.

Plaintiff contends Title VII does not impose a traditional standing requirement, asserting its protections are activated when a need for religious accommodation arises (Opp. 20:24-21:2). This argument lacks merit. "Although federal courts take a broad view of constitutional standing in civil rights cases, a civil rights plaintiff claiming discrimination 'must satisfy the case or controversy requirement of Article III by demonstrating [her] standing to sue at each stage of the litigation.'" *Wood v. City of San Diego*, 678 F.3d 1075, 1083 (9th Cir. 2012) (*quoting Chapman v. Pier 1 Imports* (U.S.) Inc., 631 F.3d 939, 946 (9th Cir.2011) (en banc)). Thus, Plaintiff's position is plainly incorrect, and she must still satisfy Article III standing, which she cannot do because her claims are based on a hypothetical scenario. Plaintiff argues the presence of at least one transgender employee, who was her immediate supervisor, substantiates that her allegations are not hypothetical (Opp. 21:8-11). However, as demonstrated above, Plaintiff's SAC does not allege that her immediate supervisor required her to use preferred pronouns or that any employee asked her to use a specific pronoun. Thus, Plaintiff lacks standing to bring her claims.

### 5. Plaintiff fails to allege any facts that she notified her employer of any conflict with the policy.

Plaintiff asserts *Weiss*, 2024 WL 3090496 (June 21, 2024), cited by DRC in its opening brief has "been appealed to the 9th Circuit Court of Appeal." (Opp. 21:28-22:1). Notably, *Weiss* is not currently on appeal. Thus, this argument lacks merit.

Plaintiff contends Weiss is distinguishable because she clearly specified which provisions of the Policy she sought accommodation from, repeatedly explained that violating her religious beliefs would be a sin, and responded to all communications

clearly and cogently. (Opp. 22:1-5). However, Plaintiff's allegations provided no clarity as to why there was a religious conflict, despite her being able to use an employee's name and treat them with respect and kindness, other than circular allegations and legal conclusions. Plaintiff argues DRC was aware of the conflict, as evidenced by Chris White's acknowledgment, "I understand you have an issue with the word 'support.'" (Opp. 22:5-7). However, Plaintiff fails to allege any facts that Ms. White actually acknowledged a religious conflict. Plaintiff's only dispute or issue with the word "support" was her belief that the word "support" required Plaintiff to address employees by their preferred pronoun. (SAC ¶ 33). But as Plaintiff's own allegations confirm, DRC never required Plaintiff to use preferred pronouns, and thus DRC's Policy never required Plaintiff's support to be manifested in that particular way, or in any other way. The Policy only required Plaintiff "to show kindness and respect" to employees, and Plaintiff confirmed that requirement never conflicted with her religious beliefs. (SAC ¶ 33).  Thus, Plaintiff's failure to accommodate claims should be dismissed.

### 6.  Accommodations that violate Title VII or FEHA constitute an undue burden as a matter of law.

An accommodation is not required if it would result in a violation of the FEHA or any other law prohibiting discrimination or protecting civil rights. Cal. Gov. Code § 12940(l)(3). Plaintiff claims post-*Groff* "a violation of another law can be part of the undue hardship analysis, but it is not a complete defense on its own." (Opp. 23:6-7). This position is plainly incorrect because courts regularly determine undue hardship as a matter of law, including post-*Groff*, where accommodation exposes the employer to potential liability under federal and state anti-discrimination laws. *See e.g., Trueblood v. Valley Cities Counseling & Consultation*, No. C23-0269JLR, 2024 WL 3965926 at *32-52 (W.D. Wash. Aug. 28, 2024) (concluding undue hardship as a matter of law where employees requested religious accommodations of not using preferred pronouns for transgender clients exposes it to

potential liability under federal and state anti-discrimination laws); *Bhatia v. Chevron U.S.A., Inc.,* 734 F.2d 1382 (9th Cir. 1984) (affirming summary judgment in employer's favor based on undue hardship); *Peterson v. Hewlett-Packard Co*., 358 F.3d 599, 601 (9th Cir. 2004) (same); *Berry v. Dep't of Soc. Servs*., 447 F.3d 642, 645, 655 (9th Cir. 2006) (same).

Here, both Title VII and the FEHA prohibit employment discrimination and harassment based on gender identity and expression. Cal. Gov. Code § 12940, subds. (a), (j); 42 U.S.C. § 2000e-2(a)(1); *Bostock v. Clayton Cnty*., 590 U.S. 644, 683 (2020) (interpreting "sex" under Title VII to encompass sexual orientation and gender identity). Plaintiff's own allegations demonstrate a danger of violating the law because "she believed she could also be accused of harassment for repeatedly failing to use an employee's chosen pronoun." (SAC ¶22). Plaintiff further alleges she "believed a religious accommodation in her employee file would protect her from harassment claims stemming from her failure to use an employee's chosen pronoun." (SAC ¶24). Even a "danger" of violating the law suffices to show undue hardship. *Berry,* 447 F.3d at 655. Mere "potential" for liability likewise suffices. *Bolden-Hardge*, 63 F.4th at 1225; *Bhatia*, 734 F.2d at 1384 (finding undue hardship where proposed accommodations required employer to "risk liability" under California health and safety regulations). Thus, even assuming (hypothetically) that Plaintiff can establish a prima facie case, her claims fail because her own allegations establish undue hardship as a matter of law under both Title VII and the FEHA.

