1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOYA R. HASIA-WELCH, an individual, | Case No.: 24-cv-0810-AJB-BLM |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |
| v. | |
| DISABILITY RIGHTS CALIFORNIA; DOES 1–10, inclusive, | **(Doc. No. 16)** |
| Defendants. | |

Plaintiff Toya Hasia-Welch ("Plaintiff") brings this action against her former employer, Disability Rights California ("DRC"), alleging violations under Title VII of the Civil Rights Act of 1964 ("Title VII") and the California Fair Employment and Housing Act, California Government Code § 12940 ("FEHA"). (Doc. No. 16-1.)[1] The Court previously granted DRC's motion to dismiss for failure to state a claim with leave to amend. (Doc. No. 14.) Plaintiff thereafter filed the now operative Second Amended

---

[1] Record citations are to material in the Case Management/Electronic Case File ("CM/ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

Complaint (SAC), which DRC again moves to dismiss on nearly identical grounds. (Doc No. 16-1.)

## I.    BACKGROUND

DRC is a non-profit organization that advocates for the rights of Californians with disabilities. (Doc. No. 15 ¶ 3.) Plaintiff worked as an investigator at DRC's San Diego, CA location from March 16, 2022, to July 1, 2022. (*Id.* ¶¶ 2, 5.) DRC has a Transgender, Non-Binary Inclusion Policy (the "Policy"), which states: "All employees have the right to be addressed by their chosen name and pronoun. The intentional or persistent refusal to respect an employee's gender identity, name, or pronoun is harassment." (*Id.* ¶ 10.) Under the section titled Gender Affirmation, DRC's Policy states, "Employees who transition are entitled to the support of DRC management, Human Resources, and their colleagues." (*Id.* ¶ 12.) The DRC Inclusive Pronoun Protocol for Written Material section of the Policy states, "the use of binary pronouns is not inclusive of all [transgender, non-binary, gender-non-conforming, and intersex] people." (*Id.* ¶ 11.) The Policy goes on to say that "gender-inclusive language can be achieved by simply reusing a noun in-lieu of a pronoun or by using 'they/them/their' as a singular, inclusive pronoun." (*Id.*) Under the same section, the following language can be found: "'They' is recognized as a singular, gender-inclusive pronoun. When the use of pronouns is necessary to refer to an individual, use 'they.'" (*Id.*)

Plaintiff alleges that she is a follower of the Christian faith and believes that God assigned each person a gender at birth as male or female. (*Id.* ¶¶ 7, 8.) She alleges that the Policy conflicts with her sincerely held religious beliefs and "she cannot speak or live by lies which support a position that runs opposite of the teachings of the Bible." (*Id.* ¶ 8.) Plaintiff asserts that the Policy contravenes her religious beliefs because it requires her to "support" employees who transition. (*Id.* ¶ 14.) Plaintiff also opposes the use of pronouns other than those associated with one's biological gender assigned at birth or the gender-neutral pronouns they/them/their. (*Id.* ¶ 9.) Plaintiff alleges she sought a religious accommodation from the Policy provisions requiring her to: "(1) support a transgender employee's transition, and (2) to use an employee's chosen pronoun." (*Id.* ¶ 19.)

2

Plaintiff alleges that, on April 8, 2022, she asked her immediate supervisor for clarification regarding the use of an employee's chosen pronoun, specifically whether she should use the gender-neutral pronouns "they/them/their." (*Id.* ¶ 17.) According to the SAC, her supervisor responded by saying that using "they/them" is inappropriate and "proceeded to scream at Plaintiff that trans men are men and trans women are women." (*Id.*) Plaintiff believes that her supervisor later requested to no longer manage Plaintiff due to Plaintiff's religious beliefs. (*Id.* ¶ 18.)

The SAC provides that Plaintiff emailed DRC's Human Resources Director, Chris White, on April 29, 2022, requesting a religious accommodation from the Policy provisions requiring her to support a transgender employee's transition and use of an employee's chosen pronouns.[2] (*Id.* ¶ 19.) Specifically, Plaintiff's accommodation request referenced the statement in the Policy that employees who transition are entitled to "support" of management, Human Resources, and their colleagues. (*Id.*) Plaintiff's accommodation request also referenced the Policy's statement that employees have the right to be addressed by their chosen pronouns. (*Id.*) Plaintiff informed Ms. White that requiring her to address employees by their chosen pronoun "forces me to violate my faith by forcing me to support someone's personal life decisions." (*Id.* ¶ 20.) Plaintiff explained that she requested a religious accommodation because she would not offer "support" to what she believes to be a sin. (*Id.*)

On May 3, 2022, Ms. White responded to Plaintiff's email, stating:

> Encouraging the use of pronouns does not mean it is required. There are other options as the policy states. What is not compliant with our policy is repeatedly using a pronoun that another employee has asked you not to use. Support means treating co-workers and clients with respect and kindness. Do you feel you need an accommodation based on your religion?

(*Id.* ¶ 21.)

---

[2] *See* Doc. No. 14 at 3 n.1.