### 7. Plaintiff's reliance on the *Buonanno* decision is unavailing.

Plaintiff cites *Buonanno v. AT&T Broadband, LLC*, 313 F. Supp. 2d 1069 (D. Colo. 2004), an out-of-circuit case that is not binding on this Court. (Opp. 19:21-20:12, 22:8-18). In *Buonanno*, the plaintiff, a former AT&T employee, alleged religious discrimination under Title VII after being terminated for refusing to sign an anti-discrimination policy that required him to "value" the beliefs of his employer and co-workers, which he claimed conflicted with his religious beliefs. The court

found the plaintiff established a prima facie case because no AT&T representative explained the intended meaning of the challenged language or inquired about the plaintiff's concerns before his termination. *Id.* at 1075-1077, 1081-1082. The court emphasized that "[t]here was no discussion of the particular meaning of the challenged language or what obligations, if any, it imposed on employees." *Id.* at 1075. The plaintiff was given a choice between accepting the language without clarification or losing his job. *Id.* at 1077. Thus, the conflict arose because the employer never clarified the policy's meaning.

Here, there was a discussion regarding the specific interpretation of the contested language in the Policy and the obligations it imposed on employees. Plaintiff's own allegations confirm she could adhere to the Policy by addressing employees by their names and showing respect and kindness. (SAC ¶34). Plaintiff's only dispute or issue with the word "support" was her belief that the word "support" required Plaintiff to address employees by their preferred pronoun. (SAC ¶ 33). But as Plaintiff's own allegations confirm, DRC never required Plaintiff to use preferred pronouns, and thus DRC's Policy never required Plaintiff's support to be manifested in that particular way, or any other way. The Policy only required Plaintiff "to show kindness and respect" to employees, and Plaintiff confirmed that requirement never conflicted with her religious beliefs. (SAC ¶ 33). Therefore, *Buonanno* is distinguishable from the present case, and Plaintiff does not successfully allege a conflict.

**B. Plaintiff's second and third causes of action claim should be dismissed.**

Plaintiff cites the EEOC's position, which is not binding on this court, to support her claim that simply requesting a religious accommodation is a protected activity under Title VII. (Opp. 24:1-10). However, Courts, including this Court in its prior Order, have rejected this argument. (Doc No. 14 ("Ct. Order") 11:17-13:3). Plaintiff's Opposition does not cite any binding authority suggesting that merely applying for an exemption based on a protected status constitutes a protected

activity. Plaintiff's argument that *EEOC v. N. Mem'l Health Care*, 908 F.3d 1098 (8th Cir. 2018) is distinguishable is unavailing. Under Title VII, the Eighth Circuit held that "merely requesting a religious accommodation is not the same as opposing the allegedly unlawful denial of a religious accommodation." *EEOC*, 908 F.3d at 1102.

Plaintiff argues that an employee engages in a protected activity when opposing an employment practice that violates Title VII. (Opp. 25:1-12). However, as this Court found in its prior Order, Plaintiff did not "oppose" allegedly unlawful activity by initiating the accommodations process and, thus, was not engaged in a protected activity. (Order 11:26-13:3). Plaintiff's SAC adds no new allegations demonstrating opposition activity under Title VII, so the Court has no reason to deviate from its prior conclusion. Plaintiff's assertion that she engaged in a protected activity by filing a hostile work environment complaint is unavailing. (Opp. 25:13-22). Plaintiff's concerns about her own conduct creating a hostile work environment was included as part of her request for accommodation, and thus is not a protected opposition activity.

Related to Plaintiff's complaint about the conduct of other employees, the SAC fails to allege non-conclusory facts showing that she opposed conduct she reasonably believed constituted a hostile work environment. Instead, Plaintiff's allegations indicate her complaint was based solely on job-related instructions, not her religious beliefs or accommodation requests, or any other unlawful conduct. (SAC ¶¶ 28-30). Furthermore, Plaintiff's assertion that DRC's "delay tactics and retaliatory acts" constitute adverse actions lacks merit. (Opp. 26:1-23). These conclusory allegations do not demonstrate a materially adverse action by DRC under either Title VII or FEHA, such as a demotion or loss in pay.

Plaintiff argues the close timing between her hostile work environment complaint and the alleged adverse actions meets the causation element. (Pl.'s Opp: 27:27-28:1). However, other than the vague assertion that she was terminated "soon

Case No. 3:24-cv-00810-AJB-BLM

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

after" filing her complaint, the SAC contains no allegations that her complaint was a motivating factor in her termination. Thus, Plaintiff fails to plausibly allege that her hostile work environment complaint was a causal factor in her termination.

### C. Plaintiff's fifth cause of action for wrongful termination should be dismissed.

Plaintiff's Opposition argues her wrongful termination claim is based on the *same allegations* as her religious discrimination, retaliation, and failure to accommodate claims. (Opp. 28:5-8.) Because her claim is entirely derivative of her other claims, it fails for the same reasons set forth above. By failing to allege a conflict with the Policy or that she provided notice of a conflict to her employer, and by failing to allege that she actually requested an accommodation to the Policy, Plaintiff has also failed to allege a plausible claim for wrongful termination, which should be dismissed.

## III.  **CONCLUSION**

For the reasons set forth herein, Defendant requests the Court's granting of the motion and dismissal of the action. Alternatively, Defendant requests the Court require Plaintiff to provide a more definite statement.

DATED: February 3, 2025

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By:  /s/ George J. Theofanis
Michael J. Nader
Alexandra M. Asterlin
George J. Theofanis

Attorneys for Defendant
DISABILITY RIGHTS CALIFORNIA

10

Case No. 3:24-cv-00810-AJB-BLM

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

87885599.v1-OGLETREE