Plaintiff claims that Ms. White's statement confirmed the need for an accommodation, as using "they/them/their" or an employee's name instead of their chosen pronoun could violate the Policy. (*Id.* ¶ 22.) Further, Plaintiff alleges that she believed she may be accused of harassment for failing to use an employee's chosen pronoun. (*Id.*)

The same day, Plaintiff responded to Ms. White's email. (*Id.* ¶ 23.) Plaintiff stated that she had no objection to treating co-workers and clients with respect and kindness, but she needed a religious accommodation. (*Id.*) Specifically, Plaintiff stated that because DRC used "the language 'support' and 'entitled to' to reference how transgender and non-binary people should be treated . . .," and because that language "was open to interpretation," she needed a religious accommodation. (*Id.*) Plaintiff also raised concerns about a hostile work environment due to her religious beliefs and that she wanted an accommodation in her file for her protection. (*Id.* ¶ 24.) Plaintiff believed that a religious accommodation in her file would protect her from harassment claims stemming from her failure to use an employee's chosen pronoun. (*Id.*)

On May 4, 2022, Ms. White responded to Plaintiff's email stating she was not sure what job requirement Plaintiff was requesting an accommodation for, and there was no need for an accommodation if Plaintiff was willing to use the pronouns or names her co-workers and clients requested. (*Id.*) Ms. White again asked Plaintiff to explain what job requirement conflicted with her religious beliefs. (*Id.*) Plaintiff alleges that Ms. White's email contradicted Ms. White's previous statement that "repeatedly using a pronoun that another employee has asked you not to use" would not be compliant with the Policy, leading to Plaintiff's further confusion regarding the use of gender-neutral pronouns compared to chosen pronouns. (*Id.* ¶ 25.)

On May 6, 2022, Plaintiff responded to Ms. White's email:

I am requesting a religious accommodation from having to "support" my transgender co-workers as stated in the updated DRC Inclusion policy. It is my interpretation that "support" means to show agreement with.

DRC distinctly used the word "support" and "entitled to" to reference how transgender and non-binary people should be treated but does not use this same language for historically marginalized groups like African Americans, Latin-X, Muslims, Christian, Jewish people, or women. There are other words that DRC could have used in place of support like "respect" or "tolerance," but it chose "entitled" and "support." Because language is open to interpretation, this policy sews the seeds for a hostile work environment should an LGBTQIA, or LGBTGIA-allied co-worker have the same interpretation that I do and demand such support from me. Support that I am forbidden from giving.

For these reasons, I request a religious accommodation to refrain from having to show support for transgender workers beyond basic respect, kindness, and human decency. If H.R. would like for me to provide support documentation from my religious text (Holy Bible), or from an ordained clergy member to back up this request, please let me know.

(*Id.* ¶ 26.) Plaintiff alleges she did not receive a reply to this email until June 30, 2022. (*Id.* ¶ 27.)

Plaintiff alleges that during May and June 2022, she experienced retaliation by DRC's employees for asserting her religious beliefs. (*Id.* ¶¶ 27–28.) Plaintiff claims that on May 5, 2022, her supervisor, Liz Logsdon, falsely accused her of using her personal laptop to access DRC records, and on May 6, 2022, Plaintiff was asked to complete a six-month goal sheet not required of a colleague who had started working as an investigator around the same time. (*Id.* ¶ 28.) Plaintiff additionally alleges that on more than one occasion, Ms. Logsdon suggested Plaintiff seek alternative employment. (*Id.*) At the same time, Plaintiff alleges her manager, Jung Pham, repeatedly told Plaintiff to discuss her religious opinions and faith at work in an attempt to prompt other employees to initiate hostile work environment and harassment claims against Plaintiff. (*Id.*) Plaintiff also asserts that she was instructed to falsify meal reimbursement sheets and avoid reporting criminal activities by DRC clients. (*Id.*) Though Plaintiff does not state when, she at some point submitted a hostile work environment claim with DRC Human Resources. (*Id.* ¶ 30.) However, Plaintiff later withdrew her hostile work environment claim after DRC's employees apologized. (*Id.*)

24-cv-0810-AJB-BLM

On June 30, 2022, Ms. White replied via memorandum to Plaintiff's May 6, 2022 email, stating she was still unclear about Plaintiff's religious accommodation request. (*Id.* ¶ 31.) Ms. White informed Plaintiff that she must work cooperatively and respectfully with all DRC employees and clients and that, despite Plaintiff's concerns about the word "support" in the Policy, the Policy would not be changed at the present time. (*Id.*) Later that day, Plaintiff responded to Ms. White's email reiterating her request for a religious accommodation and asking whether her initial request was denied. (*Id.* ¶ 33.) Plaintiff further asked for "a simple statement from DRC stating that [she is] excused from 'supporting' the personal choices of [her] fellow transgender and gender dysphoric staff." (*Id.*) In addition, Plaintiff stated that regardless of whether "DRC approves her request or not, [she] will not be referring to a biological female as 'he', nor a biological male as 'she' if [she is] made aware of their chromosomal nature (which is none of [her] business)." (*Id.*) Plaintiff reiterated that she was willing to show kindness and respect to any LGBTQIA+ community member but would only use a transgender employee's name or gender-neutral pronouns, not a chosen pronoun. (*Id.*)

On July 1, 2022, Plaintiff was terminated effective July 7, 2022. (*Id.* ¶ 34.) Plaintiff alleges that DRC cited Plaintiff's religious beliefs as a reason for her termination. (*Id.*) Plaintiff claims she did not receive a response to her May 6, 2022 email or June 30, 2022 religious accommodation request at the time of her termination. (*Id.* ¶ 35.) However, Plaintiff previously states that the June 30, 2022 memorandum was sent in response to the May 6 email. (*Id.* ¶ 31.) Before her termination, Plaintiff alleges she did not receive a formal warning, performance evaluation, corrective action, or indication from DRC that she was unwilling or unable to perform her job duties. (*Id.* ¶¶ 37–38.) Plaintiff timely filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue from the EEOC on February 29, 2024. (*Id.* ¶ 39.) Plaintiff received her Notice of Right to Sue from the Civil Rights Department on May 9, 2024. (*Id.*)

## II.    REQUEST FOR JUDICIAL NOTICE

A court generally cannot consider materials outside the pleadings on a motion to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). A court may, however, consider items of which it can take judicial notice without converting the motion to dismiss into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). Federal Rule of Evidence 201 permits judicial notice of a fact when it is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Welk v. Beam Suntory Imp. Co.*, 124 F. Supp. 3d 1039, 1041–42 (S.D. Cal. 2015). Additionally, "a court may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *Mack v. South Bay Beer Distrib.,* 798 F.2d 1279, 1282 (9th Cir.1986)).

Here, Plaintiff seeks judicial notice of the appellate case *Weiss v. Permanente Med. Grp., Inc.* (Docket #: 24-6609). (Doc. No. 20 at 2–3.) Plaintiff requests judicial notice of the fact *Weiss v. Permanente Med. Grp., Inc.*, case no. 3:23-cv-03940-RS, has been appealed to the United States Court of Appeals for the Ninth Circuit. (*Id*. at 3.) In response, DRC does not oppose the Court taking judicial notice of the fact *Weiss* has been appealed. (Doc. No. 21 at 1–3.) DRC states that any error DRC made in suggesting *Weiss* was not on appeal was inadvertent. (*Id*.)

Because it is proper to take judicial notice of a matter of public record outside the pleadings, *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988), and because the Court "may take notice of proceedings in other courts," *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011), the Court **GRANTS** Plaintiff's request for judicial notice of the appellate case *Weiss v. Permanente Med. Grp., Inc.* (Docket #: 24-6609).

## III.    MOTION TO DISMISS

### A.    Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim" and allows a court to dismiss a complaint if the plaintiff has failed

to state a claim upon which relief can be granted. *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (citing *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The function of this pleading requirement is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Accordingly, dismissal for failure to state a claim is proper where the claim "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008); *see Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017).

In reviewing a Rule 12(b)(6) motion to dismiss, a district court must "'accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff.'" *Los Angeles Lakers*, 869 F.3d at 800 (quoting *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012)). But a court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. "Further, it is improper for a court to assume the claimant "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). If the court dismisses a

complaint for failure to state a claim, it must then determine whether to grant leave to amend. *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995). "A district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.*

### B.    Discussion

#### 1.    Standing

The Court first addresses DRC's argument that Plaintiff does not have standing to bring this action. (*See* Doc. No. 16-1 at 20.) A court has no subject matter jurisdiction to hear a claim where the plaintiff lacks standing under Article III of the Constitution. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) [she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 180–81 (2000) (quoting *Lujan,* 504 U.S. at 560–61). "[A]t the pleadings stage, the plaintiff "must 'clearly . . . allege facts demonstrating' each element." *Spokeo*, 578 U.S. at 338 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth*, 528 U.S. at 185 (internal citations omitted).

DRC argues that Plaintiff lacks standing because she has not suffered an injury in fact. DRC contends that Plaintiff raises a hypothetical scenario in which someday, if an employee asks her to use a preferred pronoun other than "they/them/their," a conflict would arise between her religious beliefs and an employment duty. (Doc. No. 16-1 at 20.) However, because Plaintiff does not allege that any such situation ever arose, she has not been injured and therefore lacks standing. (*Id.*) This argument is unavailing.

The SAC alleges an injury in fact that is traceable to DRC's alleged conduct—specifically, the termination of Plaintiff's employment which she claims was due to her

religion, her request for religious accommodation, and her complaint to human resources about a hostile work environment. This allegation is sufficient to satisfy standing to seek compensatory damages.

However, Plaintiff does not have standing to seek declaratory or injunctive relief. Although not addressed in DRC's motion to dismiss, the Court *sua sponte* addresses standing specifically related to Plaintiff's request for declaratory and injunctive relief. Even where the defendant fails to raise or challenge a claim or complaint for lack of standing, "federal courts have a duty to raise, sua sponte, questions of standing before addressing the merits" of any claim. *Iten v. Los Angeles*, 81 F.4th 979, 984 (9th Cir. 2023); *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1058 (9th Cir. 2023) ("[A] jurisdictional issue such as Article III standing may be raised *sua sponte* by the court at any time.") (citation omitted); *see also* Fed. R. Civ. P. 12(h)(3) (requiring that "the court must dismiss the action" if it "determines at any time that it lacks subject-matter jurisdiction").

The SAC prays for declaratory and injunctive relief, as well as damages. (*See* Doc. No. 15 at 28–29.) "Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects." *Mayfield v. U.S.*, 599 F.3d 964, 970 (9th Cir. 2010); *see also Lujan*, 504 U.S. at 564 (future harm is required to show standing for injunctive relief); *Munns v. Kerry*, 782 F.3d 402, 411–12 (9th Cir. 2015) ("Despite being harmed in the past, [a plaintiff] must still show that the threat of injury in the future is certainly impending or that it presents a substantial risk of recurrence for the court to hear [a] claim for prospective relief." (cleaned up)). This is because the fact that a harm occurred in the past "does nothing to establish a real and immediate threat that" it will occur in the future, as is required for injunctive relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 106 (1983). "Once a plaintiff has been wronged, [s]he is entitled to injunctive relief only if [s]he can show that [s]he faces 'a real or immediate threat . . . that [s]he will again be wronged in a similar way." *Mayfield*, 599 F.3d at 970 (quoting *Lyons*, 461 U.S. at 111).

24-cv-0810-AJB-BLM

Plaintiff seeks to "enjoin [DRC] from enforcing its discriminatory policies." (Doc. No. 15 at 28.) Plaintiff's allegations are insufficient to show that she is entitled to such relief. Plaintiff has alleged that she was injured in the past by DRC's conduct—specifically, DRC's failure to provide Plaintiff with a religious accommodation and its allegedly unlawful decision to terminate her employment. However, the SAC does not allege that Plaintiff continues to sustain any injury or that she is likely to be injured again in the future by DRC's alleged unlawful conduct. Because Plaintiff does not allege that she seeks reemployment with DRC, there is no indication that Plaintiff will again "be wronged in a similar way" by DRC. *See Mayfield*, 599 F.3d at 970.

Similarly, Plaintiff does not have standing for declaratory relief against DRC. Plaintiff seeks a declaration that DRC's past conduct "violated Title VII of the Civil Rights Act" and "violated FEHA." (Doc. No. 15 at 29.) This relief stands in contrast to the prospective nature of relief granted through a declaratory judgment. Decisions in this Circuit have emphasized that declaratory relief is prospective in nature and that Article III standing to seek such relief must be based on allegations of current or future harm. *See, e.g., Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1111 (E.D. Cal. 2014) ("A declaratory relief claim operates 'prospectively,' not to redress past wrongs.") (quoting *Britz Fertilizers, Inc. v. Bayer Corp.*, 665 F. Supp. 2d 1142, 1173 (E.D. Cal. 2009)). Because the SAC fails to plausibly allege that Plaintiff continues to be injured, that there is a substantial risk that future injury will occur, or that she faces threatened injury that is certainly impending, the SAC fails to establish Article III standing for claims for declaratory and injunctive relief under Title VII and FEHA. *See Flores*, 997 F. Supp. 2d at 1111; *McCarron v. Cnty. of Ventura*, No. CV 21-5234 MWF (PDX), 2021 WL 9315371, *4 (C.D. Cal. Dec. 29, 2021)

In conclusion, although Plaintiff has Article III standing to pursue damages, she lacks standing for declaratory and injunctive relief. Accordingly, Plaintiff's claims for declaratory and injunctive relief are **DISMISSED with leave to amend**.

### 2.      Failure to Accommodate

DRC moves to dismiss Plaintiff's first and fourth causes of action, in which Plaintiff asserts DRC failed to accommodate her religious beliefs in violation of Title VII (claim 1) and FEHA (claim 4). (Doc. No. 16-1 at 18.) These claims are based on Plaintiff's allegation that she held a "deeply sincere religious objection to Defendant's Policy requiring her to 'support' a co-worker's transition and use an employee's chosen pronoun," and DRC failed to accommodate that religious belief. (Doc. No. 15 ¶¶ 44–47, 90–94.)

Both Title VII and FEHA "require[] employers to accommodate the religious practice of their employees unless doing so would impose an 'undue hardship on the conduct of the employer's business.'"[3] *Groff v. DeJoy*, 600 U.S. 447, 453–54 (quoting 42 U.S.C. § 2000e(j)); *see also Bolden-Hardge v. Off. of Calif. State Controller*, 63 F.4th 1215, 1222 (9th Cir. 2023) ("Both [Title VII and FEHA] require employers to accommodate job applicants' religious beliefs unless doing so would impose an undue hardship."). These claims are analyzed under a two-step, burden-shifting framework.[4] *See Heller v. EBB Auto Co.*, 8 F.3d 1433, 1440 (9th Cir. 1993) (Title VII); *Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1145 (9th Cir. 2017) (FEHA). First, the employee must plead a prima facie case of failure to accommodate religion. *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 830 (9th Cir. 1999). Second, if the employee is successful, the employer can show that it was nonetheless justified in not accommodating the employee's religious beliefs or practices. *Id.*

---

[3] In *Groff v. DeJoy*, 600 U.S. 447 (2023), the Supreme Court noted that "[a]s originally enacted, Title VII did not spell out what it meant by discrimination 'because of . . . religion,' but shortly after the statute's passage, the EEOC interpreted that provision to mean that employers were sometimes required to 'accommodate' the 'reasonable religious needs of employees.'" *Id.* at 457.

[4] The Ninth Circuit has noted that because FEHA is interpreted consistently with Title VII, the analysis of the federal and state law claims is the same. *Bolden-Hardge v. Off. of California State Controller*, 63 F.4th 1215, 1222 (9th Cir. 2023); *Ambat v. City & Cnty. of S.F.*, 757 F.3d 1017, 1023 n.2 (9th Cir. 2014) ("FEHA is interpreted consistently with Title VII").

To establish a prima facie case of failure to accommodate, a plaintiff must show that "(1) [s]he had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) [s]he informed [her] employer of the belief and conflict; and (3) the employer threatened [her] with or subjected [her] to discriminatory treatment, including discharge, because of [her] inability to fulfill the job requirements." *Heller*, 8 F.3d at 1438.

DRC once again does not challenge whether Plaintiff has a bona fide religious belief. (*See generally* Doc. No. 16-1.) But DRC contends Plaintiff's causes of action for failure to accommodate fail for three reasons. First, DRC argues that Plaintiff's failure to accommodate claims fail because Plaintiff's religious belief does not conflict with the Policy. (*Id.* at 18–21.) Second, DRC argues that Plaintiff failed to adequately notify DRC of the alleged conflict. (*Id.* at 21–23.) And third, DRC contends that if Plaintiff can establish a prima facie case, under the FEHA, an accommodation is not required if it would result in a violation of the FEHA or any other law prohibiting discrimination or protecting civil rights. (*Id.* at 23.) Because the Court finds that Plaintiff's religious belief does not conflict with the Policy, the Court does not address DRC's second two arguments.

Initially, Plaintiff repeats her argument from her opposition to DRC's motion to dismiss the FAC, asserting that the prima facie case is an evidentiary standard, not a pleading requirement. (Doc. No. 18 at 17.) The Court reiterates that Plaintiff need not prove her case at this juncture, but she must plead enough facts to satisfy the underlying elements of a failure-to-accommodate claim—*i.e.* that she holds a bona fide religious belief that conflicts with an employment requirement. *See Bolden-Hardge*, 63 F.4th at 1222.

The Court previously found that Plaintiff's FAC did not demonstrate a conflict between her religious beliefs and the Policy. (Doc. No. 14 at 8–9). The Court finds the SAC suffers from this same defect.

DRC argues that Plaintiff does not plead a failure to accommodate claim because the "bona fide belief must make it *impossible* for the employee to perform the employee's job; i.e., the employee must establish a conflict between the religious belief and the employment *duties*." (Doc. No. 16-1 at 19 (emphasis in original).) The Ninth Circuit has

previously rejected such a narrow interpretation of Title VII and FEHA. In *Bolden-Hardge*, when the defendant argued that Title VII and FEHA only recognize conflicts between religious beliefs and job *duties*, and do not extend to job prerequisites, the Ninth Circuit found that there is no precedent "that has so limited the scope of Title VII." *Bolden-Hardge*, 63 F.4th at 1223 n. 4. The court reasoned that because employment prerequisites may be challenged in the disparate impact context, it would be inconsistent with the purpose of Title VII to preclude disparate treatment claims in which plaintiffs similarly allege conflicts with employment prerequisites. *Id.* As it relates to FEHA claims, the *Bolden-Hardge* court went on to state that:

> [T]the California Court of Appeal has rejected "too narrow a view of what constitutes an employment 'requirement,' reasoning that "[a]ll employees have two kinds of work requirements: those defined by the particular duties of their position, and those defined by the general policies of the employer," both of which are actionable under FEHA.

*Id.* Accordingly, the Court finds that a conflict with the Policy could be sufficient to state a claim under Title VII and FEHA. However, the SAC fails to plead such a conflict.

In its motion to dismiss the SAC, DRC maintains its argument that there is no conflict with the Policy, as Plaintiff was willing to use both an employee's name and gender-neutral pronouns, and she was willing to treat her co-workers with kindness and respect. (Doc. No. 16-1 at 18–20.) The Court agrees.

Plaintiff argues that a conflict exists between her religious beliefs and the Policy because the Policy included contradictory guidance. (Doc. No. 18 at 18–19.) Plaintiff argues that "one provision allowed for use of gender-neutral pronouns, while another provision required use of preferred pronouns and came with an advisement that failure to use preferred pronouns constituted harassment. (*Id.*) However, the Policy specifically states that if an employee requested a different pronoun, Plaintiff could use their name instead, thus avoiding any Policy conflict. (*See* Doc. No. 15 ¶ 11.)

As alleged in the SAC, the Policy states "[t]he intentional or persistent refusal to respect an employee's gender identity, name, *or* pronoun is harassment." (*Id.* ¶ 10

14

(emphasis added).) The Policy goes on to provide that "gender-inclusive language can be achieved by simply using a *noun in-lieu* of a pronoun or by using 'they/them/their' as a singular, inclusive pronoun." (*Id.* ¶ 11 (emphasis added).) Ms. White clarified the Policy in her email to Plaintiff stating "[e]ncouraging the use of pronouns does not mean it is required. There are other options as the policy states." (*Id.* ¶ 21.) Here, Plaintiff can avoid the use of pronouns altogether by using an employee's name, which Plaintiff confirmed she was willing to do. (*See id.* ¶ 33.) Again, Plaintiff acknowledged that, consistent with the Policy, she was willing address employees by their name or by gender-neutral pronouns. (*Id.* ¶¶ 22, 33; Doc. No. 18 at 14.) Accordingly, no conflict exists as it relates to the use of pronouns.

Next, DRC refutes Plaintiff's claim of unwillingness to "support" transitioning employees asserting that she was "willing to show kindness and respect to any member of the LGTBTQIA+ community." (Doc. No. 16-1 at 20 (citing Doc No. 15 ¶¶ 23, 33).) DRC argues that Plaintiff's issue with the word "support" is exactly "the kind of 'blanket privilege' that would have resulted in a 'limitless excuse for avoiding all unwanted . . . obligations' and provided little basis for [DRC] to evaluate the extent of her religious beliefs potential conflict with the Policy." (*Id.* at 22 (quoting *Weiss v. Permanente Med. Grp., Inc.*, 2024 WL 3090496, at *3 (N.D. Ca. June 21, 2024).)

Plaintiff argues that the word "support" in the Policy "conflicted with her religious views as it was open to interpretation in its meaning, and without an accommodation in her file she felt exposed to potential claims for workplace harassment." (Doc. No. 18 at 19.) Plaintiff alleges she requested an accommodation because she understood the policy to force her to violate her faith by forcing her to support someone's personal life decisions, which she believes to be a sin. (*Id.* ¶ 20.) Plaintiff argues that the word "support" in the Policy "conflicted with her religious views as it was open to interpretation in its meaning, and without an accommodation in her file she felt exposed to potential claims for workplace harassment." (Doc. No. 18 at 19.)

Analogizing her case to *Buonanno v. AT&T Broadband, LLC*, 313 F. Supp. 2d 1069, 1081 (D. Colo. 2004), Plaintiff argues that the word "support" is open to interpretation and, like in *Buonanno*, the Policy impermissibly required her to "value" other employee's beliefs. (Doc. No. 18 at 19–20.) Plaintiff's reliance on *Buonanno* is misplaced. *Buonanno* not only has no binding authority on this Court, but the facts are distinguishable. In *Buonanno*, the plaintiff alleged religious discrimination under Title VII after being terminated for refusing to sign an anti-discrimination policy that required him to "value" the beliefs of his employer and co-workers, which he claimed conflicted with his religious beliefs. *Buonanno*, 313 F. Supp. 2d at 1075. After a bench trial, the court concluded that it was unclear how to comply with the company's diversity policy, the supervisor refused to clarify the policy when asked, and the employee ultimately refused to sign the policy, thus creating a conflict. *See* 313 F. Supp. 2d at 1075–78.

Here, however, when asked, Ms. White clarified that "[s]upport means treating co-workers and clients with respect and kindness." (Doc. No. 15 ¶ 21.) Plaintiff stated on multiple occasions that, as required by the Policy, that she was willing and able to show respect and kindness to her co-workers, clients, and any member of the LGBTGIA+ community. (*Id.* ¶¶ 23, 26, 33.) And unlike in *Buonanno*, Plaintiff does not allege she was asked to sign handbook or policy requiring her to show her support to members of the LGTBTQIA+ community. Moreover, it is unclear to the Court how DRC could have provided Plaintiff with an accommodation as it relates to her showing support to others. Unlike in other cases, Plaintiff here was not asking for an exemption from signing a document, *see Buonanno*, 313 F. Supp. 2d 1096, or an exemption from taking an oath, *see Bolden-Hardge*, 63 F. 4th 1215, or an exemption from working on a particular day due to religious beliefs, *see Groff*, 600 U.S. 447; *see also Opuku-Boateng v. State of Cal.*, 95 F.3d 1461 (9th Cir. 1996), *as amended* (Nov. 19, 1996). Here, Plaintiff merely had to show respect and kindness, which she states she was willing to do. Thus, Plaintiff was willing to abide by the Policy and perform her job duties, so no conflict exists.

Based on the foregoing, Plaintiff has failed to plausibly allege she had a bona fide religious belief which conflicted with DRC's Policy. Accordingly, the Court **GRANTS** DRC's Motion to Dismiss as to Plaintiff's first and fourth causes of action **WITH LEAVE TO AMEND**. The Court notes that this is Plaintiff's final opportunity to amend her complaint as it relates to her failure-to-accommodate claims.

### 3.    Retaliation

DRC additionally moves to dismiss Plaintiff's second and third causes of action for retaliation under Title VII (claim 2) and FEHA (claim 3) arguing that Plaintiff fails to allege a protected activity, fails to plausibly allege an adverse employment action, and fails to allege a causal link between her hostile work environment complaint and her termination. (Doc. No. 16-1 at 24–28.) Plaintiff's retaliation claims allege that her requests for a religious accommodation, and her complaint to human resources about a hostile work environment, were motivating factors in her termination. (Doc. No. 15 ¶¶ 60–56, 78–80.)

Retaliation claims under Title VII and FEHA require three elements. "[A] plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brooks v. City of San Mateo*, 229 F.3d 917, 923, 928 (9th Cir. 2000) (examining both Title VII and FEHA claims); *Bergene v. Salt River Project Agr. Imp. & Power Dist.*, 272 F.3d 1136, 1141 (9th Cir. 2001) (Title VII).

Plaintiff alleges she engaged in a protected activity when she requested a religious accommodation and when she filed a claim for hostile work environment with DRC Human Resources. (Doc. No. ¶¶ 60, 61, 78.) DRC argues that because Plaintiff did not have a conflict with the Policy, she never actually requested an accommodation for her religious beliefs and, therefore, never engaged in a protected activity. (Doc. No. 16-1 at 24.) DRC also argues that Plaintiff fails to provide specific allegations supporting an objectively reasonable and good faith belief that she was opposing a hostile work environment. (*Id.* at 25–26.) Additionally, DRC argues that Plaintiff's human resources complaint was based solely on instructions from her employer related to her job and job duties and is therefore not a protected activity. (*Id.* at 25.)

The Ninth Circuit has long held that to establish the first element of a prima facie case for retaliation, "a plaintiff does not need to prove that the employment practice at issue was in fact unlawful under Title VII," but instead "must only show that she had a 'reasonable belief' that the employment practice she protested was prohibited under Title VII." *Trent v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 526 (9th Cir. 1994). The "reasonable belief standard" applies regardless of whether the practice was actually unlawful. *E.E.O.C. v. Crown Zellerbach Corp*, 720 F.2d 1008, 1013; *see also Jurado v. Eleven-Fifty Corp.*, 813 F.2d 1406, 1411 (9th Cir. 1987) ("[T]he employee need only reasonably believe that the employer has engaged in an unlawful employment practice."); *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 969 (9th Cir. 2001) ("It is unnecessary that the employment practice actually be unlawful."); *Maner v. Dignity Health*, 9 F.4th 1114, 1127 (9th Cir. 2021) ("[O]ur precedents have long recognized that [Title VII] protects an employee who opposes employer conduct in the mistaken but reasonable belief that the conduct is unlawful.").

Courts in this Circuit have held that even informal complaints of discrimination to a human resources department is sufficient to allege protected activity. *See, e.g., Ray v. Henderson*, 217 F.3d 1234, 1240 n.3 (noting that informal complaints constitute protected activity under Title VII); *Luckey v. Visalia Unified Sch. Dist.*, Case No. 13–332, 2014 WL 730699, at *3 (E.D. Cal. Feb. 24, 2014) (holding that plaintiff's allegations that he made informal complaints to human resources that plaintiff, a school district employee, was isolated from other staff and students by the principal and that such treatment was based on plaintiff's race and sex were sufficient to state a claim for retaliation under Title VII); *Hoko v. Transit Am. Servs.*, No. 14-CV-01327-LHK, 2014 WL 3963033, at *9 (N.D. Cal. Aug. 13, 2014) (holding that an informal email to human resources may be a basis for a retaliation claim).

Finally, Courts have found that termination constitutes an adverse employment action. *See Little*, 301 F.3d at 970 ("And, of course, termination of employment is an adverse employment action"); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064

18

(9th Cir. 2002) ("And certainly, [plaintiff] has suffered an adverse employment action: [defendant] terminated him").

Here, Plaintiff claims she filed a hostile work environment complaint with human resources after DRC employees allegedly retaliated against her for expressing her religious beliefs. (Doc. No. 15 ¶¶ 28–29.) Plaintiff alleges that her supervisor repeatedly asked Plaintiff if she wanted help finding alternate employment. (*Id.*) Plaintiff claims her manager asked her to discuss her religion at work to allegedly provoke hostile work environment claims against her. (*Id.*) Finally, Plaintiff contends she was intentionally given false direction and guidance, which Plaintiff alleges that if she had followed, would have amounted to her violating the law. (*Id.*) Plaintiff alleges that these actions led her to file a hostile work environment claim with human resources. (*Id.*)

Plaintiff alleges she suffered an adverse employment action when she was terminated soon after filing her hostile work environment claim and almost immediately after her June 30, 2022 email to DRC reiterating her need for a religious accommodation. (Doc. No. 15 ¶ 64.) Plaintiff contends that the close temporal proximity between both her request for a religious accommodation and her complaint of a hostile work environment and her subsequent termination supports a causal link between those allegedly protected activities and the adverse employment action. (Doc. No. 18 at 27.)

At the pleading stage, these allegations are sufficient to establish that if true, a fact finder could "reasonably infer" that the adverse action alleged occurred in retaliation for Plaintiff reporting her perceived hostile work environment to human resources. *See Rivera v. E. Bay Mun. Util. Dist.*, 2016 WL 374180, at *5 (N.D. Cal. Feb. 1, 2016). Plaintiff has adequately stated a claim for workplace retaliation, and thus DRC's motion to dismiss is **DENIED** as to these causes of action.

### 4. Wrongful Termination

DRC argues that Plaintiff's claim for wrongful termination should be dismissed because the claim is derivative of her retaliation and failure to accommodate claims and thereby fails for the same reasons as the underlying claims. (Doc. Nos. 16-1 at 28–29; 19

19

at 11.) Plaintiff agrees that her wrongful termination claim is predicated upon her failure to accommodate and retaliation claims. (Doc. No. 18 at 28.)

"Under California common law, although 'an at-will employee may be terminated for no reason, or for an arbitrary or irrational reason, there can be no right to terminate for an unlawful reason or a purpose that contravenes fundamental public policy.'" *Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 748 (9th Cir. 2011) (quoting *Silo v. CHW Med. Found.,* 27 Cal.4th 1097, 1104). "Nevertheless, [t]his public policy exception to the at-will employment rule must be based on policies carefully tethered to fundamental policies that are delineated in constitutional or statutory provisions." *Id.* (internal quotation marks omitted). The elements for this tort are (1) the existence of a public policy and (2) a nexus between the public policy and an employee's termination. *Id.*

One category of conduct subject to protection under a claim of wrongful termination in violation of public policy is an employee "exercising a statutory right or privilege." *Yau v. Santa Margarita Ford, Inc.*, 229 Cal.App.4th 144, 155 (2014). Accordingly, "FEHA and Title VII claims 'may provide the policy basis for a claim for wrongful discharge in violation of public policy.'" *Ashcroft v. S. California Permanente Med. Grp.*, No. 24-CV-0035-MMA-MMP, 2025 WL 1159883 (S.D. Cal. Apr. 21, 2025) (quoting *Phillips v. St. Mary Reg'l Med. Ctr.*, 96 Cal.App.4th 218 (2002)). Because Plaintiff maintains retaliation claims under both FEHA and Title VII, Plaintiff's wrongful termination in violation of public policy claim may proceed as a derivative. *See id.* The Court thus **DENIES** DRC's motion to dismiss this claim.

## IV.    MOTION FOR MORE DEFINITE STATEMENT

As an alternative to dismissal, DRC moves for a more definite statement under Federal Rule of Civil Procedure 12(e). (Doc. No. 16-1 at 29.) Rule 12(e) provides for a more definite statement only where a pleading "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. P. 12(e). "Motions for a more definite statement are 'proper only where the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted.'" *Adobe Sys. Inc.*

20

*v. A & S Elecs., Inc.*, 153 F. Supp. 3d 1136, 1147 (N.D. Cal. 2015) (quoting *Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994). A plaintiff need only "set forth enough details so as to provide the defendant and the court with a fair idea of the basis of the complaint and the legal grounds claimed for recovery." *Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 466 (9th Cir.1990). Rule 12(e) motions are viewed with disfavor and are rarely granted. *Id.*

Even when properly asserted, "[a] motion for more definite statement attacks intelligibility, not simply lack of detail," *Gregory Village Partners v. Chevron, USA.,* 805 F. Supp. 2d 888 (N.D. Cal. 2011), and will be granted "only if the [challenged pleading] is so indefinite that the defendant cannot ascertain the nature of the claim being asserted, meaning the [pleading] is so vague that the defendant cannot begin to frame a response." *Craigslist, Inc. v. Autoposterpro, Inc.,* 2009 WL 890896, at *4 (N.D. Cal. March 31, 2009). Reciprocally, where a pleading "is specific enough to apprise the responding party of the substance of the claim or defense being asserted or where the detail sought is otherwise obtainable through discovery, a motion for a more definite statement should be denied." *Fernandez v. Centric,* 2013 WL 310373, at *2 (D. Nev. Jan.24, 2013) (internal quotation omitted).

Here, the SAC provides DRC with fair notice of Plaintiff's claims and the grounds upon which those claims rest. Plaintiff sufficiently alleges claims for retaliation and wrongful termination, thereby affording DRC adequate notice to reasonably prepare a response. Moreover, DRC's present, cogent motion to dismiss belies any suggestion that the complaint is too vague for DRC to frame a response. (*See* Doc. No. 16-1.) Accordingly, DRC's motion for a more definite statement is **DENIED.**

## IV.    CONCLUSION

Accordingly, based on the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** DRC's Motion to Dismiss. (Doc. No. 16-1.)

The Court **ORDERS** that:

1.    Plaintiff's Request for Judicial Notice is **GRANTED**;

2.      Plaintiff's claims for declaratory and injunctive relief are **DISMISSED WITH LEAVE TO AMEND**;

3.      DRC's Motion to Dismiss as to Plaintiff's claim for failure to accommodate under Title VII (claim 1) is **GRANTED**, this claim is **DISMISSED WITH LEAVE TO AMEND**;

4.      DRC's Motion to Dismiss as to Plaintiff's claim for retaliation under Title VII (claim 2) is **DENIED**;

5.      DRC's Motion to Dismiss at to Plaintiff's claim for retaliation under FEHA (claim 3) is **DENIED**;

6.      DRC's Motion to Dismiss as to Plaintiff's claim for failure to accommodate under FEHA (claim 4) is **GRANTED**, this claim is **DISMISSED WITH LEAVE TO AMEND**;

7.      DRC's Motion to Dismiss at to Plaintiff's claim for wrongful termination (claim 5) is **DENIED**;

8.      DRC's Motion for a More Definite Statement is **DENIED**.

9.      If so desired, Plaintiff may file an amended complaint by no later than **September 30, 2025**. Any amended complaint must be accompanied by a redlined version in compliance with Civil Local Rule 15.1.c.

10.     DRC must respond to the operative complaint by no later than **October 14, 2025**.

**IT IS SO ORDERED.**

Dated:  September 23, 2025

Hon. Anthony J. Battaglia
United States District Judge

24-cv-0810-AJB-BLM